**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| PARTEC AG and BF EXAQC AG, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 2:24-cv-00433-RWS-RSP |
| MICROSOFT CORPORATION, | **JURY TRIAL DEMANDED** |
| *Defendant*. | |

**MICROSOFT'S MOTION FOR A STAY PENDING RESOLUTION OF
INSTITUTED *INTER PARTES* REVIEW OF U.S. PATENT NO. 11,537,442**

# TABLE OF CONTENTS

**Page(s)**

I.     INTRODUCTION ...................................................................................................1

II.    FACTUAL BACKGROUND ...................................................................................2

    A.    ParTec draws a Patent Office error in its favor and collects the '442 Patent.................................................................................................................2

    B.    ParTec asserts three patents and the case is four months away from a *Markman* hearing. ..............................................................................................3

    C.    The Patent Office finds evidence of "material error" during prosecution of the '442 Patent and concludes that each claim is likely invalidated by the application underlying ParTec's other two asserted patents....................................4

    D.    ParTec refuses to dismiss the '442 Patent notwithstanding the evidence of material error, insisting the parties endure potentially wasteful proceedings in parallel to the Patent Office's completion of the review. ...................................6

III.    LEGAL STANDARDS .........................................................................................7

IV.    ARGUMENT ......................................................................................................7

    A.    Issue simplification favors a stay. ........................................................................8

        1.    A stay avoids the potential for wasted resources on claims that may ultimately be cancelled due to Patent Office error.........................................9

        2.    If any '442 Patent claims survive IPR, a stay will simplify any remaining proceedings on that patent. ......................................................9

        3.    A stay will also simplify issues for the '156 and '883 Patents because those patents' underlying specification is central to the invalidity issues in the '442 Patent IPR. ...................................................11

    B.    The early stage of this case favors a stay. ...........................................................12

    C.    Staying this case would not subject ParTec to any undue prejudice or tactical disadvantage. ........................................................................................13

    D.    Staying this case would avoid unreasonable litigation burdens.............................15

V.    CONCLUSION.................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arbor Glob. Strategies, LLC v. Samsung Elecs. Co., Ltd.*,
    2021 WL 66531 (E.D. Tex. Jan. 6, 2021) .................................................9, 10, 13

*Aylus Networks, Inc. v. Apple Inc.*,
    856 F.3d 1353 (Fed. Cir. 2017)............................................................................11

*Cobblestone Wireless, LLC v. Cisco Sys., Inc.*,
    2024 WL 5047854 (E.D. Tex. Dec. 9, 2024)..................................................12, 14

*Commc'n Techs. Inc. v. Samsung Elecs. Co., Ltd.*,
    2023 WL 1478447 (E.D. Tex. Feb. 2, 2023) ...................................................12, 13

*ContentGuard Holdings v. Amazon.com, Inc.*,
    2015 WL 8073722 (E.D. Tex. Dec. 4, 2015).........................................................10

*CyWee Grp. Ltd. v. Samsung Elecs. Co., Ltd.*,
    2019 WL 11023976 (E.D. Tex. Feb. 14, 2019) ........................................... *passim*

*Emed Techs. Corp. v. Repro-med Sys.*,
    2016 WL 2758112 (E.D. Tex. May 12, 2016).......................................................13

*GREE Inc. v. Supercell Oy*,
    2020 WL 2476497 (E.D. Tex. May 12, 2020).......................................................10

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936).................................................................................................7

*Murata Mach. USA v. Daifuku Co., Ltd.*,
    830 F.3d 1357 (Fed. Cir. 2016)........................................................................7, 15

*NFC Tech. LLC v. HTC Am., Inc.*,
    2015 WL 1069111 (E.D. Tex. Mar. 11, 2015) ......................................7, 8, 14, 15

*Onpoint Sys., LLC v. Protect Animals With Satellites, LLC*,
    2022 WL 2704166 (E.D. Tex. Jul. 12, 2022) .......................................................11

*Scorpcast, LLC v. Boutique Media*,
    2021 WL 3514751 (E.D. Tex. Jun. 8, 2021)...........................................................9

*Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*,
    2017 WL 9885168 (E.D. Tex. Jun. 13, 2017)......................................................13

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
   759 F.3d 1307 (Fed. Cir. 2014)..................................................................................13, 14

**Statutes**

35 U.S.C. § 102..........................................................................................................................3

35 U.S.C. § 103..........................................................................................................................3

35 U.S.C. § 315........................................................................................................................10

35 U.S.C. § 316..........................................................................................................................6

## TABLE OF EXHIBITS

Exhibits cited "Ex." refer to the exhibits attached to the Declaration of Betty Chen in Support of Microsoft's Motion To Stay, filed contemporaneously.

| Exhibit | Description |
|---|---|
| A | July 8, 2025 Decision instituting IPR on the '442 Patent |
| B | June 12, 2025 Decision, issued by Acting Director of the U.S. Patent and Trademark Office Coke Morgan Stewart [hereinafter "Director Stewart" or the "Director"], denying Patent Owner's Request for Discretionary Denial of '442 Patent IPR |
| C | Excerpts from '442 Patent Prosecution History |
| D | Excerpts from '883 Patent Prosecution History |
| E | Plaintiffs' September 4, 2024 Infringement Contentions (cover document) |
| F | Microsoft's December 20, 2024 Petition for IPR on the '442 Patent |
| G | ParTec's April 16, 2025 Request for Discretionary Denial of IPR on the '442 Patent |
| H | Microsoft's August 8, 2025 letter to ParTec |
| I | ParTec's August 14, 2025 email responding to Microsoft's letter |
| J | ParTec's June 16, 2025 First Supplemental Initial Disclosures |

Filings on this Court's docket are cited by Docket (Dkt.) number.

All emphasis herein is added unless otherwise indicated.

## I.    INTRODUCTION

Defendant Microsoft Corporation moves for a stay of all proceedings pending Final Written Decision of the instituted *Inter Partes* Review of United States Patent No. 11,537,442. The instituted IPR impacts all three asserted patents[1] because the primary reference in the '442 Patent IPR is the published application underlying the other two patents. The Final Written Decision and ParTec's[2] IPR arguments will necessarily address all three patents' specifications, so granting a pre-*Markman* stay will allow this Court to construe those patents on a fulsome intrinsic record.  The parties have not completed any substantive depositions and claim construction briefing is months away.  ParTec faces no undue prejudice or tactical disadvantage because it seeks money damages and did not seek a preliminary injunction.  The Final Written Decision will be issued by July 8, 2026, just three weeks after the current jury selection date (June 15, 2026).

The likelihood of issue simplification—the most important factor—is high.  Microsoft challenged all ten claims of the '442 Patent—including asserted claims 1-5 and 7-10—and the Patent Office found a reasonable likelihood that Microsoft would prevail against not just one (which is the statutory minimum for IPR institution) but ***all ten claims***.  Ex. A at 28, 30-33.  The Director of the Patent Office weighed in and found persuasive evidence that the Office likely made a ***material error*** during examination of the '442 Patent.  Ex. B at 2-3.  As for the other two asserted patents (the '156 Patent and '883 Patent), their shared specification is squarely at issue in the '442 Patent IPR because their underlying application (the Lippert Application) is the primary reference in the IPR.  A stay is appropriate to consider the effect of the IPR decision and record on all three

---

[1] The asserted patents are: United States Patent No. 10,142,156 ('156 Patent), United States Patent No. 11,934,883 ('883 Patent), and United States Patent No. 11,537,442 ('442 Patent).
[2] "ParTec" refers to co-plaintiffs ParTec AG and BF exaQC AG.

patents—including any admissions or disclaimers by ParTec to distinguish the other asserted patents as prior art.  The Court should stay this case pending resolution of the '442 Patent IPR.

## II.     FACTUAL BACKGROUND

### A.     ParTec draws a Patent Office error in its favor and collects the '442 Patent.

This lawsuit concerns three asserted patents in two families.  The first family at issue includes the '156 Patent and '883 Patent, both titled "Computer Cluster Arrangement for Processing a Computation Task and Method for Operation Thereof."  Both the '156 and '883 Patents name Thomas Lippert as their sole inventor.  The purported inventions of '156 and '883 Patents relate to "a computer cluster arrangement and a method for operation of the introduced computer cluster arrangement."  '156 Patent, Abstract; '883 Patent, Abstract.  The '156 and '883 Patents claim priority to PCT Patent Application No. PCT/EP2011/067888, which published on April 19, 2012 as International Patent Application Publication No. WO 2012/049247 and later as United States Patent Publication No. 2013/0282787 ("Lippert Application").  ParTec filed the '156 Patent on April 12, 2013, and that patent issued on November 27, 2018. '156 Patent.

After receiving the '156 Patent, ParTec applied on January 23, 2019 for the '442 Patent claiming a very similar invention but in a different patent family.  '442 Patent.  The '442 Patent names Bernhard Frohwitter and Thomas Lippert as co-inventors.  *Id.*  The purported invention of the '442 Patent relates to "a method of operating a heterogeneous computing system comprising a plurality of computation nodes and a plurality of booster nodes."  *Id.*, Abstract.  The '442 Patent— which includes a single figure and less than five columns of disclosures—purports to be "a development of the system described in earlier application WO 2012/049247," the Lippert Application, but does not have a priority claim to that application.  *Id.*, 1:22-25.

During examination, the Patent Office rejected claims 1-10 of the '442 Patent as anticipated by the Lippert Application.  Ex. C (April 8, 2022 Office Action, at 3).  ParTec overcame the

anticipation rejection by distinguishing certain teachings of the Lippert Application from '442 Patent claims 1-10.  *Id.* (July 22, 2022 Response to Office Action, at 4-6).  The examiner then allowed claims 1-10 without even providing an analysis of obviousness.  Ex. C at 31 (August 20, 2022 Notice of Allowability, withdrawing § 102 rejection without issuing § 103 rejection).  As explained below, the Director of Patent Office recently issued a decision finding it likely that the examiner made a "material error" by failing to consider whether the '442 Patent was obvious in view of the Lippert Application.  Ex. B at 2-3.  ParTec benefited from this error: the examiner allowed the application and the '442 Patent issued on December 27, 2022. '442 Patent.

All the while, ParTec was prosecuting a third patent that it had filed on March 9, 2021—the '883 Patent, which is in the Lippert Application family—with claims on the same subject matter.  '883 Patent.  ParTec relied on the Lippert Application to pursue those claims for the '883 Patent at the same time as it was disparaging the Lippert Application as prior art to secure very similar claims for the '442 Patent (which expires later) from a different examiner.  *Compare, e.g.*, Ex. D ('883 Patent; August 24, 2022 Request for Continued Examination following May 10, 2022 Final Rejection from examiner Oanh Duong) *with* Ex. C ('442 Patent; July 22, 2022 Response, disparaging the Lippert Application, following April 22, 2022 Office Action from examiner Sisley Kim).  The '883 Patent issued on March 19, 2024.  '883 Patent.

ParTec then sued Microsoft on all three patents.  Dkt. 1 (Complaint).

**B.    ParTec asserts three patents and the case is four months away from a *Markman* hearing.**

ParTec filed this action on June 10, 2024.  Dkt. 1.  Microsoft answered on August 16, 2024. Dkt. 16.  The operative Second Amended Docket Control Order entered in April 2025 set jury selection on June 15, 2026.  Dkt. 48.  To date, the Court's involvement in this case has been limited

to ruling on joint or unopposed motions.[3]  ParTec has accused Microsoft of infringing three asserted patents: the '156 Patent, the '883 Patent, and the '442 Patent.  ParTec identified "the Microsoft Azure AI system or infrastructure" as the instrumentality accused of infringing all three patents.  Ex. E at 2 (infringement contentions).  ParTec asserts claims 1-15 of the '156 Patent and claims 1-16 of the '883 Patent.  *Id.*  ParTec asserts claims 1-5 and 7-10 of the '442 Patent.  *Id.*

The parties have exchanged contentions, as well as written and document discovery, but have not conducted any substantive depositions.[4]  Microsoft has served third-party subpoenas but has only received limited third-party discovery to-date, and no third-party depositions have been taken.  At Microsoft's request, the Court has issued Letters Rogatory seeking discovery from third parties outside the United States.  *See* Dkt. 45, 52, 56, 58.  Claim construction briefs are due beginning October 31, 2025 and a *Markman* hearing is set for December 12, 2025.  Dkt. 48.

### C. The Patent Office finds evidence of "material error" during prosecution of the '442 Patent and concludes that each claim is likely invalidated by the application underlying ParTec's other two asserted patents.

On December 20, 2024, Microsoft petitioned the Patent Office to institute *Inter Partes* Review of the '442 Patent. Ex. F (Petition).[5]  Microsoft challenged claims 1-10 of the '442 Patent, including all asserted claims of that patent (claims 1-5 and 7-10), as obvious in view of the Lippert Application.  *Id.* at 2.  As noted above, the examiner failed to reject the '442 Patent claims as obvious in view of the Lippert Application during prosecution.  Accordingly, Microsoft identified two grounds for obviousness: (1) a combination of the Lippert Application with Budenske; and (2)

---

[3] ParTec initially filed a "partial opposition" to Microsoft's request to issue Letters Rogatory (Dkt. 40), but the parties resolved the dispute and ParTec withdrew its opposition (Dkt. 43) and the Court granted the motion "consistent with the parties' agreements" (Dkt. 45).  There have been no other opposed filings in this case.

[4] The parties took limited, non-substantive 30(b)(6) depositions for the purpose of identifying ESI search terms.

[5] There are no IPRs challenging the validity of the '156 Patent or '883 Patent.

a combination of the Lippert Application, Budenske, and Kambatla. *Id.*

Seeking to avoid review of the examiner's mistake, ParTec petitioned the Director of the Patent Office to intervene in Microsoft's IPR and throw out the petition. Ex. G. But Director Stewart reviewed the facts and concluded in her June 12, 2025 decision that Microsoft had identified "***a material error by the Office***" during prosecution of the '442 Patent and "it is an appropriate use of Office resources to review the potential error." Ex. B at 3 ("Although the patent examiner eventually allowed the claims over Lippert, Petitioner explains 'how the Examiner erred in overlooking the prior art.'") (citation omitted). Specifically, Director Stewart commented that Microsoft's petition "provides persuasive evidence that the Office erred in a manner material to the patentability of the challenged claims by overlooking . . . the combined teachings of Budenske and Lippert, or Budenske and [Kambatla] with Lippert" and "denial of institution is not warranted because of Petitioner's showing of ***material error during patent examination***." *Id.*

A few weeks later, the Patent Office instituted IPR on the '442 Patent finding that the Lippert Application likely rendered each claim of the '442 Patent invalid as obvious. Ex. A at 28, 30-33. Specifically, the Patent Office's July 8, 2025 panel decision found "a reasonable likelihood that [Microsoft] would prevail with respect to" not just one (the statutory floor for IPR institution) but ***all ten*** challenged claims—and on ***multiple grounds***. *Id.* The decision observed:

- "Petitioner has shown a reasonable likelihood that it would prevail in establishing that ***claim 1*** would have been obvious over ***Lippert*** and Budenske." (at 28)

- "Petitioner has shown a reasonable likelihood that it would prevail in establishing obviousness of ***claims 2–8*** over ***Lippert*** and Budenske." (at 30)

- "Petitioner has shown a reasonable likelihood that it would prevail in establishing obviousness of ***claim 9*** over ***Lippert*** and Budenske." (at 30)

- "Petitioner has shown a reasonable likelihood that it would prevail in showing obviousness of ***claim 10*** over ***Lippert*** and Budenske." (at 30)

- Kambatla is relied on by Petitioner to add to the strength of the prior art teachings. For the reasons presented by Petitioner, it does." (at 33)

*Id.* (citations omitted).

Thus, all ten claims of the '442 Patent—including asserted claims 1-5 and 7-10—are now subject to review and likely cancellation by the Patent Office. Central to that review is the Lippert Application underlying the '156 and '883 Patents, which is the primary invalidity reference for both grounds instituted against the '442 Patent. *See* Ex. A at 28, 30-33. The Patent Office must ordinarily complete its review within one year, unless there is good cause for a six-month extension. *See* 35 U.S.C. § 316(a)(11). The Final Written Decision is currently due no later than July 8, 2026, which is shortly after the current jury selection date in this case (June 15, 2026).

**D.    ParTec refuses to dismiss the '442 Patent notwithstanding the evidence of material error, insisting the parties endure potentially wasteful proceedings in parallel to the Patent Office's completion of the review.**

On August 8, 2025, Microsoft asked ParTec to dismiss the '442 Patent before the parties (and the Court) engage in potentially needless claim construction and other proceedings. Ex. H (Microsoft's letter). Microsoft explained that it is objectively unreasonable for ParTec to continue asserting the '442 Patent in reliance on the presumption of validity because the invalidity of the '442 Patent is clear and likely cancellation of the asserted claims is imminent. *Id.* Microsoft separately asked ParTec to agree to stay this case now that the Patent Office has instituted its review, which ParTec refused when the parties met and conferred on August 15, 2025.

ParTec instead dismissed Microsoft's concerns about efficiency and waste. Ex. I (ParTec's email response to Microsoft's letter arguing "nor is there anything 'exceptional' in continuing to assert a patent while an IPR is pending and before any final decision. Doing so is common and routine."). That is a complete about-face from ParTec's submission to the Patent Office— imploring the Patent Office not to review the error that Microsoft's petition identified—where

ParTec conceded that proceeding in parallel was "duplicative" and "highly inefficient." Ex. G at 5. The Patent Office found Microsoft's IPR "an appropriate use of Office resources" due to the "showing of material error during patent examination." Ex. B at 3. Proceeding with this case in parallel to the Patent Office's ongoing review would be duplicative and highly inefficient and therefore Microsoft brings this motion.

## III.    LEGAL STANDARDS

"The ability to stay cases," including pending completion of an instituted IPR, "is an exercise of a court's inherent power to manage its own docket." *Murata Mach. USA v. Daifuku Co., Ltd.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016) (affirming decision to stay patent case in view of IPR proceedings); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *CyWee Grp. Ltd. v. Samsung Elecs. Co., Ltd.*, 2019 WL 11023976, at *1 (E.D. Tex. Feb. 14, 2019).

Courts in this District typically consider three factors when determining whether to stay a case pending IPR: (1) "whether the stay will likely result in simplifying the case before the court"; (2) "whether the proceedings before the court have reached an advanced stage, including whether discovery is complete and a trial date has been set"; and (3) "whether the stay will unduly prejudice the nonmoving party." *NFC Tech. LLC v. HTC Am., Inc.*, 2015 WL 1069111, at *2 (E.D. Tex. Mar. 11, 2015); *Murata*, 830 F.3d at 1361 (District Courts "typically" apply those three factors for stay decisions). Those factors inform the Court's ultimate determination of "whether the benefits of a stay outweigh the inherent costs of postponing resolution of the litigation." *NFC Tech.*, 2015 WL 1069111, at *2.

## IV.    ARGUMENT

Each relevant factor supports granting a stay pending final resolution of the '442 Patent

IPR.  The most important factor, issue simplification, strongly favors a stay because the '442 Patent IPR is likely to cancel all asserted claims of that patent, evidenced especially by the comments of the Patent Office and its Director on the strong merits of Microsoft's petition.  The IPR will also resolve issues on the scope of the other two asserted patents' shared specification, potentially impacting claim construction and simplifying the rest of this case.  The stage-of-litigation factor also strongly favors a stay because no substantive depositions have been taken and claim construction briefing is still months away.  As to undue prejudice or tactical disadvantages, ParTec faces none: it seeks money damages and never asked for a preliminary injunction.  Rather, it is Microsoft who faces an unfair tactical disadvantage and will incur unduly prejudicial costs if ParTec continues to exploit an error that the Patent Office has acknowledged and agreed to review. As explained below, the benefits of granting a stay outweigh any potential costs.  The Court should therefore stay all proceedings pending completion of the '442 Patent IPR.

A.    **Issue simplification favors a stay.**

Courts often consider issue simplification "the most important factor bearing on whether to grant a stay."  *NFC Tech.*, 2015 WL 1069111, at *4.  "A stay is particularly justified when the outcome of a PTO proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues."  *Id.* at *1 (citation and quotation marks omitted); *CyWee*, 2019 WL 11023976, at *9 ("even when IPRs are instituted on fewer than all the asserted claims, the policies favoring simplification and the reduction of litigation burdens on the parties and the court are often applicable") (collecting cases).  A stay is appropriate here because:  (1) a stay would avoid wasted judicial and party resources concerning any asserted claims of the '442 Patent that are ultimately cancelled;  (2) even if any '442 Patent claims survive, a stay would simplify the remaining issues for this Court; and (3) the '442 Patent IPR will address the underlying specification of the '156 and '883 Patents as prior art, so the IPR is highly relevant to claim

construction and other issues for the other two asserted patents.

1.    **A stay avoids the potential for wasted resources on claims that may ultimately be cancelled due to Patent Office error.**

The '442 Patent IPR has significant potential to eliminate issues for trial because it covers all asserted claims of the '442 Patent.  *CyWee*, 2019 WL 11023976, at *9 ("if the PTAB invalidates all of the claims before it, the case will unquestionably become simpler. One patent will be removed from the case altogether, and the task of dealing with the remaining five related claims from the other patent—for the parties, the jury, and the Court—will become much easier . . . .").  The likelihood of issue-elimination is high in this instance because the Patent Office "has, in essence, indicated that the asserted claims" of the '442 Patent "are likely unpatentable."  *See, e.g.*, *Scorpcast, LLC v. Boutique Media*, 2021 WL 3514751, at *3 (E.D. Tex. Jun. 8, 2021).  The Patent Office's institution decision (Ex. A) expressly found that Microsoft has a reasonable likelihood of prevailing with respect to not just one (the statutory minimum) but ***all ten*** claims of the '442 Patent (including each asserted claim of that patent), finding both grounds persuasive.  *See, e.g.*, *Arbor Glob. Strategies, LLC v. Samsung Elecs. Co., Ltd.*, 2021 WL 66531, at *3 (E.D. Tex. Jan. 6, 2021) (stay granted where Patent Office "granted institution on more than one asserted ground" and "expressly noted that [petitioner] 'sets forth a strong showing of unpatentability on the challenged claims'") (citation omitted).  The Director's decision (Ex. B) likewise showed an inclination toward invalidating the asserted claims, even concluding that the Office likely committed ***material error*** when examining the '442 Patent.  *See, e.g.*, *Scorpcast*, 2021 WL 3514751, at *3 (stay granted where the Patent Office "exhibited a strong inclination toward invalidating the asserted claims").

2.    **If any '442 Patent claims survive IPR, a stay will simplify any remaining proceedings on that patent.**

Besides elimination of whole issues, there are at least two independent reasons why a stay would simplify the '442 Patent proceedings before this Court: (1) the Final Written Decision will

trigger a statutory estoppel that would necessarily simplify invalidity for surviving '442 Patent claims (if any); and (2) this Court should construe surviving '442 Patent claims (if any) on a complete intrinsic record that includes the IPR record.

**First**, even if some of the '442 Patent asserted claims survive IPR—though unlikely—the issues remaining for this Court for any surviving claims would be significantly narrowed and simplified. For any surviving claims, the estoppel statute (§ 315(e)(2)) will reduce the scope of the invalidity issues for the jury (and for the Court pre-trial) by limiting Microsoft to only those invalidity grounds that could not reasonably have been raised in the IPR. *See, e.g.*, *Arbor*, 2021 WL 66531, at *3 (finding that statutory estoppel was sufficient to ensure issue-simplification). Since that estoppel is triggered by the Final Written Decision, it is sensible and logical to stay all proceedings concerning the '442 Patent until after the Final Written Decision has issued.

**Second**, irrespective of whether the Patent Office cancels **all** asserted claims of the '442 Patent a stay is warranted so the Court can address any remaining issues on a complete intrinsic record. *See, e.g.*, *GREE Inc. v. Supercell Oy*, 2020 WL 2476497, at *passim* (E.D. Tex. May 12, 2020) (considering Final Written Decisions and other PTAB filings as "intrinsic evidence"); *ContentGuard Holdings v. Amazon.com, Inc.*, 2015 WL 8073722, at *6-*11 (E.D. Tex. Dec. 4, 2015) (Final Written Decisions informed claim construction). The Patent Office in its institution decision has already provided analysis of all ten claims of the '442 Patent and other issues. *See, e.g.*, Ex. A at 25-26 ("Patent Owner further does not explain what the inventors of the ['442 Patent] discovered or possessed which made a previously allegedly non-performable task possible."). Admissions or disclaimers by ParTec would be also relevant to determining the '442 Patent's claim scope. Granting a stay before the *Markman* hearing would therefore allow this Court to construe surviving claims of the '442 Patent (if any) with the benefit of a fulsome intrinsic record.

**3.     A stay will also simplify issues for the '156 and '883 Patents because those patents' underlying specification is central to the invalidity issues in the '442 Patent IPR.**

The '442 Patent IPR is also highly relevant to the other two asserted patents (the '156 and '883 Patents) because the other asserted patents' shared specification is at issue.  The overlap in subject matter favors of a stay.  *See, e.g.*, *Onpoint Sys., LLC v. Protect Animals With Satellites, LLC*, 2022 WL 2704166, at *4 (E.D. Tex. Jul. 12, 2022) (stay granted "even though the PTAB has only instituted IPR review of the '295 patent" because "resolution of IPR on the '295 patent will generally aid in resolving the parties' other disputed claims"); *CyWee*, 2019 WL 11023976, at *10 (stay granted "even though claims 14–17 and 19 are not directly at issue in the IPR" because "the validity of those claims could be affected by the PTAB's analysis of the claims before it, which involve related technology").  Although the claims of the '156 and '883 Patents are not challenged in the '442 Patent IPR, the Final Written Decision will necessarily address critical issues relevant to the intrinsic record for the '156 and '883 Patents because their underlying application—the Lippert Application—is the primary reference against all ten '442 Patent claims for both grounds and the patents are closely related.  *See Onpoint*, 2022 WL 2704166, at *2 ("Moreover, there is no dispute that the patent on which the PTAB instituted IPR and the remaining asserted patents are closely related.").  The forthcoming Final Written Decision will contain further analysis of the '156 and '883 Patents' shared specification and may provide a helpful reference point for this Court's claim construction of those patents.  *See, e.g.*, *id.* at 4; *CyWee*, 2019 WL 11023976, at 10.

A stay is also warranted so the Court may consider any statements, admissions, or disclaimers made by ParTec to distinguish the underlying specification of the '156 and '883 Patents as prior art, which are binding on ParTec as the owner of those patents.  *See, e.g.*, *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1364 (Fed. Cir. 2017) ("statements made by a patent owner during an IPR proceeding . . . can be relied upon to support a finding of prosecution

disclaimer"). Absent a stay, ParTec may assert inconsistent positions on the specification of the Lippert Application—a broad reading here to support infringement claims on the '156 and '883 Patents, but a narrow one at the Patent Office to distinguish it as prior art to the '442 Patent— frustrating the purpose of claim construction. *CyWee*, 2019 WL 11023976, at *9 (granting stay to avoid "a possibility of inconsistent results between the administrative agency and the court"). The potential to simplify proceedings on the '156 and '883 Patents (including claim construction) therefore weighs in favor of a stay pending completion of the '442 Patent IPR.

Accordingly, the issue-simplification factor favors a stay.

**B.    The early stage of this case favors a stay.**

The stage-of-the-case factor favors a stay because: (1) the parties have not yet reached the most expensive stages of the litigation; and (2) Microsoft filed its IPR petition within a reasonable time after receiving ParTec's infringement contentions. Courts evaluate the stage of the case "as of the time the motion was filed." *Cobblestone Wireless, LLC v. Cisco Sys., Inc.*, 2024 WL 5047854, at *2 (E.D. Tex. Dec. 9, 2024) (citation omitted).

***First***, this factor favors a stay because "the bulk of the expenses that the parties would incur"—such as completion of fact discovery, claim construction, expert discovery, and trial preparation—"are still in the future[.]" *Commc'n Techs. Inc. v. Samsung Elecs. Co., Ltd.*, 2023 WL 1478447, at *3 (E.D. Tex. Feb. 2, 2023) (granting pre-*Markman* stay). The parties have exchanged contentions and conducted document and written discovery, but no substantive depositions have been taken. The parties have only taken limited third-party document discovery and have not yet taken any third-party depositions. The Court has not expended any efforts towards claim construction. This factor has been found to favor a stay in like circumstances. *See, e.g.*, *Cobblestone*, 2024 WL 5047854, at *2 ("Defendants are correct in asserting that large parts of discovery and many other important deadlines were still left at that point [when the motion

was filed].  Accordingly, this factor weighs in favor of a stay."); *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, 2017 WL 9885168, at *1 (E.D. Tex. Jun. 13, 2017) (granting stay after institution on fewer than all asserted patents where the patents "share common claim terms" and "have not yet been construed by the Court"); *CyWee*, 2019 WL 11023976, at *6-*7 (stay was appropriate even after claim construction hearing) (collecting cases).

*Second*, Microsoft filed its IPR petition challenging the '442 Patent within four months of receiving ParTec's infringement contentions.  *See* Ex. E (ParTec's infringement contentions served September 4, 2024); Ex. F (Petition filed December 20, 2024).  Courts in this District have granted stays finding similar timing reasonable.  *See, e.g.*, *Arbor*, 2021 WL 66531, at *3 ("It is not unreasonable for the defendant to await the service of infringement contentions . . . in order to be sure which claims are asserted, before filing the IPR.") (two and a half months); *Commc'n Techs.*, 2023 WL 1478447, at *3 (granting stay where defendant filed IPRs "four months after Plaintiff served its preliminary infringement contentions").  Microsoft also requested a stay within six weeks of the Patent Office's institution of IPR on the '442 Patent and shortly after ParTec confirmed it would not dismiss that patent.  *See, e.g.*, *CyWee*, 2019 WL 11023976, at *5 (rejecting argument that defendant's stay motion was "delayed for five weeks"); *Emed Techs. Corp. v. Repro-med Sys.*, 2016 WL 2758112, at *2 (E.D. Tex. May 12, 2016) (granting stay motion filed two months after institution decision).

Accordingly, the stage-of-the-litigation factor favors a stay.

### C.      Staying this case would not subject ParTec to any undue prejudice or tactical disadvantage.

The undue-prejudice factor "focuses on the patentee's need for an expeditious resolution of its claim."  *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014).  This factor favors a stay for three reasons.

**First**, ParTec faces no undue prejudice because it seeks monetary relief, did not move for a preliminary injunction, and does not seek a permanent injunction.[6] *See, e.g.*, Dkt. 1 ¶¶ 34–38 (describing co-plaintiff BF exaQC AG as "ParTec's licensing agent" seeking to "license ParTec's patent rights" and "responsible for negotiating and entering licensing agreements"); *Cobblestone*, 2024 WL 5047854, at *2 ("Where, as here, a patentee seeks exclusively monetary damages, as opposed to a preliminary injunction or other relief, 'mere delay in collecting those damages does not constitute undue prejudice.'") (citations omitted); *VirtualAgility*, 759 F.3d at 1318 (noting that "[a] stay will not diminish the monetary damages to which [the patentee] will be entitled if it succeeds in its infringement suit—it only delays realization of those damages").

**Second**, ParTec faces no tactical disadvantage from a stay.  ParTec faces only the garden-variety delay "present in every case in which a patentee resists a stay," which is insufficient to avoid a stay.  *Cobblestone*, 2024 WL 5047854, at *2; *NFC Tech.*, 2015 WL 1069111, at *2. Rather, it is Microsoft who faces a tactical disadvantage if forced to defend itself while the '442 Patent's validity is in serious question.

**Third**, the '442 Patent IPR presents a genuine and unusual instance of the Patent Office revisiting its own apparent error.  *See, e.g.*, *CyWee*, 2019 11023976, at *3 ("The benefits of *inter partes* review" include "giving the agency an opportunity to reconsider patents" and "saving the courts from having to adjudicate infringement claims based on patents of questionable validity"). The Director of the Patent Office agreed that Microsoft provided "persuasive evidence that the Office erred in a manner material to the patentability of the challenged claims."  Ex. B.  That material error concerned ParTec's own Lippert Application underlying the '156 and '883 Patents. *See id.*  Therefore, Microsoft is not seeking "two bites at the invalidity apple" (Ex. G at 5), as

---

[6] ParTec identified only monetary relief in its Initial Disclosures.  *See* Ex. J at 2.

ParTec unsuccessfully argued to the Patent Office and will likely argue here.  Rather, it is ParTec who seeks an unfair bite at the fruits of an administrative error before it can be reviewed.

Accordingly, the undue prejudice factor favors a stay.

### D.    Staying this case would avoid unreasonable litigation burdens.

Courts have discretion to consider "[t]he burden litigation places on the court and the parties when IPR proceedings loom" as a factor weighing in favor of a stay.  *See, e.g.*, *Murata*, 830 F.3d at 1362 (citing with approval *NFC Tech.*, 2015 WL 1069111, at *5); *CyWee*, 2019 WL 11023976, at *2-*3.

Given the unusual circumstances of the instituted IPR—finding all asserted claims of the '442 Patent likely to be invalidated by the specification underlying the '156 and '883 Patents (Ex. A) after the Director found evidence of "material error" during examination (Ex. B)— ParTec's chance of saving the '442 Patent without change is marginal.  Even if the '442 Patent survives, ParTec may have to significantly narrow the claims of '442 Patent, disparage the specification of the other asserted patents, or do both.  Microsoft asked ParTec to dismiss its assertion of the '442 Patent before the August 29, 2025 deadline to exchange proposed constructions, but ParTec refused.  Ex. H (Microsoft's August 8, 2025 letter); Ex. I (ParTec's email response).  ParTec's insistence that Microsoft and the Court invest significant time and resources litigating a patent that issued after a "material error" during prosecution is unreasonable. Under these unique circumstances, a stay during the Patent Office's review is appropriate to protect against unusual and unreasonable (but avoidable) litigation burdens.

## V.    CONCLUSION

The benefits of staying this case therefore outweigh any minimal costs.  Microsoft requests that the Court stay all proceedings pending the Final Written Decision in the instituted IPR concerning the '442 Patent.

Dated: August 19, 2025

Respectfully submitted,

*/s/ Melissa R. Smith*
Melissa R. Smith
State Bar No. 24001351
melissa@gillamsmithlaw.com
GILLAM & SMITH LLP
303 South Washington Avenue
Marshall, TX 75670
Tel: (903) 934-8450
Fax: (903) 934-9257

Betty Chen
LEAD ATTORNEY
State Bar No. 24056720
bchen@desmaraisllp.com
DESMARAIS LLP
101 California Street
San Francisco, CA 94111
Tel: (415) 573-1900
Fax: (415) 573-1901

Jeffrey Seddon (*pro hac vice*)
jseddon@desmaraisllp.com
Caitrianne Feddeler (*pro hac vice*)
cfeddeler@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: 212-808-1041
Fax: 212-351-3401

*Counsel for Defendant Microsoft Corporation*

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned hereby certifies pursuant to Local Civ. R. 7(h) that on August 15, 2025, lead and local counsel for the parties met and conferred in good faith on this motion.  This motion is opposed.  The parties were unable to reach an agreement.  The discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

Dated: August 19, 2025                By:  <u>*/s/ Melissa R. Smith*</u>
                                            Melissa R. Smith

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that this motion and all attachments were served via CM/ECF upon counsel of record for all parties who are deemed to have consented to electronic service.

Dated: August 19, 2025                By:  <u>*/s/ Melissa R. Smith*</u>
                                            Melissa R. Smith