# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| PARTEC AG and BF EXAQC AG, | |
| Plaintiffs, | Civil Action No. 2:24-cv-00433-RWS-RSP |
| v. | **JURY TRIAL DEMANDED** |
| MICROSOFT CORPORATION, | |
| Defendant. | |

**DEFENDANT MICROSOFT CORPORATION'S MOTION TO COMPEL
<u>PRODUCTION OF EMAILS PURSUANT TO THE AGREED ESI ORDER</u>**

# TABLE OF CONTENTS

**Pages**

I. INTRODUCTION ...................................................................................................1

II. BACKGROUND .....................................................................................................1

III. ARGUMENT ...........................................................................................................3

    A. Microsoft's Search Terms Are Relevant And Reasonable. ........................3

    B. ParTec Has No Viable Excuse For Its Refusal To Produce Emails In Response To Microsoft's Revised Search Terms. ........................................4

    C. ParTec's Refusal To Produce Emails Prejudices Microsoft ........................6

IV. CONCLUSION ........................................................................................................6

I.  **INTRODUCTION**

Microsoft respectfully moves to compel Plaintiffs ParTec AG and BF EXACQC AG (collectively, "ParTec") to produce documents responsive to Microsoft's ESI search terms. Nearly four months have passed since the parties exchanged email discovery requests—during which Microsoft has produced tens of thousands of responsive documents—yet ParTec still refuses to produce any responsive emails, in violation of the parties' ESI Order (Dkt. 29). Even though Microsoft revised its search terms multiple times in an effort to reduce hit counts, ParTec asserts that reviewing those documents is too burdensome. But that position has no merit. Microsoft's terms are relevant, result in a reasonable number of hits—47,444 unique documents, which is fewer than 10,000 per custodian—and ParTec's burden objections are unsubstantiated and inconsistent with the parties' agreed ESI Order. Moreover, by dragging its feet on email production, ParTec will prejudice Microsoft's ability to prepare for and schedule depositions of ParTec witnesses, as well as to engage in follow-on discovery. Accordingly, Microsoft respectfully asks that the Court compel ParTec to produce documents responsive to Microsoft's revised search terms without further delay.

II. **BACKGROUND**

The parties' Stipulated Order Regarding E-Discovery ("ESI Order") permits each party to request ESI from up to eight custodians and to propose ten search terms per custodian. *See* Dkt. 29 ¶¶ 7–8. Consistent with that order, on May 5, 2025, Microsoft served ten proposed search terms for five custodians. These custodians include key personnel at ParTec with relevant knowledge of the asserted patents, alleged commercialization endeavors, and the products and systems that ParTec claims practice the alleged inventions. *See* **Ex. A** (listing custodians and their relevance). Rather than providing hit counts or objections within seven days as required by the ESI Order (*id.* ¶ 8), ParTec waited until May 21 to object based on burden. At that time, Microsoft's original

proposed terms returned a total of 222,503 unique documents (excluding families) across the five custodians.

To address ParTec's stated concerns, Microsoft served a revised set of terms on May 29, reducing the hit count nearly in half to 130,435 unique documents. After ParTec again objected, Microsoft revised its terms again, serving another revised set of search terms on June 17, which further reduced the hit count by roughly another third to 85,710 unique documents. Still, ParTec maintained its objections and refused to produce responsive ESI. In discussions following Microsoft's second set of revised terms, ParTec asserted that Microsoft's terms were sweeping in irrelevant documents. Microsoft repeatedly requested that ParTec share examples of such documents so that it could assess and further refine its terms to exclude any irrelevant documents. Yet ParTec refused—despite the fact that when the roles were reversed, Microsoft provided examples of irrelevant hits from ParTec's proposed terms and worked cooperatively to narrow them.

Even though ParTec refused to share the supposedly irrelevant documents, Microsoft again made further revisions in an attempt to resolve the dispute without Court intervention. Microsoft independently narrowed its terms multiple times, serving a third revised set of terms on July 22; followed by a fourth revision on July 31, eliminating the term resulting in the largest number of hits. After four revisions, Microsoft's final proposed terms reduced the hit count to 47,444 unique documents (excluding families)[1]—less than one-quarter of the original total and effectively fewer than 10,000 documents per custodian. Microsoft's final set of terms and hit counts are identified in **Ex. B**.

---

[1] Including families, Microsoft's fourth revised search terms returned 78,788 unique documents.

Despite Microsoft's extensive narrowing efforts, ParTec continues to flat-out refuse to produce documents responsive to Microsoft's search terms. In its most recent objections and during the parties' conferral, ParTec stated that the primary basis of its objections was the volume of Microsoft's own production. For example, on August 5, ParTec stated that it would only "agree to terms returning approximately 30,000 documents—as Microsoft agreed to." And while ParTec has objected based on the supposed burden of document review, the ESI Order makes clear that all responsive non-privileged documents should be produced, thus eliminating the need for any document-by-document review.

### III. ARGUMENT

ParTec should be compelled to produce documents responsive to Microsoft's revised search terms because those terms are relevant, consistent with the agreed ESI Order, and reasonable in scope. By contrast, ParTec has no credible excuse for its refusal to produce emails—its claim that review of the emails would be unduly burdensome is unsubstantiated and inconsistent with the agreed ESI Order, which does not contemplate document-by-document review. And ParTec's continued refusal to produce emails prejudices Microsoft's ability to develop its defenses.

#### A. Microsoft's Search Terms Are Relevant And Reasonable.

*First*, the requested discovery is highly relevant to the issues in this case. Microsoft seeks ESI from individuals with firsthand knowledge of facts central to this case, including the asserted patents, alleged infringement, ParTec's participation in projects alleged to practice the inventions, and ParTec's commercialization efforts. The custodians include the named inventor on one asserted patent—who is also ParTec's CEO—as well as other key personnel involved in commercialization, development, and collaborations related to the patents-in-suit. *See* **Ex A** (identifying custodians and their scope of relevant knowledge). Moreover, Microsoft's search terms are tailored to the issues in dispute. *See* **Ex B** (listing Microsoft's fourth revised search

3

terms and their relevance). Indeed, there is no genuine dispute that the terms seek relevant documents.[2]

**Second**, Microsoft's requests are fully within the scope permitted by the parties' agreed ESI Order, which authorizes up to eight custodians with ten search terms per custodian. *See* Dkt. 29 ¶¶ 7–8. Microsoft's revised search terms currently seek discovery from five custodians and only nine terms per custodian—well within the agreed limits. Nor has ParTec raised any objection to the current set of terms based on any procedural issues with the terms themselves (such indiscriminate terms or improper use of disjunctive combination of words, *see, e.g.*, *id*. ¶ 8). Instead, ParTec objects solely to the volume resulting from the search terms.

**Third**, Microsoft's terms produce a reasonable number of results. Microsoft's search terms hit on just 47,444 unique documents (or 78,788 with families). That is less than 10,000 documents hit per custodian, which is well within the scope of discovery. Indeed, a court in this district has previously approved proposed search terms that returned significantly more documents. *See SportsCastr Inc. v. Sportradar Group*, AG, C.A. No. 2:23-cv-000472-JRG, Dkt. 152 at 3–4, Dkt. 113 at 5–6 (E.D. Tex.) (approving search terms generating ***184,000 documents*** with families across just ***three custodians***).

### B. ParTec Has No Viable Excuse For Its Refusal To Produce Emails In Response To Microsoft's Revised Search Terms.

Nonetheless, ParTec refuses to produce documents in response to Microsoft's search terms, asserting that the results are too voluminous and would be burdensome to review. ParTec's excuse does not hold water. To start, there is no need for extensive review—the agreed ESI Order does not contemplate any document-by-document relevance review, instead requiring that the parties

---

[2] ParTec has complained that Microsoft's terms also hit on irrelevant documents but refused to provide any such documents to Microsoft to support its claims (or allow Microsoft to refine the search terms), thus cannot rely on any such documents here. *See* Fed. R. Civ. P. 37(c)(1).

4

"produce *all* e-mails that the agreed search terms hit on, with the exception of those withheld on privilege grounds." *See* Dkt. 29 ¶ 9. In other words, ParTec needs review only a subset of the resulting documents—and ParTec has been notably silent on the number of documents that would be subject to privilege review. Moreover, ParTec's claim of burden is entirely unsubstantiated—despite Microsoft's request, ParTec declined to provide any support for its supposed costs of review beyond attorney speculation.

Instead, ParTec asserts that Microsoft's search terms result in excessive volume because they hit on more documents than Microsoft produced in response to ParTec's search terms.[3] But that arbitrary limit is illogical, unfair, and not supported by the agreed ESI Order. As an initial matter, ParTec's argument makes no sense. No evidence suggests that Microsoft and ParTec would have—or should have—similar numbers of responsive emails and logic suggests otherwise. "[M]odular supercomputing," supposedly the subject of ParTec's patents, allegedly "represents a unique selling point for ParTec," *see* Dkt. 1 ¶ 25, thus it is reasonable that ParTec would have many responsive emails. By contrast, Microsoft has no emails related to ParTec's patents and does not use ParTec's cluster computing technology, thus it is unsurprising that Microsoft has fewer responsive emails. Furthermore, ParTec's argument is fundamentally unfair—ParTec cannot use the fact that Microsoft has few responsive emails to shield its own relevant emails from discovery. Moreover, ParTec's argument is not supported by the ESI Order, which has no such

---

[3] ParTec has indicated that it believes that the fact that Microsoft agreed to produce approximately 30,000 documents somehow means that Microsoft objected to anything over 30,000 documents. Not so. Microsoft objected to specific terms proposed by ParTec—such as a single term that alone returned over 56,000 documents, even before counting families—and the production of specific categories of irrelevant documents. Once ParTec revised those terms to address the issue, Microsoft then searched for documents based on ParTec's terms and produced the results. Microsoft never adopted a unilateral ceiling on email discovery of 30,000 documents.

5

limit on discovery. *See* Dkt. 29. If ParTec wanted to impose a mutual limit on email discovery, it could have proposed including that limit in the ESI Order—it cannot now do so unilaterally.

### C.  ParTec's Refusal To Produce Emails Prejudices Microsoft

ParTec's violation of the ESI Order in failing to respond to Microsoft within the required timeframe, along with its four-months-long delay in producing responsive emails, is prejudicing Microsoft, especially now that the parties are beginning fact depositions. By refusing to produce emails, ParTec places Microsoft in a bind—it must either take depositions of ParTec's email custodians without full discovery of their emails, or delay taking those depositions and forego the ability to seek discovery from the more important witnesses, including one of the two named inventors, until the end of discovery.

Nor is any end in sight: despite nearly four months spent attempting to resolve what should be a straightforward component of discovery, ParTec continues to refuse to produce responsive emails. Indeed, while Microsoft has revised its terms four times, ParTec has provided little more than blanket objections and refused to meaningfully work with Microsoft to narrow the terms—for instance, ParTec has asserted that Microsoft's terms hit on irrelevant documents, yet refused to share those documents (or even examples of those documents) so that Microsoft could refine its terms accordingly. As such, Microsoft is essentially operating blind, and any further narrowing risks excluding relevant emails—in addition to relevant documents already excluded as a result of Microsoft's previous narrowing revisions.

## IV.  CONCLUSION

In sum, nearly four months have passed since Microsoft served its initial request for email discovery, and despite multiple rounds of revisions—where Microsoft narrowed terms to reduce hit counts by more than 75%—ParTec has refused to produce any responsive emails. Microsoft's email requests are relevant and consistent with the agreed ESI Order and ParTec's refusal to

provide responsive discovery is unduly prejudicial, impeding Microsoft's ability to evaluate relevant communications, prepare for depositions, and develop its defenses. As such, Microsoft respectfully requests that the Court compel ParTec to produce documents responsive to Microsoft's current set of search terms (Ex. B), consistent with the agreed ESI Order. *See* Dkt. 29 ¶ 25.

| | |
|---|---|
| Dated: September 2, 2025 | Respectfully submitted,<br><br>/s/ Melissa R. Smith<br><br>Melissa R. Smith<br>State Bar No. 24001351<br>melissa@gillamsmithlaw.com<br>GILLAM & SMITH LLP<br>303 South Washington Avenue<br>Marshall, TX 75670<br>Tel: (903) 934-8450<br>Fax: (903) 934-9257<br><br>Betty Chen<br>LEAD ATTORNEY<br>State Bar No. 24056720<br>bchen@desmaraisllp.com<br>DESMARAIS LLP<br>101 California Street<br>San Francisco, CA 94111<br>Tel: (415) 573-1900<br>Fax: (415) 573-1901<br><br>Jeffrey Seddon (*pro hac vice*)<br>jseddon@desmaraisllp.com<br>Caitrianne Feddeler (*pro hac vice*)<br>cfeddeler@desmaraisllp.com<br>DESMARAIS LLP<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 351-3400<br>Fax: (212) 351-3401<br><br>Kristin L. Cleveland<br>OR Bar No. 001318<br>kristin.cleveland@klarquist.com<br>KLARQUIST SPARKMAN, LLP<br>121 SW Salmon Street, Suite 1600<br>Portland, OR 97204<br>Tel: (503) 595-5300<br>Fax: (503) 595-5301<br><br>*Counsel for Defendant Microsoft Corporation* |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document and all attachments have been served on all counsel of record via email on September 2, 2025.

>*/s/ Melissa R. Smith*
>Melissa R. Smith

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel for the parties complied with the meet and confer requirement in Local Rule CV-7(h).

>*/s/ Melissa R. Smith*
>Melissa R. Smith