**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| PARTEC AG and BF EXAQC AG,<br>Plaintiffs,<br>vs.<br>MICROSOFT CORPORATION,<br>Defendant. | Civil Action No. 2:24-cv-00433-RWS-RSP<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' OPPOSITION TO MICROSOFT'S MOTION**
**TO COMPEL SUPPLEMENTAL INFRINGEMENT CONTENTIONS**

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................ 1

II. BACKGROUND ........................................................ 1

III. ARGUMENT ........................................................ 4

A. Microsoft's Year Delay Shows ParTec's Contentions Are Not Deficient. ........................................................ 4

B. ParTec's Infringement Contentions Adequately Disclosed the Accused Instrumentality and ParTec's Theories of Infringement. ........................................ 5

1. ParTec Adequately Disclosed the Accused Instrumentality. ...................... 5

2. ParTec Has Adequately Disclosed Its Theories of Infringement. ............... 9

IV. CONCLUSION ........................................................ 12

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Connectel, LLC v. Cisco Sys., Inc.*,
391 F. Supp. 2d 526 (E.D. Tex. 2005) ....................12

*EON Corp. IP Holdings, LLC v. Sensus USA Inc.*,
2010 WL 346218 (E.D. Tex. Jan. 21, 2010) ....................12

*Harris Corp. v. Huawei Device USA, Inc.*,
2019 WL 4247067 (E.D. Tex. Sept. 6, 2019) ....................4

*IP Co. v. Oncor Elec. Delivery Co.*,
2009 WL 10677796 (E.D. Tex. Dec. 8, 2009) ....................3

*Plant Equip., Inc. v. Intrado, Inc.*,
2012 WL 12903709 (E.D. Tex. Feb. 1, 2012) ....................5

*SSL Servs., LLC v. Cisco Sys., Inc.,*
2016 WL 727673 (E.D. Tex. Feb. 24, 2016) ....................12

### Other Authorities

Azure. Microsoft Mechanics, *What runs GPT-4o? Inside the Biggest AI Supercomputer in the Cloud with Mark Russinovich,* https://www.youtube.com/watch?v=DlX3QVFUtQI (last accessed Oct. 5, 2025) ....................6

Mark Russinovich, *Microsoft Build 2023 Inside Azure Innovations - AI Infrastructure*, https://www.youtube.com/watch?v=0TZVvIvfkn4 (last accessed Oct. 5, 2025) ....................7

Microsoft, *Microsoft Announces New Supercomputer, Lays Out Vision for Future AI Work* (May 19, 2020), https://news.microsoft.com/source/features/ai/openai-azure-supercomputer/ ....................6

Microsoft, *What Runs ChatGPT? Inside Microsoft's AI Supercomputer | Featuring Mark Russinovich* (May 24, 2023), https://techcommunity.microsoft.com/t5/microsoft-mechanics-blog/what-runs-chatgpt-insidemicrosoft-s-ai-supercomputer-featuring/ba-p/3830281 ....................6

Reuters, *OpenAI Negotiates with Microsoft for New Funding and Future IPO, FT Reports* (May 12, 2025), https://www.reuters.com/business/openai-negotiates-with-microsoft-unlock-new-funding-future-ipo-ft-reports-2025-05-11/ ....................9

## TABLE OF DEFINED TERMS

| Abbreviation | Description |
|---|---|
| Dkt. No. | Filings on this Court's docket. |
| Exs. A–C | Exhibits accompanying Microsoft's Motion, Dkt. Nos. 88-2–88-4. |
| Exs. 1–9 | Exhibits attached to Declaration of Jacob B. Levin, filed contemporaneously with this opposition. |

Emphases added unless otherwise indicated.

## I. INTRODUCTION

Plaintiffs ParTec AG and BF exaQC AG ("ParTec") served detailed infringement contentions on Defendant Microsoft Corporation ("Microsoft") on September 4, 2024. Microsoft waited nearly a full year—until July 2025—to request that ParTec supplement those contentions. Despite this significant delay, ParTec offered to provide updated contentions by a specified date after Microsoft completed its incomplete production of key technical information as a reasonable compromise to avoid burdening the court. Microsoft never responded to ParTec's offer. Instead—after more than a month of ignoring ParTec's proposal—Microsoft filed this motion to compel.

Microsoft's motion should be denied for either of two reasons. First, Microsoft's unreasonable, yearlong delay in challenging the sufficiency of ParTec's infringement contentions—while the case proceeded apace—shows that the contentions were more than sufficient to put Microsoft on notice of ParTec's theories long ago and that Microsoft's current arguments have no merit. Second, a review of the infringement contentions shows they fully comply with P.R. 3-1 both by identifying (using Microsoft's own documents and terminology) the Accused Instrumentality and by explaining in detail and at length (while again relying on Microsoft's own statements) ParTec's theories of infringement.

## II. BACKGROUND

ParTec filed this suit sixteen months ago, on June 10, 2024, asserting infringement of three patents (the "Asserted Patents"): United States Patent No. 10,142,156 (the "'156 Patent"), No. 11,934,883 (the "'883 Patent"), and No. 11,537,442 (the "'442 Patent"). The Asserted Patents generally teach systems and methods for dynamic resource management in complex, heterogenous computing systems. Compl. ¶ 51. In particular, the inventions teach systems and methods for (1) the dynamic assignment of different types of computing hardware, such as processing units

and boosters, to each other, '156 Patent at 2:21–25, and (2) for dynamically assigning tasks between the processing units and boosters, '442 Patent at 1:66–2:18.

ParTec accuses what Microsoft refers to as its Azure AI infrastructure of infringement. Compl. ¶ 54. As relevant here, Microsoft's Azure AI infrastructure includes software that Microsoft calls "Singularity," which ParTec accuses of meeting various claim limitations related to dynamic assignment. *See* Compl. ¶¶ 88, 118; Ex. 1 at 25–29, 32–37, 41–42, 54–56, 69–72, 74–76, 78–92, 100–02, 119–35. The Azure AI infrastructure also includes a system (the "OpenAI Supercomputer") that Microsoft built, hosted, and operated for OpenAI. *See* Compl. ¶¶ 116, 127; Ex. 1 at 10–11, 13–15, 17, 19–20, 24–25, 51, 53, 62–63, 65–66, 68–69, 72–73, 98–99, 109–15, 136–37, 140–41. On September 4, 2024, ParTec served infringement contentions on Microsoft detailing where each element of each asserted claim was found within Microsoft's Azure AI infrastructure. *See* Ex. 1. For nearly a year, the parties proceeded on the basis, consistent with Microsoft's public statements, that Singularity and the OpenAI Supercomputer were part of the Azure AI infrastructure.

In July 2025—after nine months with ParTec's infringement contentions—Microsoft first asked ParTec to supplement. ParTec responded that because "Microsoft has not completed its production" of certain technical information, it would be "inefficient to piecemeal amend [ParTec's] infringement contentions as Microsoft trickles out discovery, as Microsoft suggests." ParTec also asked for a "date certain by which Microsoft will complete its production of technical documents and will produce … additional source code requested." Microsoft demanded a lead and local meet and confer. At that conference (on Aug 15) and in an email after, ParTec explained that its infringement contentions were sufficient but nonetheless offered to supplement by a specified

date after Microsoft completed its production of the outstanding technical information as a reasonable compromise to avoid burdening the Court.

At the time, Microsoft was refusing to produce source code for certain features of Singularity. *See* Dkt. No. 63. Microsoft only agreed to produce the relevant code after ParTec was forced to file a motion to compel and on the eve of the discovery hearing. Dkt. No. 78. Microsoft still has not completed its production of that code. Moreover, Microsoft is still producing documents, including technical documents, that should have been produced months ago. After the August 15 meet and confer, Microsoft produced 10,454 documents on August 30. Then, just the week before filing this motion, Microsoft produced another 38,075 documents. Those two productions account for more than one-third of Microsoft's total production and show that Microsoft is still producing relevant technical information. Finally, crucial discovery requests concerning the OpenAI Supercomputer remain outstanding. As detailed more fully in a motion to compel ParTec is also filing today, Microsoft is refusing to produce approximately 1,000 documents, including technical documents, concerning the OpenAI Supercomputer because of objections from third-party OpenAI. Simply put, when Microsoft first began requesting that ParTec supplement its infringement contentions, important technical discovery remained outstanding, and it is still outstanding today. Microsoft's demand for supplemental contentions was and is premature. *See IP Co. v. Oncor Elec. Delivery Co.*, 2009 WL 10677796, at *2 (E.D. Tex. Dec. 8, 2009) (a party "cannot complain of inadequate infringement contentions while at the same time refusing to provide materials, such as source code … that could allow a plaintiff to provide more detailed disclosures.").

Microsoft never responded to ParTec's offer to supplement its infringement contentions after Microsoft met specified discovery obligations. Instead, Microsoft inexplicably waited

another month and a half to file the instant motion. Microsoft never provided any warning to ParTec, instead filing its motion after hours on September 25.[1]

## III. ARGUMENT

### A. Microsoft's Year Delay Shows ParTec's Contentions Are Not Deficient.

Microsoft's own actions demonstrate that ParTec's infringement contentions served their purpose of putting Microsoft on notice of ParTec's infringement theories and that Microsoft's present motion thus lacks merit. ParTec served its infringement contentions on September 4, 2024. Microsoft then inexplicably and unreasonably delayed ***nine months*** to demand that ParTec supplement its infringement contentions. Given Microsoft's other unexplained delays in filing this motion, it has now been more than one year since ParTec served its contentions.

In that time, discovery has proceeded apace. Microsoft has served three invalidity contentions, Microsoft has produced some (but not all) source code for Singularity, Microsoft has provided some (but not most) discovery into the OpenAI Supercomputer, the parties have conducted five depositions, and the parties have responded to dozens of written discovery requests. Claim construction is well underway.

This course of events makes one thing clear. ParTec's infringement contentions provided exactly what this Court's local rules require: they "provide[d] reasonable notice of asserted theories of infringement." *Harris Corp. v. Huawei Device USA, Inc.*, 2019 WL 4247067, at *3 (E.D. Tex. Sept. 6, 2019). If ParTec's contentions were as insufficient as Microsoft now alleges,

---

[1] Microsoft's assertion that the parties discussed amending infringement contentions on a September 11, 2025 lead and local is misleading. Microsoft communicated *OpenAI's position* that OpenAI objected to the disclosure of its confidential information. But Microsoft did not renew its demand that ParTec supplement its infringement contentions, indicate it had any intention of moving on this issue (which had been dormant at that point for one month), or address ParTec's outstanding offer to supplement once Microsoft completed its production of source code and technical documents. Microsoft's motion thus came as a surprise to ParTec.

then Microsoft would have demanded supplementation sooner. Microsoft did not. This demonstrates that ParTec's contentions were more than sufficient to put Microsoft on notice of ParTec's theories and are not deficient. This is reason alone to deny Microsoft's motion. *See Plant Equip., Inc. v. Intrado, Inc.*, 2012 WL 12903709, at *2 (E.D. Tex. Feb. 1, 2012) (denying motion to compel supplemental infringement contentions where preliminary contentions provided "sufficient notice" of infringement claims).

**B. ParTec's Infringement Contentions Adequately Disclosed the Accused Instrumentality and ParTec's Theories of Infringement.**

While Microsoft's significant, unexplained delay in demanding that ParTec supplement its infringement contentions alone shows that ParTec's contentions were not deficient, a review of ParTec's contentions leads to the same result. ParTec's contentions adequately identify the Accused Instrumentality. They rely on Microsoft's own terminology. And ParTec disclosed its theories of infringement. Microsoft simply disagrees with them on the merits. But that's not the purpose of infringement contentions or reason for requiring supplementation. These are independent, alternative grounds for denying Microsoft's motion.

**1. ParTec Adequately Disclosed the Accused Instrumentality.**

ParTec's infringement contentions plainly identify the "Accused System" as "the Microsoft Azure AI system or infrastructure." Ex. 1 at 2. Microsoft seeks to twist this clear statement by accusing ParTec of relying on a "mix-and-match" of elements from three separate instrumentalities. Mot. at 4. Microsoft's basis for this argument is that the Azure AI infrastructure, the OpenAI Supercomputer, and Singularity are separate instrumentalities. But Microsoft's public statements and confidential documents—in which it regularly shows or refers to Singularity and the OpenAI Supercomputer as part of the Azure AI infrastructure—contradict its assertion.

Microsoft has regularly stated that the OpenAI Supercomputer is part of the Azure AI infrastructure. For example, Microsoft Azure's CTO (Mark Russinovich) appeared in a video discussing the "AI supercomputer built in 2020 for OpenAI" on Azure. Microsoft Mechanics, *What runs GPT-4o? Inside the Biggest AI Supercomputer in the Cloud with Mark Russinovich,* https://www.youtube.com/watch?v=DlX3QVFUtQI (last accessed Oct. 5, 2025); *see also* Microsoft, *Microsoft Announces New Supercomputer, Lays Out Vision for Future AI Work* (May 19, 2020), https://news.microsoft.com/source/features/ai/openai-azure-supercomputer/ (press release discussing supercomputer "[b]uilt in collaboration with and exclusively for OpenAI" that is "***hosted in Azure***."). An internal Microsoft document similarly explains that Microsoft [REDACTED] Ex. 2 at 2.

In this litigation, Microsoft has continued to acknowledge that the OpenAI Supercomputer is part of the accused Azure AI infrastructure. In response to interrogatories seeking details on the "Accused System"—that is, "the Microsoft Azure AI system or infrastructure"—Microsoft included details of the OpenAI Supercomputer. Ex. 3 at 2–5. In response to an interrogatory seeking codenames for the "Accused System," Microsoft included names for the OpenAI Supercomputer ("[REDACTED]"). Ex. 4 at 2–3. And in its ESI disclosures, Microsoft provided names for custodians "knowledgeable about the components, development and operation of [the] OpenAI supercomputer." Ex. 5 at 3.

The same is true for Singularity. Microsoft publicly describes Singularity as the software responsible for managing its Azure AI infrastructure. *See, e.g.*, Microsoft, *What Runs ChatGPT? Inside Microsoft's AI Supercomputer | Featuring Mark Russinovich* (May 24, 2023), https://techcommunity.microsoft.com/t5/microsoft-mechanics-blog/what-runs-chatgpt-insidemicrosoft-s-ai-supercomputer-featuring/ba-p/3830281. (explaining that Singularity is "designed

specifically to help run Microsoft's global scale AI workloads"). Microsoft does so in confidential documents as well. Ex. 6 at 1 ("[REDACTED]").

Microsoft also publicly depicts Singularity (referred to sometimes publicly as "Project Forge") as part of the software stack running its AI infrastructure:




Mark Russinovich, *Microsoft Build 2023 Inside Azure Innovations - AI Infrastructure*, https://www.youtube.com/watch?v=0TZVvIvfkn4 (last accessed Oct. 5, 2025). Microsoft confidential documents are to the same effect:



Ex. 7 at 2.

In short, Microsoft's own statements—made in public, private, and consistently throughout this litigation—treat Singularity and the OpenAI Supercomputer as part of the accused Azure AI infrastructure, not as separate instrumentalities. ParTec has justifiably relied on Microsoft's repeated statements and terminology to define the scope of the Accused Instrumentality. The Court should thus reject Microsoft's unsupported attempts to rewrite the meaning of the Azure AI infrastructure to present ParTec's clear identification of the Accused System as a "hodgepodge" of multiple instrumentalities. Mot. at 4.

As for Microsoft's passing, but related, suggestion that the OpenAI Supercomputer is not accused and ParTec should not receive discovery into it, Mot. at 4, that too is incorrect. ParTec's infringement contentions highlight the many allegations against the OpenAI Supercomputer. *See* Ex. 1 at 13–14, 51, 65, 72, 98, 112, 136, 140. Further, Microsoft's recent change of position to

assert that the OpenAI Supercomputer is not accused—seemingly to appease its partner OpenAI[2] and OpenAI's efforts to block discovery of materials in Microsoft's possession, which are the subject of ParTec's separate motion to compel—is belied by Microsoft's conduct in this litigation until very recently. As already discussed, Microsoft has provided information concerning the OpenAI Supercomputer in response to interrogatories and in its ESI disclosures. In addition, Microsoft has produced some documents concerning the OpenAI Supercomputer, *see, e.g.* Ex. 8 (document describing "[REDACTED]")—though it is withholding many more—and agreed to search terms and then produced emails concerning the OpenAI Supercomputer, *see* Ex. 9 at 11 (search term including "OpenAI OR OAI"). OpenAI's letter to Microsoft related to this motion even quotes a Microsoft letter telling OpenAI that Microsoft must "[REDACTED] Ex. C. Microsoft plainly and correctly understood the OpenAI Supercomputer to be part of the Accused Instrumentality until recently and under pressure from its valued partner.

**2. <u>ParTec Has Adequately Disclosed Its Theories of Infringement.</u>**

In addition to being incorrect that ParTec has not adequately identified the Accused Instrumentality, Microsoft is incorrect that ParTec's infringement contentions fail to disclose how two limitations of the asserted patents are present in the accused instrumentality. *See* Mot. at 5–7. As even a cursory review of ParTec's infringement chart reveals, this is not the case.

Microsoft argues that ParTec "do[es] not identify any dynamic assignment of boosters … to computation nodes … using a predetermined assignment metric" or the "dynamic distribution of subtasks." Mot. at 5–6 (quotations omitted). Microsoft is wrong on both counts. As

[2] Microsoft is reported to have invested more than $13 billion in OpenAI to date. *See, e.g.*, Reuters, *OpenAI Negotiates with Microsoft for New Funding and Future IPO, FT Reports* (May 12, 2025), https://www reuters.com/business/openai-negotiates-with-microsoft-unlock-new-funding-future-ipo-ft-reports-2025-05-11/.

to the first, ParTec explains, for example, that "***Project Forge (formerly Singularity)***, in part, ***establishes an initial assignment*** of hardware boosters (e.g., GPUs) to a computation node or computation nodes (e.g., CPUs and/or CPU cores) 'depending on the ***competing cluster load***' and the ***SLA [service level agreement]*** of the job." Ex. 1 at 32–33 (citation omitted).

The infringement contentions further explain, over four pages, how "the Microsoft Azure AI system includes a resource manager that is arranged, during the processing of a computation task: (i) to update the predetermined assignment metric, and (ii) establish a dynamic assignment by using the predetermined assignment metric that was updated." Ex. 1 at 33–36. The contentions explain:

> Microsoft … has touted the dynamic assignment capabilities of the Azure AI infrastructure, explaining that the "binding between the job workers in Singularity [now Project Forge] and the accelerator devices is ***dynamic and constantly changing*** during the life-time of the job." Microsoft, *Singularity: Plant-Scale, Preemptive and Elastic Scheduling of AI Workloads*, https://arxiv.org/pdf/2202.07848.
>
> …
>
> Project Forge (Singularity), for example and in part, adapts assignments to changes in load. Microsoft has explained that "Singularity [now Project Forge] ***adapts to increasing load*** on an inference job, freeing up capacity ***by elastically scaling down or pre-empting training jobs***." Microsoft, *Singularity: Plant-Scale, Preemptive and Elastic Scheduling of AI Workloads*, https://arxiv.org/pdf/2202.07848 (ParTec_Microsoft_00000001). …
>
> Likewise, the CTO of Microsoft Azure (Mark Russinovich) has explained, while demonstrating Project Forge, that Project Forge will detect that a GPU has "gone idle and automatically takes a checkpoint, because it knows that I'm not busy using the GPUs. Normal circumstances, I would've been hogging the GPU at that point and preventing it from being used for somebody else's workload. But now that ***GPU can be repurposed***"—that is, reassigned. Microsoft, *What Runs ChatGPT? Inside Microsoft's AI Supercomputer | Featuring Mark Russinovich* (May 24, 2023), https://techcommunity.microsoft.com/t5/microsoft-mechanics-blog/what-runs-chatgpt-inside-microsoft-s-ai-supercomputer-featuring/ba-p/3830281 (ParTec_Microsoft_00000352).
>
> …

> Microsoft has further explained that "[a]ll jobs in Singularity are preemptible, migratable, and ***dynamically resizable (elastic)*** by default: a live job can be dynamically and transparently (a) pre-empted and migrated to a different set of nodes, cluster, data centre or a region and resumed exactly from the point where the execution was pre-empted, and (b) resized (i.e., elastically scaled up/down) on a varying set of accelerators of a given type." Microsoft, *Singularity: Plant-Scale, Preemptive and Elastic Scheduling of AI Workloads*, https://arxiv.org/pdf/2202.07848 (ParTec_Microsoft_00000001). "The binding between the job workers in Singularity and the accelerator devices is dynamic and constantly changing during the lifetime of the job." *Id.*; *see also id.* ("No idling of resources: Singularity treats the entire fleet of accelerators as a single logical, shared cluster, and avoids any resource fragmentation or static reservation of capacity."); *id.* ("Resizing/Elasticity: Singularity enables all jobs to be ***dynamically and elastically scaled up or down*** in a transparent manner to use a variable number of AI accelerators.").
>
> Project Forge (Singularity), for example, also adapts assignments in light of the priority of jobs coming into the system. As the CTO of Microsoft Azure (Mark Russinovich) has explained, "[i]f a premium job comes in and there's a low priority job running on the GPUs it needs, low priority gets evicted." Sean Michael Kerner, *Microsoft Details How It's Building AI Cloud Infrastructure*, ITProToday (May 25, 2024), https://www.itprotoday.com/cloud-computing/microsoft-details-how-it-s-building-ai-cloud-infrastructure (ParTec_Microsoft_00000286).

Ex. 1 at 33–36. ParTec's contentions later reiterate:

> As discussed, the Azure AI system establishes an initial assignment of a hardware booster or hardware boosters (*e.g.*, GPUs) to a computation node or computation nodes (*e.g.*, CPUs and/or CPU cores) depending, for example, on load, resource usage, and the SLA of the job. *See* evidence for **Claim [1-c-i]**. Likewise, the Azure AI system updates assignments based on, for example, changes in load, resource usage, and the SLA of the job. *See* evidence for **Claim [1-c-ii]**.

Ex. 1 at 42, 44. Thus, ParTec's contentions, in fact and contrary to Microsoft's assertion, identify ParTec's theory for the "dynamic assignment of boosters … to computation nodes … using a predetermined assignment metric." Mot. at 5.

ParTec's contentions likewise detail how Singularity, in ParTec's view, dynamically assigns sub-tasks:

> ***Project Forge [formerly Singularity] also determines the distribution of computation sub-tasks***. For example, Microsoft has explained that "Singularity [now Project Forge] adapts to increasing load on an inference job, freeing up capacity by elastically scaling down or pre-empting training jobs." …. Microsoft

> has further explained that "[a]ll jobs in Singularity are preemptible, migratable, and ***dynamically resizable (elastic)*** by default: a live job can be dynamically and transparently (a) pre-empted and migrated to a different set of nodes, cluster, data centre or a region and resumed exactly from the point where the execution was pre-empted, and (b) resized (i.e., elastically scaled up/down) on a varying set of accelerators of a given type." …. That is, ***Project Forge dynamically determines the distribution of sub-tasks.***

Ex. 1 at 129–30 (citations omitted).

Faced with ParTec's disclosures, Microsoft resorts to arguing why they are not meritorious in Microsoft's view and fail to show infringement. *See* Mot. at 6–7. But "[i]nfringement contentions are not intended to act as a forum for argument about the substantive issues but rather serve the purpose of providing notice to the Defendants of infringement theories beyond the mere language of the patent claim." *SSL Servs., LLC v. Cisco Sys., Inc.*, 2016 WL 727673, at *7 (E.D. Tex. Feb. 24, 2016) (quotation omitted); *see also EON Corp. IP Holdings, LLC v. Sensus USA Inc.*, 2010 WL 346218, at *2 (E.D. Tex. Jan. 21, 2010) ("The Rules do not require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case."). This is not a case where ParTec provided only "vague, conclusory language or simply mimick[ed] the language of the claims." *Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 528 (E.D. Tex. 2005). Although Microsoft may disagree with ParTec's theory of infringement, the infringement contentions sufficiently notified Microsoft of that theory and therefore satisfy the requirements of P.R. 3-1.

## IV. CONCLUSION

The Court should deny Microsoft's Motion.

Dated: October 7, 2025

Respectfully submitted,

*/s/ Jacob B. Levin*
Justin A. Nelson – Lead Counsel
Texas State Bar No. 24034766
SUSMAN GODFREY, L.L.P.

1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
jnelson@susmangodfrey.com

Matthew R. Berry
Washington State Bar No. 37364
Alexander W. Aiken
Washington State Bar No. 55988
SUSMAN GODFREY, L.L.P.
401 Union St., Suite 3000
Seattle, Washington 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
mberry@susmangodfrey.com
aaiken@susmangodfrey.com

Jacob Brooks Levin
New York State Bar No. 6247589
SUSMAN GODFREY L.L.P.
One Manhattan West
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
jlevin@susmangodfrey.com

Claire Abernathy Henry
Texas State Bar No. 24053063
MILLER, FAIR, HENRY PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
Fax: (903) 757-2323
claire@millerfairhenry.com

S. Calvin Capshaw
Texas State Bar No. 03783900
CAPSHAW DERIEUX LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: (903) 845-5770
ccapshaw@capshawlaw.com

*Counsel for Plaintiffs ParTec AG and BF exaQC AG*

## CERTIFICATE OF SERVICE

This is to certify that on October 7, 2025, all counsel of record were served a copy of the foregoing via email.

*/s/ Jacob B. Levin*
Jacob B. Levin

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document is being filed under seal pursuant to the Protective Order entered in this matter.

*/s/ Jacob B. Levin*
Jacob B. Levin