# Exhibit A

# DESMARAIS LLP

www.desmaraisllp.com

NEW YORK
SAN FRANCISCO
WASHINGTON, DC

Lee J. Matalon
New York, NY
Direct: (212) 808-2918
LMatalon@desmaraisllp.com

October 14, 2025

**Via Email**

Mr. Alexander W. Aiken
Susman Godfrey, LLP
401 Union Street, Ste. 3000
Seattle, WA 98101
(206) 516-3880
aaiken@susmangodfrey.com

CC: Lead and local counsel for all
parties of record

Re: *ParTec AG et al. v. Microsoft Corp.*, No. 2:24-cv-00433 (E.D. Tex.) –
Statement of Diligence Regarding Invalidity Contentions Supplement

Dear Counsel:

This letter provides Microsoft's position on the issue of diligence pursuant to our agreement regarding Microsoft's motion for leave to supplement its invalidity contentions, as to the supplement served September 26, 2025.[1] This letter is provided solely to facilitate resolution of any potential disputes over the supplementation.

Plaintiffs' interrogatory responses and its recent discovery production, including those disclosed around July 2025, led to identification of Parastation V5 as a prior art reference. *See, e.g.*, Pls.' Second Supp. Resp. to Def.'s Second Set Interrogatories No. 18 (July 3, 2025) ("ParaStation software suite allows for 'allocating resources ... in a dynamical manner over the run-time of the job'"). Microsoft then investigated Parastation V5 as a prior art reference in August and September 2025. *See, e.g.*, Pickartz (9/10/2025) Dep. 110:5-9 ("Q: The version of ParaStation MPI that was checked in on June 27, 2007, that was version 5.0.1-0, right? A: That's how I would read the change log, yes."). Those efforts culminated with service of invalidity charts on September 26, 2025. As noted in our prior discussions, Parastation V5 is Plaintiff ParTec's own software or product, and Plaintiffs have been in control of the relevant documents and witnesses both in this litigation and in the ordinary course of business. Accordingly, and as further explained below, Microsoft's understanding of Parastation V5 has developed as Plaintiffs produced discovery. Microsoft diligently investigated and charted Parastation V5 once Microsoft had a basis to

---

[1] The parties agreed Microsoft will provide additional information regarding diligence and Plaintiffs will, within five business days of receipt, either (i) indicate that they are not opposing the motion or (ii) provide Plaintiffs' positions responding on diligence and on any alleged prejudice. Plaintiffs agreed that they will not argue delay based on this process.

**DESMARAIS** LLP

Mr. Alexander W. Aiken
October 14, 2025
Page 2

supplement.

We are hopeful that the parties can avoid the need for opposed motion practice on Microsoft's supplemental contentions, which were served by the deadline for amended pleadings and five weeks before Plaintiffs' Opening *Markman* Brief is due. *See, e.g.*, *Optronic Scis. LLC v. BOE Tech. Grp. Co. Ltd.*, No. 2:23-CV-00549-JRG, 2025 WL 1509150, at *3 (E.D. Tex. May 27, 2025) (granting the defendant's motion for leave to supplement invalidity contentions when the *Markman* hearing was not scheduled for another two months, noting "[a]ny prejudice Plaintiff would suffer is alleviated by the fact that Plaintiff had notice of Defendant's proposed supplemental invalidity contentions" well before briefing claim construction).

1. **Microsoft Diligently Took Discovery Even Though Plaintiffs' Disclosures Obscured The Relationship Between Parastation V5 And The Asserted Claims**

    (a) <u>October 2024 – Microsoft Seeks Written Discovery From Plaintiffs</u>

Since the early stages of discovery, Microsoft diligently sought discovery on Plaintiffs' alleged products and/or systems, including Parastation V5. On October 7, 2024, Microsoft served its First Set of Interrogatories, including:

- **No. 1**: Describe in complete detail the development of the claimed subject matter from conception to reduction to practice, whether actual or constructive, of each the Asserted Claims on a claim-by-claim and element-by-element basis … [including] all products that Plaintiffs contend embody the Asserted Patents; all Persons who participated in the conception and reduction to practice and a description of each Person's role; all Persons having knowledge of such conception, diligence, and reduction to practice ….

- **No. 3**: Describe in complete detail all facts and circumstances surrounding the conception, research and development and implementation of the dynamic Modular System Architecture ("dMSA") (*see* Dkt. 1 ¶ 26), including identification of each Person who participated in and contributed to such conception, development and implementation of the dMSA and the nature of the implementation of dMSA in any operating computing system.

- **No. 4**: Describe in complete detail the nature of Your role, participation, involvement, and/or contribution to any research projects, contracts and/or services relating to the "development and manufacture of modular supercomputers and quantum computers, as well as accompanying system software" (Dkt. 1 ¶ 25), including but not limited to: the JUPITER Exascale Supercomputer (*see* Dkt. 1 ¶ 26), the dynamic Modular System Architecture (dMSA) (*see* Dkt. 1 ¶ 26), the Parastation Modulo software (*see* Dkt. 1 ¶ 29), the MareNostrum 5 pre-exascale computer (*see* Dkt. 1 ¶ 30), the EIGER quantum computer product line (*see* Dkt. 1 ¶ 31), the "ParTec Quantum Factory" (*see* Dkt. ¶ 32), the ALICE supercomputer (*see* Dkt. ¶ 45), the JUROPA 2 supercomputer (*see* Dkt. ¶ 45), the JURECA supercomputer (*see* Dkt. ¶ 45), the JUWELS modular supercomputer (*see* Dkt. ¶ 45), the Meluxina supercomputer, the Leonardo supercomputer, and the Jülich Supercomputing

**DESMARAIS** LLP

Mr. Alexander W. Aiken
October 14, 2025
Page 3

Centre (JSC) Quantum Computing Lab.

- **No. 5**: For each Asserted Claim, describe in detail all facts and circumstances relating to the first written description, offer for sale, sale, public disclosure, public use, and/or disclosure to another of the claimed invention, including, without limitation, the identity of all Persons or Entities involved in each such event, the date on which each such event occurred, and the identity of relevant documents and things referring or relating thereto.

- **No. 7**: Identify and describe in complete detail the nature of any collaboration You have with any Person or Entity relating to the alleged development and manufacture of modular supercomputers and/or quantum computers, including but not limited to: any Named Inventor(s), Jülich Supercomputing Centre (JSC), NVIDIA Corporation, Eviden SAS and/or Atos SE.

- **No. 11:** Separately for each claim of the Asserted Patents, state the full factual and legal basis for Your contention, if any, that the claim is valid under 35 U.S.C. § 101, 102, 103, and 112, including but not limited to any reasons why a person of ordinary skill in the art ("POSITA") would not combine Prior Art references, and any secondary indicia of non-obviousness (e.g., alleged copying of the invention by others, failure of others, long felt need, unexpected results, commercial success, skepticism of experts, industry acclaim or acquiescence of competitors) that Plaintiffs contend exists relating to any claim of the Asserted Patents.

- **No. 13:** Identify all Prior Art known to You, including all Prior Art discovered as a result of patent or Prior Art searches conducted by You or on Your behalf, all Prior Art Identified by any Third Parties or non-parties, and all Prior Art known to the Named Inventor(s) or any other Persons involved in the prosecution of the Asserted Patents and/or Related Patents, including all other Prior Art identified in any foreign counterpart prosecutions or litigation (including administrative proceedings such as oppositions, reexaminations, and the like) relating to any foreign counterpart to the Asserted Patents.

    (b)    <u>November 2024 - Plaintiffs' Responses to Microsoft's First Set of Interrogatories Fail To Identify Parastation V5's Relevance To The Claims</u>

On November 21, 2024, Plaintiffs provided Microsoft with responses to the first set of interrogatories, including the interrogatories identified above. However, Plaintiffs' responses failed to disclose the relationship between Parastation V5 and the asserted claims. For example:

- **(Nov. 2024 Resp.) Nos. 1 and 3:** Plaintiffs' response did not identify Parastation V5, and Plaintiffs did not respond on a claim-by-claim basis.

**DESMARAIS** LLP

Mr. Alexander W. Aiken
October 14, 2025
Page 4

- **(Nov. 2024 Resp.) Nos. 4 and 7:** Plaintiffs' response identified that "ParTec … provided its ParaStation software, along with services and support" for certain clusters and described Parastation as "ParTec's proprietary system software suite that optimizes the performance of supercomputing systems by managing data flow, resource allocation, and workload balancing. The ParaStation suite today includes installation tools, a health checker, and more. Since 2004 ParTec has charged for services and support provided alongside ParaStation, while not separately charging for ParaStation. ParTec continues to develop, update, and provide its ParaStation software to customers, along with ongoing services and support."  The response did not identify the relevance of Parastation V5 to the claims.

- **(Nov. 2024 Resp.) No. 5:** Plaintiffs stated "based on a reasonable investigation, Plaintiffs respond as follows: there was no public written description, offer for sale, sale, public disclosure, and/or public use of the inventions of the '156 Patent and the '883 prior to the filing of European Patent Application No. 10187436. Likewise, there was no public written description, offer for sale, sale, public disclosure, and/or public use of the inventions of the '442 Patent before the filing of European Patent Application No. 18152903."

- **(Nov. 2024 Resp.) No. 11:** As to secondary considerations of nonobviousness, Plaintiffs identified ParTec's "dynamic Modular System Architecture, which utilizes the patented inventions."  Plaintiffs' response refers to Plaintiffs' "patented technology" eight times over five pages but does not address the claims or identify Parastation's relevance.

- **(Nov. 2024 Resp.) No. 13:** Plaintiffs stated "based on a reasonable investigation, Plaintiffs respond as follows: Plaintiffs are not aware of any Prior Art."

Plaintiffs did not disclose the relationship between the asserted claims and Parastation V5 or "dMSA."  Indeed, Plaintiffs identified *no* public disclosures in response to Interrogatory No. 5 and, and stated in response to Interrogatory No. 13 that "Plaintiffs are ***not aware of any Prior Art***."  Not only had Plaintiffs not yet disclosed the relevance of Parastation V5 to the asserted claims, but Plaintiffs' interrogatory responses obscured the relationship.

    (c)    <u>January-February 2025 – Microsoft Seeks Additional Discovery Concerning Parastation V5 and "dMSA," Which Plaintiffs Initially Refused</u>

Microsoft diligently pursued discovery based on its understanding of "dMSA" at the time, prompted by Plaintiffs' representation that the architecture "utilizes the patented inventions" (e.g., in response to Interrogatory No. 11).  For example, on January 14, 2025, Microsoft served two additional interrogatories seeking more information about "dMSA" (which Plaintiffs characterized as embodying the invention(s) of the asserted claims) as well as Parastation V5:

- **No. 17:** Identify all past, pending, and current customers, sales, agreements, and licenses of any products or services offered for sale, sold, or licensed by ParTec, including but not

Mr. Alexander W. Aiken
October 14, 2025
Page 5

- limited to ParaStation software (*e.g.*, ParaStation Modulo software, ParaStation Modulo 2.0 software, ParaStation Modulo Software Suite, ParaStation ClusterTools, ParaStation HealthChecker, ParaStation MPI, ParaStation TicketSuite, ParaStation GridMonitor), the QBridge, and Eiger products. Such identification should include at least an identification of the name of the customer or licensee, the product or service sold or licensed, the date of such sale or license, and the price of such sale or licensee.

- **No. 18:** Describe in detail—on a limitation-by-limitation basis—how you contend ParTec's "dynamic Modular System Architecture" (dMSA) embodies one or more claims of the Asserted Patents, including by identifying all claims that are allegedly embodied by ParTec's dMSA.

Plaintiffs' initial responses dated February 14, 2025 refused to respond to either interrogatory:

- **(Feb. 2025 Resp.) No. 17:** "Plaintiffs will not be responding to this Interrogatory."

- **(Feb. 2025 Resp.) No. 18:** "Plaintiffs will not be responding to this Interrogatory."

On March 6, 2025, Microsoft served amended invalidity contentions charting several additional prior art references based on discovery up until this point. But Plaintiffs at that time still had not explained the relationship between the asserted claims and Parastation V5 or "dMSA." Indeed, Plaintiffs refused to answer Interrogatories 17 and 18 entirely. Additionally, as noted above, Plaintiffs identified *no* public disclosures in response to Interrogatory No. 5 and, and stated in response to Interrogatory No. 13 that "Plaintiffs are *not aware of any Prior Art*," which obscured the relationship between Parastation V5 and the asserted claims.

   (d)  March-April 2025 – Plaintiffs Give Limited Information In Response To Interrogatories 17 and 18

In March and April 2025, Microsoft identified the deficiencies in Plaintiffs' responses to Interrogatories 17 and 18 and diligently pursued the issue. *See* 3/25/2025 – 4/10/2025 emails between C. Feddeler and A. Aiken. Plaintiffs served supplemental responses Interrogatories 17 and 18 on April 28, 2025, nearly two months after Microsoft amended its invalidity contentions. However, those responses only gave limited information:

- **(Apr. 2025 Resp.) No. 17:** "The ParaStation software is not sold or licensed as a standalone product. Instead, it is and has been included with the services and support ParTec has provided in connection with various projects. *See* Plaintiffs' Response to Interrogatory No. 4." Plaintiffs also included a Rule 33(d) citation to dozens of documents (totaling hundreds of pages) with no explanation.

- **(Apr. 2025 Resp.) No. 18:** "The dMSA is an architectural concept or paradigm for the construction of advanced supercomputers. It is one embodiment or way to implement the patented inventions in practice, but not the only one. A system built using the dMSA

DESMARAIS LLP

Mr. Alexander W. Aiken
October 14, 2025
Page 6

>  includes computation nodes (*e.g.*, CPUs or CPU cores) and boosters (*e.g.*, GPUs or FPGAs) that interface via a communication infrastructure (*e.g.*, Infiniband). The system will also include a resource manager responsible for dynamically assigning the computation nodes and boosters to one another and dynamically assigning tasks during computation to ensure the most efficient utilization of resources, improving scalability and fostering cost and energy savings.... The dMSA has been utilized in various supercomputing projects. *See* Plaintiffs' Response to Interrogatory No. 3. Plaintiffs incorporate by reference any expert reports that are served on the foregoing subject matter."

Plaintiffs at this time had not made clear the relationship between the asserted claims and Parastation V5 or "dMSA." With respect to Interrogatory No. 17, Plaintiffs provided a non-response by asserting that Parastation V5 "is ***not*** sold or licensed ***as a standalone product***," which did not straightforwardly answer the interrogatory.

With respect to Interrogatory No. 18, Plaintiffs refused to provide a claim-by-claim identification of the relationship between the Asserted Claims and "dMSA" (which Microsoft understands Plaintiffs assert is protected by those Asserted Claims). Plaintiffs' response did not identify Parastation V5 as relevant in any manner to the purported invention covered by the Asserted Claims. Plaintiffs' response merely stated, with no additional explanation, that the dMSA "system will also include a resource manager responsible for dynamically assigning the computation nodes and boosters to one another and dynamically assigning tasks during computation to ensure the most efficient utilization of resources, improving scalability and fostering cost and energy savings." Parastation V5 was not identified in any material manner in the April 28, 2025 response to Interrogatory No. 18.

Plaintiffs' discovery responses obscured the relationship between Parastation V5 and the asserted claims and Plaintiffs did not provide the discovery necessary to support the invalidity argument. Additionally, as noted above, Microsoft asked a straightforward interrogatory about Parastation V5 (No. 17) and Plaintiffs initially refused to respond to it (in February 2025) and then gave a non-response (in April 2025) that further buried the lede.

      (e)    <u>May-June 2025 – Microsoft Diligently Pursues A Proper Response To Interrogatory No. 18</u>

In May 2025, Microsoft explained that Plaintiffs' response to Interrogatory 18 was still deficient and diligently pursued that issue. *See* 5/15/2025 email from C. Feddeler to A. Aiken. Specifically, Microsoft explained that Plaintiffs did not identify, among other failures, what in "dMSA" is the "resource manager" or the "predetermined assignment metric" (among other claim terms for the Asserted Patents). *See id*.

In response to Microsoft's inquiry, Plaintiffs again failed to identify Parastation V5's relevance. *See* 5/21/2025 email from A. Aiken to C. Feddeler ("It is unclear what Microsoft seeks or thinks can be provided. The resource manager in the dMSA is the resource manager. There is no

**DESMARAIS**LLP

Mr. Alexander W. Aiken
October 14, 2025
Page 7

additional specificity to be added."). After the parties met and conferred, Plaintiffs agreed to supplement their response to Interrogatory 18 with a claim-by-claim mapping of dMSA to one claim of each Asserted Patent.

    2.    **Microsoft Diligently Investigated Parastation V5 Once Plaintiffs Disclosed Its Relevance To The Asserted Claims In July 2025**

        (a)    July 2025 – Plaintiffs Supplement Interrogatory No. 18 And Produce More Than Half A Million Pages Of Discovery

Plaintiffs served their supplemental response to Interrogatory No. 18 on July 3, 2025—shortly before Independence Day Weekend—along with ***over 550,000 pages of documents*** (e.g., Partec_VOL012, containing documents bearing production numbers ParTec_01272759 - ParTec_01828524, totaling 555,765 pages by production number count).

Even setting aside the sheer volume of the document production, Plaintiffs' supplemental response to Interrogatory 18 provided new material facts about Parastation V5's relevance to the Asserted Claims when Plaintiffs pointed to Parastation V5 as "indicating how Plaintiffs contend the dMSA is one embodiment of those claims." Pls.' Second Supp. Resp. to Def.'s Second Set Interrogatories No. 18 (July 3, 2025). In several instances in these charts, Plaintiffs mapped ParaStation V5's functionality to the claims of the asserted patents. *See, e.g.*, *id*. at Ex. A ("ParaStation software suite allows for 'allocating resources . . . in a dynamical manner over the run-time of the job'"), *id*. at Ex. B ("'ParaStation Management' is "able to perform job control, allocation-internal scheduling, and resource assignment on a very fine-granular level"). Plaintiffs cited Parastation V5 as relevant to the claims of each asserted patent, including '156 Patent element 1[c] ("a resource manager … using the predetermined assignment metric that was updated"), '883 Patent element 1[b] ("the resource manager being arranged to: assign … and update the predetermined assignment metric during the processing of the computation task"), and '442 Patent element 1[b] ("generating … in a further computing iteration").

It was not until Plaintiffs' July 3, 2025 response to Interrogatory 18 that Microsoft had sufficient information about Parastation V5's relevance to the asserted claims. Microsoft's initial review of the 500,000+ documents took time to conduct (and Microsoft is still continuing to analyze). As noted below, the documents included in that production also included new information concerning Parastation V5 and its status as prior art. Microsoft also diligently noticed depositions of certain ParTec witnesses, including ParTec's Head of Software Architecture, Simon Pickartz, on July 23, 2025, requesting a deposition date in August.

        (b)    August and September 2025 – Microsoft Diligently Investigates Parastation To Prepare A Potential Invalidity Defense

Microsoft's investigation—which took several weeks and ultimately concluded with Microsoft taking the deposition of ParTec's Head of Software Architecture in September 2025—identified at least three categories of evidence that Microsoft cited in its charts: (i) ParTec production

DESMARAIS LLP

Mr. Alexander W. Aiken
October 14, 2025
Page 8

documents; (ii) published materials, and (iii) Parastation V5 source code.  Microsoft also cited Plaintiffs' interrogatory response in the charts.

      *(i)*      *Plaintiffs' Production Documents*

Microsoft's investigation of Parastation V5 identified at least the following documents produced by Plaintiffs, including a substantial number produced in July 2025, which either demonstrate that Parastation V5 discloses a claim element, establishes prior art status, or both:

- Boosting Cluster Computing - ParTec_01275234
- Presentation produced at ParTec_01641592
- T. Moschny, Parastation Modulo - ParTec_00002507
- T. Moschny, Parastation GridMonitor - ParTec_00084496
- T. Lippert et al., Juropa Supercomputer Special Session at ISC 09 - ParTec_00918843
- U. Detert, JuRoPa - ParTec_01065446
- JuRoPa Report - ParTec Log - ParTec_01065638
- R Krotz, Juropa cluster at JSC - ParTec_01599679
- ParTec_4WS_MUC_EE_Clust.ppt - ParTec_00056438
- M. Rauh, slurm/psmgmt integration - ParTec_00088291
- Juropa Cluster at JSC - ParTec_01599679

These documents were within Plaintiffs' possession, custody, and control, so Plaintiffs were in the best position to know about them and to know their relevance to the Asserted Patents.

      *(ii)*      *Publications*

Microsoft's investigation of Parastation V5 also involved a diligent search of public information, in response to Plaintiffs' Parastation V5 disclosures, to support its invalidity arguments.  Without prejudice to Microsoft's right to identify additional evidence through a future amendment or in an expert report, Microsoft's investigation of Parastation V5 identified at least the following publications, which either demonstrate that Parastation V5 discloses a claim element, establishes prior art status, or both:

- NIC Symposium 2010 - MSFT_PARTEC_000710797
- K. Schinarakis, Two supercomputers from Julich among the ten fastest in the world - MSFT_PARTEC_000711631
- A. Streit, Unicore Summit Opening Slides - MSFT_PARTEC_000711636
- Press Release, ParTec Cluster Competence Center GmbH - MSFT_PARTEC_000711228
- Parastation V5 MPI Administrator's Guide  - MSFT_PARTEC_000710259
- Parastation V5 MPI User's Guide  - MSFT_PARTEC_000710362
- Parastation V5 HealthChecker Administrator's Guide - MSFT_PARTEC_000710445

Mr. Alexander W. Aiken
October 14, 2025
Page 9

- Parastation V5 GridMonitor Administrator's Guide - MSFT_PARTEC_000710490
- ParaStation MPI 5.0 Software Product Detailed Description
- Best Practice Mini-Guide JUROPA - MSFT_PARTEC_000710242
- D. Mallon et al., On the Scalability of the Clusters-Booster concept - MSFT_PARTEC_000711218
- N. Eicker et al., The DEEP Project: Pursuing Cluster-Computing In The Many Core Era (2013) - MSFT_PARTEC_000711591
- N. Eicker et al., Slides for The DEEP Project: Pursuing Cluster-Computing In The Many Core Era (2013) - MSFT_PARTEC_000711599
- N. Eicker, T. Lippert, An accelerated Cluster-Architecture for the Exascale - MSFT_PARTEC_000490082

(iii)   *Parastation V5 Source Code*

Microsoft's investigation of Parastation V5 also included identifying relevant Parastation V5 prior art source code.  Investigating Parastation source code allowed Microsoft to identify which version of Parastation to chart as an invalidity reference, which Microsoft determined to be Parastation V5.  That process was particularly burdensome because Plaintiffs' production of its own source code was incomplete.

Microsoft instead was forced to locate a public-facing repository on Github containing the prior art version of Parastation V5's source code, review that code, identify code that Microsoft understood to be relevant to the claimed functionality, and authenticate the code base.  Microsoft's investigation of the Parastation V5 code remains ongoing, and Microsoft reserves the right to make a future amendment consistent with the Local Rules.

Without prejudice to Microsoft's right to identify additional evidence through a future amendment or in an expert report, Microsoft's investigation of Parastation V5 identified at least the following source code, which either demonstrate that Parastation V5 discloses a claim element, establishes prior art status, or both:

- ParaStation/psmpi - MSFT_PARTEC_000711231
- psmpi\mpich2\src\pmi\slurm\- MSFT_PARTEC_000711271
- psmpi\mpich2\src\pm\hydra\boostrap\slurm\slurm_query_node_list.c - MSFT_PARTEC_000711263
- psmpi\mpich2\src\pm\hydra\boostrap\slurm\slurm_launch.c - MSFT_PARTEC_000711260
- psmpi\mpich2\src\pm\hydra\boostrap\slurm\slurm.h - MSFT_PARTEC_000711256
- psmpi\mpich2\src\pm\hydra\boostrap\slurm\ - MSFT_PARTEC_000711254
- psmpi\mpich2\src\pm\hydra\boostrap\slurm\slurm_query_partition_id.c -

DESMARAIS LLP

Mr. Alexander W. Aiken
October 14, 2025
Page 10

> MSFT_PARTEC_000711267

Microsoft also authenticated the Github code with a ParTec witness so Microsoft could rely on it as true and accurate evidence of Parastation V5's functionality as it existed before the asserted patents' critical dates. On July 23, 2025, Microsoft asked for a deposition of ParTec's Head of Software Architecture, Simon Pickartz, via a 30(b)(1) notice. Microsoft requested a deposition date in August. *See* 7/23/2025 email from C. Feddeler to A. Aiken (serving deposition notice). Plaintiffs did not make Pickartz available until mid-September.

      (c)      September 2025 - Microsoft Deposes ParTec's Head Of Software Architecture And Prepares Invalidity Charts

Plaintiffs made Pickartz available for deposition on September 10, 2025. Pickartz authenticated the change log for the public source code Microsoft obtained from the internet during his deposition. With that testimony, Microsoft confirmed that Parastation—specifically, Parastation V5—was prior art. *See, e.g.*, Pickartz Dep. Ex. 6, at 18:

```
2009-07-30   Jens Hauke  <hauke@par-tec.com>    -    5.0.19-1

    * Default for PSP_ONDEMAND always 0.

2009-07-30   Jens Hauke  <hauke@par-tec.com>    -    5.0.18-1

    * Fix answer to MPI_Init_thread() and
    MPI_Query_thread(). psp support MPI_THREAD_SERIALIZED.

2009-07-28   Jens Hauke  <hauke@par-tec.com>
```

Pickartz also confirmed that Parastation V5's current features existed before 2009 and that the code has not changed substantially since then. *See, e.g.*, Pickartz Dep. 110:5-9 ("Q: The version of ParaStation MPI that was checked in on June 27, 2007, that was version 5.0.1-0, right? A: That's how I would read the change log, yes."); Pickartz Dep. 111:2-4 ("you would only change the first number if you have backwards-incompatible changes.").

    3.    **Microsoft Diligently Supplemented Its Invalidity Contentions On September 26, Five Weeks Before The Opening Claim Construction Brief Is Due, And Nearly Three Months Before The *Markman* Hearing**

Microsoft promptly served the charts and the cover pleading on September 26, 2025, which is five weeks before Plaintiffs' Opening Claim Construction brief is due (October 31), and complied with the deadline for amended pleadings. In turn, Microsoft amended its answer to identify a statutory bar, among other defenses, as a basis for invalidity. *See* Dkt. 89 at p. 30-33. The *Markman* is scheduled for December 12, 2025. *See* Dkt. 48. Microsoft therefore served the charts sufficiently in advance of claim construction to allow Plaintiffs to consider Microsoft's supplemental invalidity

DESMARAIS LLP

Mr. Alexander W. Aiken
October 14, 2025
Page 11

positions (based on Plaintiffs' own software) without any prejudice.

In sum, Microsoft diligently investigated Parastation V5 and prepared invalidity charts upon Plaintiffs' disclosure that Parastation V5 was relevant to the Asserted Claims in July 2025. Therefore, Microsoft has good cause for the supplement served on September 26, 2025.

We hope this letter clarifies the basis for Microsoft's motion so we may avoid contested motions practice. Per our agreement, we look forward to receiving your response within five business days, either (i) indicating Plaintiffs are not opposing the supplementation or (ii) providing Plaintiffs' positions responding on diligence and on any alleged prejudice.

All the best,

*/s/ Lee J. Matalon*
Lee J. Matalon

*Counsel for Microsoft Corporation*