**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| PARTEC AG and BF EXAQC AG, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 2:24-cv-00433-RWS-RSP |
| MICROSOFT CORPORATION, | **JURY TRIAL DEMANDED** |
| *Defendant*. | |

**UNOPPOSED MOTION FOR ALTERNATIVE SERVICE OF**
**SUBPOENAS TO FIPA AND IPCOM**

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................................1

II.   FACTUAL BACKGROUND ................................................................................1

      A.    FIPA's And IPCom's Licensing And Litigation History. ......................................2

      B.    This Lawsuit And Microsoft's Breach Of Contract Counterclaims. ......................2

      C.    Germany's Courts Will Not Serve Document Requests To Non-Parties. ..............3

      D.    FIPA, IPCom, And Their Lawyers Refuse Microsoft's Subpoenas. ......................3

      E.    Plaintiffs' Position. ...............................................................................................4

III.  LEGAL STANDARDS ........................................................................................5

      A.    Service Of Subpoenas On Corporations. ..............................................................5

      B.    Alternative Service Under Federal Rule of Civil Procedure 4(f)(3). ......................6

IV.   ARGUMENT .......................................................................................................6

      A.    FIPA And IPCom Have Minimum Sufficient Contacts. ........................................6

      B.    The Court May Order Alternative Service Under Rule 4(f)(3) Without
            Requiring A Hague Service Attempt. ....................................................................7
            1.    Rule 4(f)(3) contains no Hague "exhaustion requirement." ......................7
            2.    Hague discovery is futile for third-party documents in Germany. ..............9

      C.    The Court Should Order FIPA And IPCom Served Via Counsel..........................10
            1.    Subpoena service on a domestic agent does not implicate the
                  Hague Service Convention. ...................................................................10
            2.    FIPA's and IPCom's attorneys are agents for service of process. ............11

      D.    The Court Should Order FIPA And IPCom Served Via Email. ...........................13
            1.    Email service is not prohibited by international agreement......................13
            2.    Email service complies with due process. ...............................................14

      E.    Plaintiffs' Points Are Immaterial. .......................................................................15

V.    CONCLUSION..................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re BRF S.A. Sec. Litig.*, No. 18-cv-2213,
2019 WL 257971 (S.D.N.Y. Jan. 18, 2019) ......................................................9

*Cunningham v. Gen. Motors LLC*, No. 20 Civ. 3097 (AKH),
2020 WL 4748157 (S.D.N.Y. Aug. 17, 2020) ..................................................15

*Facebook, Inc. v. Banana Ads, LLC*, No. C-11-3619 YGR,
2012 WL 1038752 (N.D. Cal. Mar. 27, 2012) ..................................................14

*Ford Motor Co. v. Mont. 8th Jud. Dist. Ct.*,
592 U.S. 351 (2021) ............................................................................................7

*Gamboa v. Ford Motor Co.*,
414 F. Supp. 3d 1035 (E.D. Mich. 2019) ...........................................10, 14, 15

*Howlink Glob. LLC v. AT&T, Inc.*, No. 2:22-CV-00040-JRG-RSP,
2022 WL 17069109 (E.D. Tex. Nov. 17, 2022) .................................................5

*IPCom GmbH & Co. KG v. AT&T et al.*, No. 2:20-cv-00322-JRG
(E.D. Tex.) .........................................................................................................2

*IPCom GmbH & Co. KG v. Sprint Spectrum L.P.*, No. 2:20-cv-00321-JRG
(E.D. Tex.) .........................................................................................................2

*IPCom GmbH & Co. KG v. Verizon Commc'ns et al.*, No. 2:20-cv-00323-JRG
(E.D. Tex.) .........................................................................................................2

*Lexmark Int'l, Inc. v. Ink Techs. Printer Supplies, LLC*,
291 F.R.D. 172 (S.D. Ohio 2013) ...............................................................14, 15

*In re Mercedes-Benz Emissions Litig.*, No. 16-881 (SDW) (JAD),
2019 WL 2913309 (D.N.J. July 2, 2019) .....................................................14, 15

*Nagravision SA v. Gotech Int'l Tech. Ltd.*,
882 F.3d 494 (5th Cir. 2018) ..........................................................6, 8, 9, 14

*Nat'l Equip. Rental, Ltd. v. Szukhent*,
375 U.S. 311 (1964) ......................................................................13, 14, 15

*Nuance Comm'ns, Inc. v. Abbyy Software House*,
626 F.3d 1222 (Fed. Cir. 2010) .........................................................................6

*In re OnePlus Tech. (Shenzhen) Co., Ltd.*, No. 2021-165,
2021 WL 4130643 (Fed. Cir. Sept. 10, 2021) .........................................6, 8, 9

*RPost Holdings, Inc. v. Kagan*, No. 2:11-CV-238-JRG,
    2012 WL 194388 (E.D. Tex. Jan. 23, 2012)....................................................15

*RSM Prod. Corp v. Fridman*, No. 06 Civ. 11512(DLC),
    2007 WL 2295907 (S.D.N.Y. Aug. 10, 2007)....................................................9

*In re S. Afr. Apartheid Litig.*,
    643 F. Supp. 2d 423 (S.D.N.Y. 2009)................................................10, 14, 15

*SIMO Holdings, Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
    No. 2:20-CV-00003-JRG, 2020 WL 6578411 (E.D. Tex. June 15, 2020)...................8, 11

*Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct.*,
    482 U.S. 522 (1987)..............................................................7, 10, 15

*Ultravision Techs., LLC v. Govision, LLC*, No. 2:18-cv-00100-JRG-RSP,
    2020 WL 10692985 (E.D. Tex. Mar. 16, 2020) .........................................9

*Universal Connectivity Techs. Inc. v. Lenovo Grp. Ltd.*, No. 2:23-CV-00449-JRG,
    2025 WL 510233 (E.D. Tex. Feb. 14, 2025) ....................................6, 11, 13

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
    486 U.S. 694 (1988)............................................................6, 11

*WorldVentures Holdings, LLC v. Mavie*,
    No. 4:18-CV-393, 2018 WL 6523306 (E.D. Tex. Dec. 12, 2018) ................8, 11

## RULES

Fed. R. Civ. P. 4....................................................................5, 9

Fed. R. Civ. P. 4(e)(1)...............................................................5

Fed. R. Civ. P. 4(f)..................................................................6

Fed. R. Civ. P. 4(f)(3) .............................................................. *passim*

Fed. R. Civ. P. 4(h)..................................................................5

Fed. R. Civ. P. 4(h)(1)...............................................................10

Fed. R. Civ. P. 4(h)(1)(A)-(B).........................................................6

Fed. R. Civ. P. 4(h)(2)...............................................................6

Fed. R. Civ. P. 45(c)(1)(A), (c)(2)(A).................................................5

Fed. R. Civ. P. 45(g) ...............................................................5, 7

## REGULATIONS

37 C.F.R. § 1.32(b), (b)(3) ....................................................................................................12

37 C.F.R. § 1.34 ....................................................................................................................12

37 C.F.R. § 11.104(a)(4), (b) ...............................................................................................13

## OTHER AUTHORITIES

ILL. R. PROF'L CONDUCT 1.4 ................................................................................................13

MANUAL OF PATENT EXAMINING PROCEDURE § 402.02(a)(I) ..........................................12

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.03 .............................................................11, 12, 13

## TABLE OF EXHIBITS

Exhibits cited in this filing refer to the following exhibits described in the contemporaneously filed Declaration of Lee J. Matalon.

| Exhibit | Description |
|---------|-------------|
| Ex. 1 | April 9, 2018 License between Microsoft and FIPA/IPCom<br>Restricted - Attorneys' Eyes Only - Filed Under Seal Pursuant To Protective Order |
| Ex. 2 | Microsoft's Subpoenas To FIPA |
| Ex. 3 | Microsoft's Subpoenas to IPCom |
| Ex. 4 | Email correspondence between attorneys for Microsoft and attorneys at the Dechert law firm |
| Ex. 5 | Email correspondence between attorneys for Microsoft and attorneys at the Goodwin Procter law firm |
| Ex. 6 | Email correspondence between attorneys for Microsoft and attorneys at the Mattingly & Malur law firm |
| Ex. 7 | Email correspondence between attorneys for Microsoft and attorneys at the Marshall, Gerstein & Borun law firm |
| Ex. 8 | Excerpt from File History of U.S. Patent Appl. No. 16648103 |
| Ex. 9 | Excerpt from File History of U.S. Patent Appl. No. 17605530 |
| Ex. 10 | Notice Letter from Microsoft to FIPA/IPCom dated September 29, 2025 |
| Ex. 11 | FedEx proof of delivery of Ex. 10 to FIPA dated October 2, 2025 |
| Ex. 12 | FedEx proof of delivery of Ex. 10 to IPCom dated October 2, 2025 |
| Ex. 13 | Email correspondence between attorneys for Microsoft and attorneys for Plaintiffs ParTec AG and BF exaQC AG |
| Ex. 14 | Bing Maps - Directions from FIPA's office (Possartstraße 20, 81679 Munich) to the Consulate General of the United States of America, Munich (Königinstraße 5, 80539 Munich) |

All emphases in this filing are added and internal citations omitted unless otherwise indicated.

## I.    INTRODUCTION

Microsoft respectfully moves for an order permitting alternative subpoena service on two of Microsoft's licensors, German entities IPCom and its parent FIPA.  The entities are owned and controlled by Bernhard Frohwitter, who is also CEO of Plaintiffs ParTec AG and BF exaQC AG, and a named inventor on an asserted patent.  Due in part to that relationship, Microsoft is expressly and impliedly licensed to the Plaintiffs' asserted patents under Microsoft's 2018 agreement with FIPA and IPCom.  Microsoft has also counterclaimed for breach of contract against the Plaintiffs.

Microsoft has exhausted all reasonable means to obtain case-critical discovery from FIPA and IPCom without intervention of this Court.  That is, Microsoft's licensors have refused to provide discovery: they ignored Microsoft's notice letters seeking informal discovery, and their United States counsel rejected Microsoft's subpoenas.  The Hague Convention is not an option either, as the German Courts deny third-party document requests at the service stage.

This Court has jurisdiction and authority to enforce subpoenas over FIPA and IPCom, as explained in Section IV(A)-(B).  Microsoft therefore moves for alternative service via the two mechanisms identified in this motion.  *First*, as explained in Section IV(C), FIPA and IPCom should be served domestically via their current counsel in the United States—an established IP law firm in Chicago—as Courts in this District routinely order under Rule 4(f)(3).  *Second*, as explained in Section IV(D), FIPA and IPCom may also be properly served by emailing Mr. Frohwitter at the address listed in the 2018 license (frohwitter@frohwitter.com), which is not prohibited by international agreement and thus also permitted under Rule 4(f)(3).

Bedrock precedent from the Supreme Court and the Fifth Circuit establishes this Court's authority to order discovery from FIPA and IPCom under the Federal Rules of Civil Procedure. The Court should order alternative service and permit subpoena discovery of FIPA and IPCom.

## II.    FACTUAL BACKGROUND

1

Microsoft seeks subpoena discovery from German entities FIPA Frohwitter Intellectual Property AG ("FIPA") and IPCom GmbH & Co. KG ("IPCom") in connection with certain counterclaims and defenses, added on September 26, 2025. Dkt. 89, at 125-184 ("CC") ¶ 1.

## A.  FIPA's And IPCom's Licensing And Litigation History.

By way of background, Microsoft in April 2018 paid for a patent license from FIPA's and IPCom's principal, Bernhard Frohwitter (who is also Plaintiffs' principal). Ex. 1; CC ¶ 1. The license did not merely cover patents owned by IPCom, a particular patent-holding entity. *Id.* ¶¶ 147–156. Microsoft instead negotiated for a much broader license covering patents controlled by IPCom's parent entity, FIPA—Mr. Frohwitter's IP agency that he operates through his law firm in Munich. *Id.* The definition of "Licensed Patents" in the agreement includes a clause that covers all of FIPA's and IPCom's patents with priority dates before August 1, 2017. *Id*; Ex. 1 § 1.3.

IPCom and FIPA have regularly transacted their business (which is patent licensing) in this District. After licensing to Microsoft, IPCom (which is owned and controlled by FIPA) appeared before this Court's Marshall Division and filed serial lawsuits asserting the same patent portfolio against others. CC ¶¶ 127-130, 145-146. Those cases were filed in 2020 and resolved in 2022.[1]

## B.  This Lawsuit And Microsoft's Breach Of Contract Counterclaims.

Plaintiffs ParTec and BF exaQC AG are two other companies owned and operated by Mr. Frohwitter. CC ¶¶ 54-67. He has owned the rights to ParTec's patents since long before the 2018 license to Microsoft. *Id.* ¶¶ 55-58. In 2021, Mr. Frohwitter created a new licensing agency—BF exaQC AG—and gave the exclusive licensing rights for ParTec's patents to that entity (rather than FIPA) through a series of shell companies. *Id.* ¶ 56. ParTec and BF exaQC AG then sued

---

[1] *See, e.g.*, *IPCom GmbH & Co. KG v. Sprint Spectrum L.P.*, No. 2:20-cv-00321-JRG (E.D. Tex.); *IPCom GmbH & Co. KG v. AT&T et al.*, No. 2:20-cv-00322-JRG (E.D. Tex.); *IPCom GmbH & Co. KG v. Verizon Commc'ns et al.*, No. 2:20-cv-00323-JRG (E.D. Tex.).

Microsoft in 2024, asserting patents filed well before 2017. *Id.* ¶¶ 157-160. But since the 2018 agreement was binding not only on FIPA and IPCom but also on their "Affiliates," Microsoft is expressly and impliedly licensed and has counterclaimed against Plaintiffs for breach. *Id.*

### C. Germany's Courts Will Not Serve Document Requests To Non-Parties.

Microsoft has already sought several Hague discovery requests from different third parties in Germany. However, the German Courts consistently apply a policy to deny service of document requests to non-parties. For example, Microsoft sought a Hague request from the University of Heidelberg, which this Court issued. Dkt. 43, 45. But in response to this Court's request, the Court of Baden-Württemberg stated it would not serve the document requests because the recipients were not parties to this lawsuit. Dkt. 62 at 1-2.

| Original (Dkt. 62) | Machine Translation |
|---|---|
| Die Bundesrepublik Deutschland hat zu Artikel ubereinkommens einen Vorbehalt erklart. 23 des Haager Beweisaufnahme- Die Erklarung kann unter https://www.hcch.net/de/states/authorities/details3/?aid=501 eingesehen werden. | The Federal Republic of Germany has entered a reservation to Article 23 of the Hague Evidence Convention. The declaration can be viewed at: https://www.hcch.net/de/states/authorities/details3/?aid=501. |
| ***Die Herausgabe von Dokumenten kann danach nur verlangt werden***, wenn diese genau bezeichnet sind und ***sich im Besitz einer Partei des Verfahrens befinden***. | Accordingly, ***the production of documents may only be requested if*** those documents are precisely identified and are ***in the possession of a party to the proceedings***. |
| Der Zeuge und die Universitat Heidelberg ***sind nicht Partei des Verfahrens***. | The witness and the University of Heidelberg ***are not parties to the proceedings***. |

### D. FIPA, IPCom, And Their Lawyers Refuse Microsoft's Subpoenas.

Given the German Courts' policy of denying non-party document requests at the service stage, Microsoft prepared subpoenas for FIPA and IPCom. Exs. 2, 3. Microsoft attempted service on four law firms whom Microsoft understood represents or has represented FIPA and IPCom. Exs. 4-7. Three of four firms responded that FIPA and IPCom are not current clients. Exs. 4-6.

The fourth firm—Marshall, Gerstein & Borun LLP ("MGB"), an established IP law firm

in Chicago[2]—confirmed that FIPA and IPCom are clients but refused to accept the subpoenas. Ex. 7 at 1. Microsoft identified MGB attorneys Michael Furmanek and Matthew Carey based on their roles in prosecuting patents assigned to FIPA/IPCom and Bernhard Frohwitter.[3] *See, e.g.*, Exs. 8-9. Microsoft asked MGB's Mr. Furmanek to confirm whether he had forwarded the subpoenas to Mr. Frohwitter via email—which the 2018 license expressly permits as a method of serving notice (*see* Ex. 1 § 10.5)—but Mr. Furmanek refused to provide confirmation. Ex. 7 at 1. His response did, however, confirm FIPA and IPCom are MGB's "clients." *Id.* ("We will not be disclosing what communications, if any, we've had with any of **our clients**, as Microsoft requests.").

Separately, Microsoft sent notice letters (with copies of the subpoenas) via FedEx to FIPA and IPCom's business addresses—also permitted under the 2018 license. Ex. 10; Ex. 1 § 10.5. The notice letters informed FIPA and IPCom that the subpoenas may be obtained from their attorney, Mr. Furmanek, at MGB. Ex. 10. The notice letters also requested FIPA and IPCom to voluntarily produce discovery, pursuant to Section 10.2. *Id.*; Ex. 1 § 10.2. The notice letters were delivered via FedEx on October 2, 2025. Exs. 11, 12. Microsoft never received a response.

Microsoft's original subpoenas (Exs. 2, 3) identified return dates of October 14 (as to documents) and October 21 (as to testimony). Those dates have now come and gone. Microsoft intends to issue renewed subpoenas and therefore brings this motion for alternative service.

### E.    Plaintiffs' Position.

Microsoft contacted Plaintiffs' counsel to seek their position on this motion. Plaintiffs' counsel stated Plaintiffs "are not formally opposing" this motion because their counsel does not

---

[2] *See* https://www.marshallip.com/our-firm/ ("exclusively dedicated to … the practice of IP law"; "Marshall IP® Please contact us to discuss your intellectual property needs.")

[3] Microsoft understands that MGB has represented IPCom, FIPA, and/or Mr. Frohwitter for at least the following U.S. Patent Applications: Nos. 17605530, 16345524, 17538181, 17223190, 16950972, 16950979, 17049283, 17049260, 16925115, 16887575, 16652517, 16648103, 16635929, 16622992, 16664532, 16555479, 16345564, 16345497, and 16345509.

represent FIPA or IPCom.  *See* Ex. 13 (email reflecting Plaintiffs' positions on this motion).

## III.    LEGAL STANDARDS

A subpoena may command document productions and depositions "within 100 miles of where the person resides, is employed, or regularly transacts business in person."  Fed. R. Civ. P. 45(c)(1)(A), (c)(2)(A).  The Court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it."  Fed. R. Civ. P. 45(g).

### A.    Service Of Subpoenas On Corporations.

For service of subpoenas on a corporation, "courts generally allow the analogous method for service under Rule 4 as long as the entity has minimum sufficient contacts" for the exercise of jurisdiction.  *Howlink Glob. LLC v. AT&T, Inc.*, No. 2:22-CV-00040-JRG-RSP, 2022 WL 17069109, at *1 (E.D. Tex. Nov. 17, 2022).  Federal Rule of Civil Procedure 4(h) identifies the manner of service for foreign and domestic corporations depending on whether service is within or without a judicial district of the United States.

If within a judicial district of the United States, the process must be served:

> (A) "in the manner prescribed by Rule 4(e)(1) for serving an individual"; which is "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made" or
>
> (B) "by delivering a copy of the [process] to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the [recipient]"

Fed. R. Civ. P. 4(h)(1)(A)-(B); 4(e)(1).  "Where service on a domestic agent is valid and complete under both state law and the Due Process Clause," the Hague Service "Convention has no further implications."  *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988).

If service is made outside any judicial district, the process may be served "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)."

Fed. R. Civ. P. 4(h)(2); *see, e.g.*, *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir. 2018) (approving "court-ordered email service under Rule 4(f)(3)"); *In re OnePlus Tech. (Shenzhen) Co., Ltd.*, No. 2021-165, 2021 WL 4130643, at *1 (Fed. Cir. Sept. 10, 2021) (approving Rule 4(f)(3) service on "on attorneys who had represented OnePlus").

### B.    Alternative Service Under Federal Rule of Civil Procedure 4(f)(3).

Rule 4(f)(3) permits service on a foreign corporation "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). Court-ordered service under Rule 4(f)(3) is neither "extraordinary relief" nor a "last resort" for serving a foreign entity. *Universal Connectivity Techs. Inc. v. Lenovo Group Ltd.*, No. 2:23-CV-00449-JRG, 2025 WL 510233, at *2 (E.D. Tex. Feb. 14, 2025) (citation omitted). Rather, Rule 4(f)(3) "stands independently, on equal footing" with other methods of service under Rule 4(f). *Id.* (citing *Nuance Comm'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1239 (Fed. Cir. 2010)). Courts "typically order service under Rule 4(f)(3) after considering the delay and expense of conventional means of service in conjunction with other special circumstances that justify court intervention." *Id.*

## IV.    ARGUMENT

### A.    FIPA And IPCom Have Minimum Sufficient Contacts.

As a preliminary matter, the Court may properly exercise personal jurisdiction over FIPA and IPCom at least because those entities have minimum sufficient contacts with Texas and this District. As patentees, the Eastern District of Texas was their chosen forum, with IPCom having filed multiple lawsuits in the Marshall Division. *See* CC ¶ 13. The patents asserted in those cases were those among those licensed to Microsoft, and Microsoft here claims a breach of that license. *Id.* Microsoft's counterclaims cite numerous facts from the record in that litigation to support the claim of breach and its license defenses. *Id.* ¶¶ 13, 49, 127-130, 145-146. These contacts are more than sufficient to satisfy the relatedness requirements for personal jurisdiction. *See Ford Motor*

*Co. v. Mont. 8th Jud. Dist. Ct.*, 592 U.S. 351, 360 (2021).

This Court can order subpoena compliance, enforced through appropriate orders under Rule 45(g), on at least two independent bases. **First**, Microsoft's renewed subpoenas will identify suitable locations in Europe within 100 miles of FIPA/IPCom's headquarters.[4]  Although the German Courts will not **serve** document requests, that does not prevent this Court from ordering discovery under its own jurisdiction and supervision. *See, e.g.*, *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct.*, 482 U.S. 522, 539–40 (1987) (concluding "the Hague [Evidence] Convention did not deprive the District Court of the jurisdiction it otherwise possessed to order a foreign national party before it to produce evidence physically located within a signatory nation.").

**Second**, the Court can also order compliance in Marshall.  FIPA and IPCom have regularly transacted their business (which is patent licensing) by appearing to enforce patents in the Marshall Division of this Court.  *See* Section II.A.  Microsoft expects at least one representative of FIPA/IPCom (Mr. Frohwitter) to appear in Marshall for trial, as he CEO of Plaintiffs and a named inventor listed on Plaintiffs' initial disclosures.[5]  Since Mr. Frohwitter is also a representative of FIPA and IPCom, the Court may order their compliance in Marshall through him.

### B.    The Court May Order Alternative Service Under Rule 4(f)(3) Without Requiring A Hague Service Attempt.

#### 1.    Rule 4(f)(3) contains no Hague "exhaustion requirement."

Microsoft was not required first to seek and be denied discovery through the Hague before filing this motion.  The Fifth and Federal Circuits have approved Rule 4(f)(3) service—both on counsel and via direct email—even where Hague service was not attempted.

---

[4] For the avoidance of doubt, the Court can order compliance at a location where Germany's internal restrictions do not apply.  For example, the U.S. Consulate in Munich is less than 2 miles from FIPA's office (Possartstrasse 20, Munich).  Ex. 14.  The Court can also order compliance at a place within 100 miles of FIPA's office in a neighboring country (e.g., Austria or Czechia).
[5] Microsoft also may call Mr. Frohwitter as a trial witness, and reserves its rights to do so.

In *OnePlus* (a case decided under Fifth Circuit law), the Federal Circuit approved alternative service of a foreign entity's domestic counsel even where the movant "elected not to attempt" Hague service. 2021 WL 4130643, at *1. Recounting the facts of that case, the Federal Circuit noted: "Although the People's Republic of China is a signatory to the Hague Service Convention . . . , Brazos elected not to attempt service on OnePlus by invoking the Hague Convention" and instead moved for alternative service under Rule 4(f)(3) "on attorneys who had represented OnePlus in the past and on OnePlus's authorized agent for service in Hayward, California." *Id.* The Federal Circuit concluded the District Court did not clearly abuse its discretion by granting alternative service. *Id.* at *3 (petition denied).

Citing decisions from the Eastern District of Texas, the Federal Circuit in *OnePlus* explained that "courts have recognized that delay and expense are factors that legitimately bear on whether to issue an order for alternative service." *Id.* (citing *WorldVentures Holdings, LLC v. Mavie*, No. 4:18-CV-393, 2018 WL 6523306, at *14 (E.D. Tex. Dec. 12, 2018); *SIMO Holdings, Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, No. 2:20-CV-00003-JRG, 2020 WL 6578411, at *3 (E.D. Tex. June 15, 2020)). The Federal Circuit then explained that "while some courts, in the exercise of their discretion, have looked to whether there has been a showing that the [movant] has reasonably attempted to effectuate service . . . by conventional means . . . 'those considerations guide the exercise of discretion, and are not akin to an exhaustion requirement.'" *Id.* at *3 (quoting *In re BRF S.A. Sec. Litig.*, No. 18-cv-2213, 2019 WL 257971, at *2 (S.D.N.Y. Jan. 18, 2019)).

Similarly, the Fifth Circuit explained in *Nagravision* that "Rule 4 permits service on foreign [entities] 'by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents' ***and*** 'by other means not prohibited by international agreement, as

the court orders.'"  882 F.3d at 498 (emphasis in original).  The Fifth Circuit upheld "court-ordered email service under Rule 4(f)(3)" and rejected the argument that email service did not comply with the Hague Service Convention because, in that case, "service was not effected pursuant to the Hague Convention, and that agreement does not displace Rule 4(f)(3)."  *Id.*  Microsoft was not required to attempt Hague service before filing this motion.

### 2.    Hague discovery is futile for third-party documents in Germany.

Courts grant alternative service where proceeding through the Hague Service Convention would be futile.  For example, Courts have found alternative service appropriate where the foreign state has an established history of noncompliance with a particular type of request for substantive reasons.  *See, e.g.*, *Ultravision Techs., LLC v. Govision, LLC*, No. 2:18-cv-00100-JRG-RSP, 2020 WL 10692985, at *2-4 (E.D. Tex. Mar. 16, 2020); *RSM Prod. Corp v. Fridman*, No. 06 Civ. 11512(DLC), 2007 WL 2295907, at *3 (S.D.N.Y. Aug. 10, 2007).

Alternative service is appropriate because the German Courts have adopted a consistent policy of not serving Hague document requests on non-parties.  Microsoft's previous (unsuccessful) attempts to serve document requests in Germany demonstrate that proceeding through the Hague would be futile here.  *See, e.g.*, Section II.C (noting German Court's refusal to serve document requests to a recipient who is not a "party to the proceedings").  FIPA and IPCom are not parties to this litigation, so there is no reason to believe a German Court would treat service of a document request any differently.  Setting aside the many months and great expense required to pursue Hauge requests, the likelihood that Microsoft would receive any ***documents*** from FIPA or IPCom from the Hague is essentially zero.  Upon service, this Court may order discovery under the Federal Rules, as the Hague Evidence Convention itself is "intended as a permissive supplement, not a pre-emptive replacement, for other means of obtaining evidence located abroad."  *Société Nationale*, 482 U.S. at 537 ("[W]e are unable to accept the hypothesis that the

common-law contracting states abjured recourse to all pre-existing discovery procedures.").

Courts have previously ordered Rule 4(f)(3) service on German entities where substantive policies rendered Hague requests futile. *See, e.g.*, *Gamboa v. Ford Motor Co.*, 414 F. Supp. 3d 1035 (E.D. Mich. 2019); *In re S. Afr. Apartheid Litig.*, 643 F. Supp. 2d 423 (S.D.N.Y. 2009). "Because of this futility, service under Rule 4(f)(3) would be proper here even if serving under the Convention were otherwise preferred." *Gamboa*, 414 F. Supp. 3d at 1040, 1043 (ordering the movant to "serve Robert Bosch GmbH through email address kontakt@bosch.de").

### C.    The Court Should Order FIPA And IPCom Served Via Counsel

The Court should order service on FIPA and IPCom via domestic counsel, MGB in Chicago. The Hague Service Convention does not apply because serving domestic counsel in Northern Illinois is service "in a judicial district of the United States." Fed. R. Civ. P. 4(h)(1).

#### 1.    Subpoena service on a domestic agent does not implicate the Hague Service Convention.

It is firmly established that a foreign corporation may properly be served in the United States via a domestic agent. The Supreme Court held in *Volkswagenwerk v. Schlunk* that "[w]here service on a domestic agent is valid and complete under both state law and the Due Process Clause," the Hague Service Convention "has no further implications." *Volkswagenwerk*, 486 U.S. at 707. Accordingly, the Supreme Court concluded that Volkswagen, a German company, was subject to service of process via an agent in the State of Illinois. *Id.* at 697. The Supreme Court's precedent in *Volkswagenwerk* closely tracks the facts of this motion, where Microsoft seeks to serve German companies FIPA and IPCom through MGB, a law firm in Illinois.

Courts in this District regularly order foreign entities served via counsel. For example, in *Universal Connectivity* from earlier this year, this Court found that agent-service on Taiwanese company Realtek's "U.S. litigation counsel is reasonably calculated to give Realtek notice of the

10

subpoena and give Realtek adequate time to present its objections." 2025 WL 510233, at *3. The decision observed that Realtek's attorney had an ethical duty to "remain in communication with Realtek to adequately represent them." *Id.* (citing TEX. DISCIPLINARY R. PROF'L CONDUCT 1.03). Similarly, the Court observed in *WorldVentures* that service on an entity's counsel "erases any material doubt" that the entity will be provided notice for due process. 2018 WL 6523306, at *14 (citation omitted). In sum: "Courts routinely direct service on an international [entity's] counsel under Rule 4(f)(3)." *SIMO*, 2020 WL 6578411, at *3; *Universal Connectivity*, 2025 WL 510233, at *3; *WorldVentures*, 2018 WL 6523306, at *14.

**2.      FIPA's and IPCom's attorneys are agents for service of process.**

Service on FIPA and IPCom via MGB in Illinois is proper because MGB's attorneys (including Mr. Furmanek and Mr. Carey) are domestic agents for service of process. Even if they outwardly refused the subpoenas, it is reasonable to assume the MGB attorneys communicated notice of the subpoenas to FIPA and IPCom pursuant to their ethical duties. *See, e.g.*, *Universal Connectivity*, 2025 WL 510233, at *3 (citing TEX. DISCIPLINARY R. PROF'L CONDUCT 1.03).

*First*, there is no question that the MGB attorneys represent FIPA and IPCom. The MGB attorneys themselves confirmed the representation to Microsoft by identifying those companies as "clients." Ex. 7 at 1 ("We will not be disclosing what communications, if any, we've had with any of *our clients*, as Microsoft requests. *Client* communications are confidential and privileged.").

*Second*, MGB has at least apparent authority, if not actual authority, to represent FIPA and IPCom in an agency capacity, as evidenced at least by MGB's participation in USPTO patent prosecution. *See, e.g.*, Ex. 8 (USPTO power of attorney for Mr. Furmanek, on behalf of IPCom, attaching a German power of attorney executed by Mr. Frohwitter); Ex. 9 (record of April 2025 examiner interview with Mr. Carey, attaching an email from mcarey@marshallip.com, in application listing Mr. Frohwitter as legal assignee). By regulation, a USPTO "power of attorney

must: . . . Give the representative power to act on behalf of the principal."  37 C.F.R. § 1.32(b), (b)(3).  As explained in 37 C.F.R. § 1.34:

> When a patent practitioner acting in a representative capacity appears in person or signs a paper in practice before the United States Patent and Trademark Office in a patent case, his or her personal appearance or signature shall constitute **a representation to the United States Patent and Trademark Office that under** the provisions of this subchapter and **the law, he or she is authorized to represent the particular party on whose behalf he or she acts**.

The Manual of Patent Examining Procedure requires a power of attorney to be signed by someone "authorized to act on behalf of the assignee-applicant (*i.e.*, a person with a title that carries apparent authority, or a person who includes a statement of authorization to act.)."  MPEP § 402.02(a)(I).

MGB's unsupported assertion that it is not "authorized" to receive a subpoena is therefore plainly counterfactual—those attorneys have that authority.  Not surprisingly, the German *Vollmacht* (power of attorney) instrument executed by Mr. Frohwitter granted IPCom's lawyers "***full*** power of attorney" for "***all kinds*** of legal proceedings" and "***all*** its patent transactions ***worldwide***," including "***representation*** before Patent Offices, Authorities ***and Courts***."  Ex. 8 at 3-6.  Executed before a German Notary, the *Vollmacht* is the basis for MGB's USPTO power of attorney.  *Id.*  And it "authorizes in particular" the power to "***receive communications***" from "the Patent Offices ***and the Courts***."  *Id.*  MGB's attorneys thus have actual authority to receive Court-ordered service of subpoenas, which seek discovery on FIPA/IPCom's patent transactions.

***Third***, service on MGB (e.g., Mr. Furmanek and Mr. Carey) is reasonably calculated to give notice of the subpoenas to FIPA and IPCom.  Those attorneys have an ethical obligation to remain in communication with their clients FIPA and IPCom.  *See, e.g.*, Exs. 7-9; 37 C.F.R. § 11.104(a)(4), (b) (USPTO R. PROF'L CONDUCT) ("A practitioner shall: . . . Keep the client reasonably informed about the status of the matter" and "explain a matter to the extent reasonably necessary to permit the client to make informed decisions"); ILL. R. PROF'L CONDUCT 1.4 (same

requirements); *accord* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.03.

Mr. Furmanek's averment that MGB was not "authorized" to accept the subpoenas also does not render MGB an improper agent for service under the Federal Rules of Civil Procedure. Agent service is sufficient where the recipient "did in fact receive complete and timely notice" even if "the agent has not expressly undertaken to transmit notice to the party." *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315, 316 (1964) ("Under well-settled general principles of the law of agency Florence Weinberg's prompt acceptance and transmittal to the respondents of the summons" was "sufficient to validate the agency, even though there was no explicit previous promise on her part to do so."). This Court should presume the MGB attorneys will comply with their ethical obligations and transmit the subpoenas to their clients. *See, e.g.*, *Universal Connectivity*, 2025 WL 510233, at *3 (service on "active counsel" in another matter was proper because that counsel "must remain in communication . . . to adequately represent" the recipient).

But even if MGB refuses to communicate the subpoenas to FIPA and IPCom, there is no question about actual notice: Microsoft gave express notice of its federal subpoenas via FedEx. Exs. 10-12. Under Section 10.5 of the 2018 agreement, FIPA and IPCom are deemed to have actual notice of those facts effective October 2, 2025. Ex. 1; *Nat'l Equip.*, 375 U.S. at 314 (noting that "petitioner itself also notified the respondents by certified mail of the service of process upon Florence Weinberg."). Serving FIPA and IPCom in the United States via MGB is appropriate.

### D. The Court Should Order FIPA And IPCom Served Via Email.

Microsoft also requests the Court to order service via email directly to Bernhard Frohwitter (frohwitter@frohwitter.com), which is a method for giving notice that FIPA and IPCom agreed to in Section 10.5 of the 2018 license. Ex. 1 § 10.5.

#### 1. Email service is not prohibited by international agreement.

Rule 4(f)(3) permits service by any means not prohibited by international agreement.

13

Email service on FIPA and IPCom (via Mr. Frohwitter) is permissible under Rule 4(f)(3) because it is not prohibited by the Hague Service Convention or any other treaty with Germany.

*First*, numerous courts have concluded that email service is not prohibited by the Hague Service Convention.  *See, e.g.*, *Nagravision*, 882 F.3d at 498; *Gamboa*, 414 F. Supp. 3d at 1040; *In re Mercedes-Benz Emissions Litig.*, No. 16-881, 2019 WL 2913309, at *1 (D.N.J. July 2, 2019); *Lexmark Int'l, Inc. v. Ink Techs. Printer Supplies, LLC*, 291 F.R.D. 172, 174–75 (S.D. Ohio 2013); *S. Afr. Apartheid*, 643 F. Supp. 2d at 423; *Facebook, Inc. v. Banana Ads, LLC*, No. C-11-3619, 2012 WL 1038752, at *2 (N.D. Cal. Mar. 27, 2012) (collecting cases).  Those cases distinguish email service from postal channels because that Convention is silent on email service.

*Second*, email service is not prohibited by any other treaty with Germany, as shown by the many cases ordering email service on German entities.  *See, e.g.*, *Gamboa*, 414 F. Supp. 3d at 1035 (email service to German entity); *Mercedes-Benz Emissions*, 2019 WL 2913309, at *1 (email service to German entity); *Lexmark*, 291 F.R.D. at 175 (email service to German entity); *S. Afr. Apartheid*, 643 F. Supp. 2d at 423 (email service to German entity, and jurisdictional discovery).

### 2.     Email service complies with due process.

Mr. Frohwitter is FIPA and IPCom's contractual designee for notice, and his email address is specifically identified in the notice clause.  Ex. 1.  It is long settled that "parties to a contract may agree in advance" to "permit notice to be served by the opposing party."  *See Nat'l Equip.*, 375 U.S. at 315–16 (upholding service via respondents' contractual designee).  Mr. Frohwitter appears to still use the website "frohwitter.com" and holds it out as his contact information.[6]

Email service on Mr. Frohwitter is reasonably calculated to provide notice to FIPA and IPCom.  *See, e.g.*, *RPost Holdings, Inc. v. Kagan*, No. 2:11-CV-238-JRG, 2012 WL 194388, at *2

---

[6] *See* https://frohwitter.com/ ("You Can Benefit From Three Main Pillars: IP-PROSECUTION | IP-LITIGATION | IP-COMMERCIALIZATION . . . Contact Possartstrasse 20, 81679 München")

(E.D. Tex. Jan. 23, 2012) ("The Court has no material doubt that Mr. Kagan will be provided notice . . . via email service, and that such method will comport with constitutional notions of due process."); *Cunningham v. Gen. Motors LLC*, No. 20 Civ. 3097 (AKH), 2020 WL 4748157, at *1 (S.D.N.Y. Aug. 17, 2020) (email service in Germany; noting that service "by email alone comports with due process where a [movant] demonstrates that the email is likely to reach the [recipient]" (citation omitted)); *Gamboa*, 414 F. Supp. 3d at 1043 ("Serving Robert Bosch GmbH through the listed email comports with due process.").

### E.    Plaintiffs' Points Are Immaterial.

Plaintiffs stated they do not formally oppose this motion because they do not represent FIPA and IPCom.  Ex. 13.  Despite Plaintiffs' suggestion to the contrary, Microsoft was not required to go through Hague Convention channels to obtain third-party documents from Germany, which would have been futile.  *See* Section IV(B); *Société Nationale*, 482 U.S. at 544 ("We therefore decline to hold as a blanket matter that comity requires resort to Hague Evidence Convention procedures without prior scrutiny in each case of the particular facts, sovereign interests, and likelihood that resort to those procedures will prove effective.").

## V.    CONCLUSION

Microsoft respectfully requests the Court to order alternative service of renewed subpoenas on FIPA and on IPCom (with either method being sufficient to effect service) as follows:

(a) Pursuant to **Fed. R. Civ. P. 4(f)(3)**, by transmitting true and accurate copies of each subpoena and the Court's Order to **MICHAEL FURMANEK** and/or **MATTHEW CAREY**, both of **MARSHALL, GERSTEIN & BORUN LLP, as agent(s)** of FIPA and of IPCom, **via registered or certified U.S. mail, return receipt requested** to 233 South Wacker Drive, Suite 6300, Chicago, IL 60606-6357 **with copy via email** to mfurmanek@marshallip.com and mcarey@marshallip.com and mgbdocket@marshallip.com; and

(b) Pursuant to **Fed. R. Civ. P. 4(f)(3)**, by transmitting true and accurate copies of each subpoena and the Court's Order to **BERNHARD FROHWITTER**, of FIPA and of IPCom, **via email** to frohwitter@frohwitter.com.

Dated: November 3, 2025

Respectfully submitted,

By: */s/ Melissa R. Smith*

Melissa R. Smith
State Bar No. 24001351
melissa@gillamsmithlaw.com
GILLAM & SMITH LLP
303 South Washington Avenue
Marshall, TX 75670
Tel: (903) 934-8450
Fax: (903) 934-9257

Betty Chen
LEAD ATTORNEY
State Bar No. 24056720
bchen@desmaraisllp.com
Peter C. Magic (*pro hac vice*)
pmagic@desmaraisllp.com
DESMARAIS LLP
101 California Street
San Francisco, CA 94111
Tel: (415) 573-1900
Fax: (415) 573-1901

Jeffrey Seddon (*pro hac vice*)
jseddon@desmaraisllp.com
Caitrianne Feddeler (*pro hac vice*)
cfeddeler@desmaraisllp.com
Lee J. Matalon
State Bar No. 24117858
lmatalon@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: 212-808-1041
Fax: 212-351-3401

*Counsel for Microsoft Corporation*

## **CERTIFICATE OF CONFERENCE**

I certify pursuant to Local Rule CV-7(h)-(i) that counsel of record for the parties corresponded via email in which Microsoft's counsel requested a telephone conference on this motion and Plaintiffs' counsel responded, after providing certain other positions: "we do not represent either FIPA or IPCom. Accordingly, we are not formally opposing Microsoft's motion for alternative service on their behalf." Microsoft therefore files this motion as unopposed. Plaintiffs' positions are reflected in the document attached as Exhibit 13 to this motion.

Dated: November 3, 2025              By:   _/s/ Lee J. Matalon_
                                     Lee J. Matalon (SBN: 24117858)

## **CERTIFICATE OF SERVICE**

I certify that this document and all attachments were served upon all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

Dated: November 3, 2025              By:   _/s/ Melissa R. Smith_
                                     Melissa R. Smith