

# *ParTec AG and BF exaQC AG v. Microsoft Corp.*

(E.D. Tex. Case No. 2:24-cv-00433)
Microsoft's *Markman* Hearing Presentation



**1**

# Table Of Contents



| | Disputed Terms | Claims |
|---|---|---|
| Slide 3 | "assigned to and shared by more than one of the plurality of hardware computation nodes" (Dkt. 123 at 2-7) | '156 patent: claims 1, 14 |
| Slide 13 | "assignment metric" (Dkt. 123 at 7-11) | '156 patent: claims 1–2, 13–15 '883 patent: claims 1–2, 13–15 |
| Slide 19 | "booster" (Dkt. 123 at 11-15) | '156 patent: claims 1, 4, 6–8, 12–15 '883 patent: claims 1–2, 6–7, 11–13, 15 |
| Slide 30 | Preambles (Dkt. 123 at 15-18) | '156 patent: claims 1, 14 '883 patent: claims 1, 13 |
| Slide 40 | "first computing iteration" / "further computing iteration" (Dkt. 123 at 24-28) | '442 patent: claims 1, 3, 7, 9 |
| Slide 47 | "outsource the [second] part of the computation task to the assigned selected [hardware] booster under control of the first [hardware] computation node" (Dkt. 123 at 18-24) | '883 patent: claims 1, 13 |



# "assigned to and shared by more than one of the plurality of hardware computation nodes"

# Microsoft's "Simultaneous" Assignment Proposal Is Consistent With The Claim Language



| Microsoft's Proposal |
|---|
| "**simultaneously** assigned to and useable by more than one of the plurality of hardware computation nodes" |

**1.** A computer cluster-booster system for processing a computation task, comprising:

...

wherein the plurality of hardware computation nodes and the plurality of hardware boosters are configured such that during processing of said computation task, assignments of hardware computation nodes and hardware boosters can be provided such that at least (i) at least one of the plurality of hardware computation nodes is arranged to communicate with at least one of the plurality of hardware boosters, (ii) at least one of the plurality of hardware boosters is assigned to and shared by more than one of the plurality of hardware computation nodes such that the compute capacity of the at least one of the plurality of hardware boosters is shared between the more than one of the plurality of hardware computation nodes, and (iii) each of the hardware boosters is assignable to each of the hardware computation nodes.

*'156 Patent, Claim 1*

DESMARAIS LLP

4

# Interpretation Allowing *Sequential* Assignment Would Render Other Limitations In The Claims Superfluous



**1.** A computer cluster-booster system for processing a computation task, comprising:

•••

wherein the plurality of hardware computation nodes and the plurality of hardware boosters are configured such that during processing of said computation task, assignments of hardware computation nodes and hardware boosters can be provided such that at least (i) at least one of the plurality of hardware computation nodes is arranged to communicate with at least one of the plurality of hardware boosters, (ii) at least one of the plurality of hardware boosters is assigned to and shared by more than one of the plurality of hardware computation nodes such that the compute capacity of the at least one of the plurality of hardware boosters is shared between the more than one of the plurality of hardware computation nodes, and (iii) each of the hardware boosters is assignable to each of the hardware computation nodes.

*'156 Patent, Claim 1*

DESMARAIS LLP

5

# ParTec Clearly And Unambiguously Distinguished Prior Art Because It Only Assigned Accelerators Sequentially



Fourth, Dillenberger does not teach or suggest that a single accelerator is **assigned to and shared by more than one** of the host systems. Instead, Dillenberger discloses that computation nodes. •••

As discussed above, while Dillenberger discloses that accelerators are dynamically reassigned to different host systems (e.g., Accelerator X is dynamically assigned from Host System B to Host System A; see paragraph [0035]), the accelerators are only dynamically reassigned "[a]fter all existing jobs have been completed" and after the assignment manager 130 de-allocates the accelerators from the current host system (see paragraph [0034]). Only after accelerator reassignment does the "given host system **then** [begin] to issue jobs from its workload to the newly assigned accelerator resources" (see paragraph [0034]; emphasis added). Thus, it is **never** the case that an accelerator of Dillenberger is assigned to and shared by more than one (i.e., at least two) of the host systems such that the compute capacity of the accelerator is shared between the host systems.

# During Prosecution, ParTec Distinguished The Claims From Prior Art Directed To Sequential Assignment

[0034]    In one embodiment, after identifying the accelerator resources to dynamically reassign, the assignment manager **130** informs the host system currently assigned to those accelerator resources to stop sending new jobs to those accelerator resources. After all existing jobs have been completed, the assignment manager **130** de-allocates the accelerator resources from the current host system, and the host system updates its assignment information to reflect this de-allocation. The assignment manager **130** then assigns these accelerator resources to the given host system, which subsequently updates its assignment information to reflect this assignment. The given host system then begins to issue jobs from its workload to the newly assigned accelerator resources.

[0035]    FIG. **3** shows an example in which Accelerator X **124**, which was originally assigned to Host System B **104** as shown in FIG. **2**, has been dynamically reassigned to Host System A **102**. Host System A **102** is now able to issue jobs from its workload to its initial accelerator, Accelerator W **122**, as well as the newly assigned accelerator, Accelerator X **124**.

US2011/0161972 (Dillenberger), Dkt. 123-6, [0034]- [0035]



FIG. 2

FIG. 3



# ParTec Emphasized Simultaneous Use As The "Key Point" Of The Invention During The Parent Application Proceedings



| EP 2628080, Claim 1 |
|---|
| (ii) one or more of the boosters is shareable by more than one computation node of the plurality of computation nodes |

| '156 Patent, Claim 1 |
|---|
| (ii) at least one of the plurality of hardware boosters is assigned to and **shared by** more than one of the plurality of hardware computation nodes such that the compute capacity of the at least one of the plurality of hardware boosters is **shared between** the more than one of the plurality of hardware computation nodes |

The key point for the correct interpretation of feature 4.2 regarding shareability is that this is claimed in the patent for a different reason. The basic shareability of the boosters, which also existed in the prior art, for example because they are many-core processors, failed because the boosters were permanently assigned to their respective computation nodes, page 1, lines 21-27, page 2, lines 5-10, so that other computation nodes could not access the boosters from a purely technical point of view, i.e., could not use their intrinsic shareability. The invention solves exactly this rigid assignment and connects all computation nodes with all boosters, so that now, a resource manager can take advantage of the already existing shareability of the boosters and allow multiple computation nodes to use a booster simultaneously. This technical relationship is clearly described and disclosed in the patent, page 3, lines 6-14, page 9, line 15, page 11, line 34.

DESMARAIS LLP

*February 28, 2025 ParTec's Letter Dealing With Oral Proceedings During The Appeal Procedure, Response Brief (Dkt. 123) Ex. 4, at 0140-141*

8

# The Claims Of The '156 Patent Require The Same Sharing As The Parent Application



| EP 2628080, Claim 1 | '156 Patent, Claim 1 |
|---|---|
| (ii) **one or more of the boosters is**<br><br>*shareable by*<br><br>**more than one computation node of the plurality of computation nodes** | (ii) **at least one of the plurality of hardware boosters is** assigned to and<br><br>*shared by*<br><br>**more than one of the plurality of hardware computation nodes**<br><br>such that the compute capacity of the at least one of the plurality of hardware boosters is *shared between* the more than one of the plurality of hardware computation nodes |

# Statements Concerning Foreign Patent Application Are Relevant





"This court has also considered statements made before a foreign patent office when construing claims if they are relevant and not related to unique aspects of foreign patent law."

*Apple Inc. v. Motorola, Inc.,*
*757 F.3d 1286, 1312 (Fed. Cir. 2014)*

Holding that "endorse[ment]" of an interpretation before the European Patent Office (EPO) regarding "a virtually identical claim in Gillette's European counterpart" patent application was a "blatant admission by this same defendant before the EPO" and "clearly support[ed]" this court's construction.

*Gillette Co. v. Energizer Holdings, Inc.,*
*405 F.3d 1367, 1374 (Fed. Cir. 2005)*

DESMARAIS LLP

**10**



# ParTec Acknowledged That Microsoft's Proposal Is Supported By The Specifications

- The same description ParTec relied on to show simultaneous use was described in the foreign parent application appear word-for-word in the '156 Patent

point of view, i.e., could not use their intrinsic shareability. The invention solves exactly this rigid assignment and connects all computation nodes with all boosters, so that now, a resource manager can take advantage of the already existing shareability of the boosters and allow multiple computation nodes to use a booster simultaneously. This technical relationship is clearly described and disclosed in the patent, page 3, lines 6-14, page 9, line 15, page 11, line 34.

*February 28, 2025 ParTec's Letter Dealing With Oral Proceedings During The Appeal Procedure, Response Brief (Dkt. 123) Ex.4 at 0140-141*

In this computer cluster arrangement acceleration functionality is being provided by independent boosters. The described computer cluster arrangement allows a loose coupling of those boosters to computation nodes, which may also be referred to as compute nodes. Hence, a sharing of accelerators, here in form of boosters, by computation nodes is feasible. For an assignment of a booster to a computation node a resource manager, in form of a resource manager module or resource manager node, may be provided. The resource manager may establish a static assignment at start of a processing of a computation task. Alternatively or additionally it may establish a dynamic assignment at run-time, which means during processing of the computation task.

*'156 Patent, 2:51-52 (cited by Opening Brief (Dkt. 114 ) at 7); EP 11768015.7 (issued as EP 2628080), Response Brief (Dkt. 123) Ex. 5 at 8574, lines 6-14*

DESMARAIS LLP

11

# ParTec's Argument Regarding Permissive Language Is Misplaced – The Claims Recite Only Capability



**1.** A computer cluster-booster system for processing a computation task, comprising:

. . .

*wherein the plurality of hardware computation nodes and the plurality of hardware boosters are configured such that during processing of said computation task, assignments of hardware computation nodes and hardware boosters* <u>can be provided such that</u> at least (i) at least one of the plurality of hardware computation nodes is arranged to communicate with at least one of the plurality of hardware boosters, *(ii) at least one of the plurality of hardware boosters is assigned to and shared by more than one of the plurality of hardware computation nodes* such that the compute capacity of the at least one of the plurality of hardware boosters is shared between the more than one of the plurality of hardware computation nodes, and (iii) each of the hardware boosters is assignable to each of the hardware computation nodes.

*'156 Patent, Claim 1*

The key point for the correct interpretation of feature 4.2 regarding shareability is that this is claimed in the patent for a different reason. The basic shareability of the boosters, which also existed in the prior art, for example because they are many-core processors, failed because the boosters were permanently assigned to their respective computation nodes, page 1, lines 21-27, page 2, lines 5-10, so that other computation nodes could not access the boosters from a purely technical point of view, i.e., could not use their intrinsic shareability. The invention solves exactly this rigid assignment and connects all computation nodes with all boosters, so that now, a resource manager can take advantage of the already existing shareability of the boosters and allow multiple computation nodes to use a booster simultaneously. This technical relationship is clearly described and disclosed in the patent, page 3, lines 6-14, page 9, line 15, page 11, line 34.

*February 28, 2025 ParTec's Letter Dealing With Oral Proceedings During The Appeal Procedure, Response Brief (Dkt. 123) Ex. 4 at 0140-141*

DESMARAIS LLP

12

# "assignment metric"



| Microsoft's Proposal | ParTec's Proposal |
|---|---|
| "measurements represented as a group of several parameters" | Plain and ordinary meaning |

## **Primary Dispute:**

Whether the claims require that assignment metric is represented as a group of *several* parameters, and not a single parameter.

DESMARAIS LLP

13

# Microsoft's Proposed Construction Is Consistent With The Claim Language



## Microsoft's Proposal

"measurements represented as a group of several parameters"

> 1. A computer cluster-booster system for processing a computation task, comprising:
>
> ...
>
> a resource manager being arranged to assign the at least one hardware booster to the at least one hardware computation node, including:
> at a start of processing of said computation task, establishing an initial assignment by using a predetermined **assignment metric** specified as a function of at least one of a group of assignment parameters, and during said processing of said computation task: (i) updating the predetermined **assignment metric**, and (ii) establishing a dynamic assignment by using the predetermined **assignment metric** that was updated, and

*'156 Patent, Claim 1*

**DESMARAIS** LLP

14

# Microsoft's Proposal Is Consistent With The Specifications



## SUMMARY OF THE INVENTION

. . .

For accomplishing the assignment between boosters and computation nodes a specific set of rules is required. Therefore, an assignment metric is provided, which serves as a basis for the decision which booster is coupled with which computation node. The assignment metric may be managed by a resource manager. Managing the assignment metric

*'156 Patent, 3:47-52*

**DESMARAIS** LLP

15

# ParTec Asserted That "Assignment Metric" Was Defined To Be "Representative Of One Of Several Groups Of Parameters"



To this end, <mark>Applicant also disagrees with the Final Action's allegation that Applicant's assignment metric is not explicitly defined by Applicant's specification.</mark> Final Action, p. 8. Applicant respectfully points out paragraph [0017] [1] of Applicant's specification as originally filed, which states the following:

> For accomplishing the assignment between boosters and computation nodes a specific set of rules is required. Therefore, an assignment metric is provided, which serves as a basis for the decision which booster is coupled with which computation node. The assignment metric may be managed by a resource manager. Managing the assignment metric *refers to establishing and updating rules naming at least one booster, which is assigned to at least one further named computation node*.
>
> Specification, para. [0017], emphasis added.

In other words, <mark>Applicant's specification as originally filed explains that the assignment metric may be managed via a set of rules, and therefore the assignment metric is representative of one of several groups of parameters utilized as part of these rules.</mark> Also see, e.g., Applicant's specification at pa...

---

[1] <mark>The interpretation of the claims now being considered is not limited to the embodiment described in this portion of Applicant's specification.</mark> Other embodiments are possible as will be apparent to one skilled in the relevant art(s) from the teachings of this Application.

'156 Patent, File History, November 29, 2016 Response, Response Brief (Dkt. 123) Ex. 1 at 0272-273

**DESMARAIS** LLP

16

# To Overcome Rejection Over Prior Art, ParTec Explained That Assignment Metric Is A Group Of Several Parameters



> To do so, Krishnamurthy's workload manager 118 may utilize a threshold such as a number of operations per second, which the Examiner stated during the Interview was interpreted as being equivalent to Applicant's assignment metric. Specifically, the Final Action cited to Krishnamurthy's paragraph [0040] in support of the rejection, which explains that the workload manager 118 provides resource guarantees such that when "SLA 120 [changes] from 10,000 operations per second to 15,000 operations per second because of additional incoming data. . . the workload manager 118, in this example, dynamically allocates additional kernels 206, 208, 214, 216 to the server system 102, accelerators 104, or both so that additional accelerator workloads can be executed in order to sustain 15,000 operations per second."
>
> • • •
>
> First, even assuming that Krishnamurthy's number of operations per second functions as an assignment metric, with which Applicant does not necessarily agree, Applicant's independent claim 1 as amended clarifies that Applicant's assignment metric is a *function of a group of assignment parameters*. Therefore, Applicant's assignment metric is not simply a metric represented as a single numeric value, and is instead represented as a group of several parameters.

'156 Patent, File History, November 29, 2016 Response, Response Brief (Dkt. 123) Ex. 1 at 0272

# ParTec's Disclaimer During Prosecution Is Directed To The Disputed Claim Term



> However, even assuming that Krishnamurthy's workload sharing is based upon a particular threshold condition being satisfied, this threshold only addresses **when** the workload is shared, not **how** the workload is shared. In other words, Krishnamurthy's workload management provides a threshold condition for sharing workloads between a server and accelerator, but nowhere does Krishnamurthy disclose that the ***threshold condition itself*** specifies which accelerator is mapped to the server when the workload is shared. In contrast, ==Applicant's assignment metric, being a function of a group of assignment parameters and not merely a single threshold value, facilitates the assignment of particular boosters to particular computation nodes. Krishnamurthy's hybrid computing environment does not disclose this feature.==

*'156 Patent, File History, November 29, 2016 Response, Response Brief (Dkt. 123) Ex. 1 at 0274*

# "booster"



| Microsoft's Proposal | ParTec's Proposal |
|---|---|
| "one or more booster nodes" | Plain and ordinary meaning |

## **Primary Dispute:**

Whether to construe the term **as used by the inventor**, Dr. Lippert, and whether it is different from an "accelerator."

DESMARAIS LLP

19

# Exemplary Claim 1 Language – "booster"



. . .

a plurality of hardware ==boosters==, each hardware ==booster== having a compute capacity, at least one hardware ==booster== of the plurality of hardware ==boosters== being arranged to compute at least a second, specific part of said computation task after having been assigned to at least one hardware computation node and under control of that at least one hardware computation node, the at least one hardware ==booster== interfacing with the communication infrastructure; and

. . .

*'156 Patent, 13:27-35*

DESMARAIS LLP

20

# "Booster" Is A Coined Term Without An Ordinary And Customary Meaning





"[T]erms coined by the inventor are best understood by reference to the specification."

*Intervet, Inc. v. Merial, Ltd.,*
617 F.3d 1282, 1287 (Fed. Cir. 2010)

"[B]ecause the disputed term is a coined term, meaning **it has no ordinary and customary meaning**, the question is whether the intrinsic evidence provides objective boundaries to the scope of the term."

*Iridescent Networks, Inc. v. AT&T Mobility, LLC,*
933 F.3d 1345, 1353 (Fed. Cir. 2019)

DESMARAIS LLP

21

# ParTec's Head Of Software Architecture And Development Agrees "Booster" Has No Ordinary Meaning





**Simon Pickartz**
*Head of Software Architecture & Development*
ParTec AG

> 7    Q    You don't know of any ordinary meaning
> 8    of the term "booster" that's used across
> 9    multiple contexts in the field of
> 10    high-performance computing?
> **11    A    No, I am not aware of such an ordinary**
> **12    meaning.**

*Deposition of Simon Pickartz, 95:7-12*

# The Patents Started With A "Booster Concept"





*'156 File History, 0394*

# The '156 And '883 Patents Consistently Use "Booster" To Refer To A Group Of One Or More Booster Nodes



In a further embodiment the booster group BG itself may be connected to the communication infrastructure of the computation nodes CN or an intermediate communication infrastructure. The communication infrastructures may generally differ among other characteristics in their topology, bandwidth, communication protocols, throughput and message exchange. ==A booster B may for example comprise 1 to 10.000 booster nodes BN, but is not restricted to this range. The resource manager RM may generally manage parts of the booster nodes BN and can therefore partition the overall number of booster nodes BN and dynamically form boosters B out of said number of booster nodes BN.== The switching unit S may be implemented by a switch, a router or any network device.

'156 Patent, 12:59-13:5



'156 Patent, Fig. 9

# ParTec's Contention That The "Booster" Term Was "Already In The Prior Art" Is Mistaken



ParTec points to PTO rejections where the Examiner indicated the prior art teaches a "booster" in concept, **not the use of the term**:

> Regarding claim 1, Krishnamurthy teaches a computer cluster arrangement for processing a computation task, comprising:
>
> a plurality of computation nodes (CN) (i.e., 102, 104), each of which interfacing a communication infrastructure (IN) (i.e., network 108) (i.e., Fig. 1), at least two of which being arranged to jointly compute at least a first part of said computation task (i.e., page 5 paragraph [0049]);
>
> at least one booster (B) (i.e., accelerator/processor) being arranged to compute at least a second part of said computation task (i.e., page 3 paragraph [0035]), each booster (B) interfacing said communication infrastructure (IN) (i.e., Fig. 1);

*'156 File History, 0224*



*U.S. Patent No. 2009/0213127 (Krishnamurthy)*

# ParTec Concedes That Booster Is A "Technical Term"



## ParTec's Opening Brief

The Asserted Patents use "booster" to refer to a device for increasing power or effectiveness—*i.e.*, for providing "acceleration." *E.g.*, Ex A ('156) at 2:47–48 ("boosters" provide "**acceleration** functionality"); *id.* at 2:51–53 ("sharing of **accelerators**, here in form of boosters"); *id.* at 5:64–65 ("boosters are implemented to process specific problems at **high speed**"); *id.* at 11:63–67 ("an **acceleration** of compution of computation tasks being computed by at least one booster B is performed"); *accord* Ex B ('883) at 2:47–48, 2:51–53, 5:64–65, 11:49–52. This is the plain and ordinary meaning of "booster." Ex. I (The American Heritage Dictionary (2nd College ed. 1991)) ("booster": a "device for increasing power or effectiveness"); Ex. J (Merriam-Webster's Collegiate Dictionary (11th ed. 2009)) (booster: "an auxiliary device for increasing force, power, or effectiveness").

*Plaintiffs' Claim Construction Brief, 15*

## ParTec's Reply Brief

Microsoft also contends that the invention "start[ed] with a 'booster concept.'" Resp. 14. But that is merely the title of a single slide in a presentation. Ex. 1 at 0394. Microsoft offers no argument for how this slide proposes "booster" as a coined term. In actuality, "'[b]ooster/accelerators' are technical terms in the field of (high performance) computing which have a clear and unambiguous meaning." Ex. E ('883 File History) at 0902. Indeed, the examiner repeatedly recognized that the

*Plaintiffs' Reply Claim Construction Brief, 5*

DESMARAIS LLP                                                                          26



# General-Purpose Dictionaries For A Technical Term Is Improper

performed"); *accord* Ex B ('883) at 2:47–48, 2:51–53, 5:64–65, 11:49–52. This is the plain and ordinary meaning of "booster." Ex. I (The American Heritage Dictionary (2nd College ed. 1991)) ("booster": a "device for increasing power or effectiveness"); Ex. J (Merriam-Webster's Collegiate Dictionary (11th ed. 2009)) (booster: "an auxiliary device for increasing force, power, or effectiveness").

*Plaintiffs' Claim Construction Brief, 15*



"By design, general dictionaries collect the definitions of a term as used not only in a particular art field, but in many different settings. . . . Thus, the use of the dictionary **may extend patent protection beyond what should properly be afforded by the inventor's patent**."

*Phillips v. AWH Corp.,*
415 F.3d 1303, 1321 (Fed. Cir. 2005)

# "Boosters" And "Accelerators" Are Two Distinct Terms



## Specification

realizes a 3d topology providing 6 links per card. Concerning its simplicity, this topology appears to be applicable for a booster based on many-core accelerators. Even with two

'156 Patent, 2:56-58

task. Each computation node CN is tightly coupled with an accelerator Acc. As can be seen in FIG. 1 a computation

'156 Patent, 2:3-4

tation task. Furthermore, no fault tolerance is provided in case of failure of one of the accelerators Acc. In the known

'156 Patent, 2:11-12

order to guarantee resilience and reliability. While local accelerators, in principle, allow for a simple view on the entire system and in particular can utilize the extremely high local bandwidth, they are absolutely static hardware elements, well suited for farming or master-slave parallelization. Hence, it would be difficult to include them in a

'156 Patent, 10:11-13

## Claims

1. A computer cluster-booster system for processing a computation task, comprising:

'156 Patent, 13:20-21

a resource manager being arranged to assign the at least one hardware booster to the at least one hardware computation node, including:

'156 Patent, 13:36-38

a plurality of hardware boosters, each hardware booster having a compute capacity, at least one hardware booster of the plurality of hardware boosters being

'156 Patent, 13:27-29

DESMARAIS LLP

**28**

# ParTec's Assertion That "Boosters" Are Accelerators Is Inconsistent With The Claims



**12.** The computer cluster system according to claim **1**, wherein said at least one hardware <mark>booster comprises</mark> at least one of a group of components, said group of components comprising: a multi-core processor, a scalar processor, a co-processor, a graphical processing unit, <mark>a cluster of multi-core processors</mark>, and a monolithic processor.

*'156 Patent, 14:57-62*

# "Computer cluster-booster [system/arrangement
# "Computer cluster [system/arrangement]"



| Microsoft's Proposal | ParTec's Proposal |
|---|---|
| Limiting | Preamble not limiting.  If limiting, plain and ordinary meaning. |

# Exemplary Claim Language



1. A ==computer cluster-booster system== for processing a computation task, comprising:

a plurality of hardware computation nodes, each of which interfaces with a communication infrastructure, at least two of the hardware computation nodes being arranged to jointly compute at least a first part of said computation task;

a plurality of hardware boosters, each hardware booster having a compute capacity, at least one hardware booster of the plurality of hardware boosters being arranged to compute at least a second, specific part of said computation task after having been assigned to at

• • •

'156 Patent, 13:20-31

1. A ==computer cluster system== for processing a computation task, comprising:

a plurality of hardware computation nodes, a plurality of hardware boosters, and a resource manager, the plurality of hardware computation nodes and the plurality of hardware boosters each interfacing a communication infrastructure;

the resource manager being arranged to:

assign a selected hardware booster of the plurality of hardware boosters to a first hardware computation node of the plurality of hardware computation nodes for computation of a part of the computation task,

• • •

'883 Patent, 13:5-16

# Preambles Are Limiting When Used To Distinguish The Claimed Invention From The Prior Art





"[A] preamble may be limiting if . . . there was clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art."

*Georgetown Rail Equip. Comp. v Holland L.P.,*
867 F.3d 1229, 1236 (Fed. Cir. 2017)

"[C]lear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art **transforms the preamble into a claim limitation** because such reliance indicates use of the preamble to define, in part, the claimed invention."

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.,*
289 F.3d 801, 808 (Fed. Cir. 2002)

DESMARAIS LLP

32

# ParTec Relied On Its Claimed Invention Being A "Computer Cluster Arrangement" To Overcome The Prior Art



February 19, 2018, Argument:

> As an initial matter, Krishnamurthy is directed to a high-throughput computing system, which processes data in a different manner than the computer cluster-booster arrangement to which Applicant's claims are directed. To provide additional background for clarity, Applicant respectfully cites to two different sources to help explain the meaning of a cluster computing arrangement as understood by one of ordinary skill in the art:

*'156 File History, 0443*

# ParTec Emphasized That Distinction By Citing Two Definitions To "Explain The Meaning" Of A "Computer Cluster Arrangement"



As an initial matter, Krishnamurthy is directed to a high-throughput computing system, which processes data in a different manner than the computer cluster-booster arrangement to which Applicant's claims are directed. To provide additional background for clarity, Applicant respectfully cites to two different sources to help explain the meaning of a cluster computing arrangement as understood by one of ordinary skill in the art:

*'156 File History, 0443*

(1) A cluster can also refer to a group of machines that work together that perform a similar function. Unlike grid computing, a computer cluster is controlled by a single software program that manages all the computers or "nodes" within the cluster. The nodes work together to complete a single task. This process is called "parallel computing" since the nodes perform operations in tandem. Computer clusters can range from two machines to hundreds of connected computers. Small clusters are often used to improve the performance of web and online gaming services by handling multiple incoming requests in parallel. A web farm, for example, is a type of cluster that provides low latency access to websites. Large clusters can be used to perform scientific calculations or to run a large number of complex algorithms. For example, a large cluster may be used to apply textures and lighting effects to 3D models in each frame of an animated movie.

*See, https://techterms.com/definition/cluster.*

*'156 File History, 0443-44*

(2) A computer cluster consists of a set of loosely or tightly connected computers that work together so that, in many respects, they can be viewed as a single system. Unlike grid computers, computer clusters have each node set to perform the same task, controlled and scheduled by software. The components of a cluster are usually connected to each other through fast local area networks, with each node (computer used as a server) running its own instance of an operating system. In most circumstances, all of the nodes use the same hardware and the same operating system, although in some setups (i.e. using Open Source Cluster Application Resources (OSCAR)), different operating systems can be used on each computer, and/or different hardware.

*See, https://en.wikipedia.org/wiki/Computer_cluster.*

*'156 File History, 0444*

# ParTec Relied Solely On Its Preamble-Based Argument, Which Was Not Accompanied By Any Claim Amendment



February 19, 2018, Argument:

> As an initial matter, Krishnamurthy is directed to a high-throughput computing system, which processes data in a different manner than the computer cluster-booster arrangement to which Applicant's claims are directed. To provide additional background for clarity, Applicant respectfully cites to two different sources to help explain the meaning of a cluster computing arrangement as understood by one of ordinary skill in the art:

*'156 File History, 0443*

> Thus, as understood by one of ordinary skill in the art, Krishnamurthy is not directed to a **computer cluster arrangement**. Further to this point, Krishnamurthy in particular explains that "[a] set of data-parallel workload tasks is dynamically scheduled across at least one resource in the first set of resources and at least one resource in the second set of resources based on the monitoring" (see paragraph [0004]).

*'156 File History, 0444*

---

Application No. 13/861,429        Docket No.: 29959/51333
Amendment dated February 19, 2018
After Final Office Action of October 17, 2017

### AMENDMENTS TO THE CLAIMS

1. (Previously Presented) A computer cluster-booster arrangement for processing a computation task, comprising:

a plurality of computation nodes, each of which interfaces with a communication infrastructure, at least two of the computation nodes being arranged to jointly compute at least a first part of said computation task;

a plurality of boosters, at least one booster of the plurality of boosters being arranged to compute at least a second, specific part of said computation task after having been assigned to at least one computation node and under control of that at least one computation node, the at least one booster interfacing with the communication infrastructure; and

a resource manager being arranged to perform the assignment of the at least one booster to the at least one computation node in accordance with an assignment metric for computation of said second part of said computation task,

wherein the plurality of computation nodes and the plurality of boosters are configured as part of a computer cluster arrangement such that during processing of said computation task, assignments of communication nodes and boosters can be provided such that at least (i) at least one of the plurality of computation nodes is arranged to communicate with at least one of the plurality of boosters, (ii) at least one of the plurality of boosters is shareable by more than one of the plurality of computation nodes, and (iii) each of the boosters is assignable to each of the computation nodes,

wherein said resource manager is arranged to perform the assignment by using a predetermined assignment metric at start of processing of said computation task and to update the assignment metric during said processing by (i) initializing the assignment at the start of processing by using the predetermined assignment metric, (ii) altering the assignment metric to an altered assignment metric during processing of the computation task, and (iii) performing the assignment by using the altered assignment metric, and

wherein said assignment metric is specified as a function of at least one of a group of assignment parameters to facilitate an assignment of particular boosters to particular ones of the plurality of computation nodes.

*'156 File History, 0438*

DESMARAIS LLP

**35**

# ParTec Could Only Have Been Referring To The Preambles— The Term Appears Nowhere Else



February 19, 2018, Argument:

> As an initial matter, Krishnamurthy is directed to a high-throughput computing system, which processes data in a different manner than the computer cluster-booster arrangement to which Applicant's claims are directed. To provide additional background for clarity, Applicant respectfully cites to two different sources to help explain the meaning of a cluster computing arrangement as understood by one of ordinary skill in the art:

*'156 File History, 0443*

> Thus, as understood by one of ordinary skill in the art, Krishnamurthy is not directed to a **computer cluster arrangement**. Further to this point, Krishnamurthy in particular explains that "[a] set of data-parallel workload tasks is dynamically scheduled across at least one resource in the first set of resources and at least one resource in the second set of resources based on the monitoring" (see paragraph [0004]).

*'156 File History, 0444*

---

Application No. 13/861,429                                   Docket No.: 29959/51333
Amendment dated February 19, 2018
After Final Office Action of October 17, 2017

**AMENDMENTS TO THE CLAIMS**

1. (Previously Presented)  A computer cluster-booster arrangement for processing a computation task, comprising:

a plurality of computation nodes, each of which interfaces with a communication infrastructure, at least two of the computation nodes being arranged to jointly compute at least a first part of said computation task;

a plurality of boosters, at least one booster of the plurality of boosters being arranged to compute at least a second, specific part of said computation task after having been assigned to at least one computation node and under control of that at least one computation node, the at least one booster interfacing with the communication infrastructure; and

a resource manager being arranged to perform the assignment of the at least one booster to the at least one computation node in accordance with an assignment metric for computation of said second part of said computation task,

wherein the plurality of computation nodes and the plurality of boosters are configured as part of a computer cluster arrangement such that during processing of said computation task, assignments of communication nodes and boosters can be provided such that at least (i) at least one of the plurality of computation nodes is arranged to communicate with at least one of the plurality of boosters, (ii) at least one of the plurality of boosters is shareable by more than one of the plurality of computation nodes, and (iii) each of the boosters is assignable to each of the computation nodes,

wherein said resource manager is arranged to perform the assignment by using a predetermined assignment metric at start of processing of said computation task and to update the assignment metric during said processing by (i) initializing the assignment at the start of processing by using the predetermined assignment metric, (ii) altering the assignment metric to an altered assignment metric during processing of the computation task, and (iii) performing the assignment by using the altered assignment metric, and

wherein said assignment metric is specified as a function of at least one of a group of assignment parameters to facilitate an assignment of particular boosters to particular ones of the plurality of computation nodes.

*'156 File History, 0438*

DESMARAIS LLP

**36**



# *Accolade Systems LLC v. Citrix Systems, Inc.*
## Is Directly On Point



"On several occasions, the applicant relied on 'controlling' a computer to distinguish the claimed invention from the prior art. In each of these amendments, the applicant distinguished the claimed invention from the prior art by referring to the claimed invention's characteristic of controlling a host computer. Accordingly, 'controlling a computer' is a limitation."

*Accolade Sys. LLC v. Citrix Sys., Inc.*
*634 F. Supp. 2d 738, 743-44 (E.D. Tex. May 1, 2009)*
*(cleaned up)*

What is claimed is:
1. An apparatus for remotely controlling a computer comprising:

*U.S. Patent No. 7,130,888, 13:40-42*

What is claimed is:
1. A computer cluster-booster system for processing a computation task, comprising:

*'156 Patent, 13:19-21*

# Preamble Language Used Frequently In A Patent Weighs In Favor Of Its Limiting Nature





"The specification is replete with references to [the preamble's language], underscoring the importance of the feature to the claimed invention."

*Rotatable Techs. v. Motorola Mobility,*
567 Fed. App'x 941, 943 (Fed. Cir. 2014)

"The specification is replete with references to the invention as [the preamble's language]. . . . Our analysis shows that the inventor considered that the . . . preamble language represented an **important characteristic of the claimed invention**."

*Poly-America, L.P. v. GSE Lining Tech., Inc.,*
383 F.3d 1303, 1310 (Fed. Cir. 2004)

# The Preamble Language Appears In Every Facet Of The '156 And '883 Patents



**COMPUTER CLUSTER ARRANGEMENT** FOR PROCESSING A COMPUTATION TASK AND METHOD FOR OPERATION THEREOF

DETAILED DESCRIPTION OF THE INVENTION

In the following same notions will be denoted with the same reference signs, if not indicated otherwise. FIG. **2** shows a computer cluster arrangement comprising a cluster C as well as a booster group BG. The cluster comprises in

(57)    **ABSTRACT**

The present invention is directed to a computer cluster arrangement and a method for operation of the introduced computer cluster arrangement. The computer cluster arrangement comprises computation nodes CN, which dynamically outsource specific computation tasks to boosters B. Therefore, an assignment technique of boosters B to computation nodes CN is introduced. The assignment takes dynamically place at runtime. The present invention finds application in high performance cluster technology.

FIELD OF THE INVENTION

The present invention is directed toward a computer cluster arrangement. In particular, it relates to a computer cluster arrangement with improved resource management as

BACKGROUND OF THE INVENTION

Known in the art are computer cluster arrangements comprising computing nodes including at least one proces-

SUMMARY OF THE INVENTION

Hence, it is an object of the present invention to provide a computer cluster arrangement, which allows communica-

BRIEF DESCRIPTION OF THE DRAWINGS

The invention will now be described merely by way of illustration with reference to the accompanying drawings:
FIG. **1** shows a computer cluster arrangement according to the state of the art.

What is claimed is:
**1**. A computer cluster-booster system for processing a computation task, comprising:

DESMARAIS LLP

39

# "first computing iteration" / "further computing iteration"



| Microsoft's Proposal | ParTec's Proposal |
|---|---|
| "an initial execution of the plurality of subtasks" / "a repeated execution of the plurality of sub-tasks" | Plain and ordinary meaning |

## Primary Dispute:

Whether the computing iterations involve the **same** plurality of sub-tasks.

DESMARAIS LLP

**40**

# Basic Principle Of Claim Construction: "The"



> **1.** A method of operating a heterogeneous computing system comprising a plurality of computation nodes and a plurality of booster nodes, at least one of the plurality of computation nodes and a plurality of booster nodes being arranged to compute a computation task, the computation task comprising a plurality of sub-tasks, the method comprising:
>
> in a first computing iteration, assigning and processing the plurality of sub-tasks by at least a portion of the plurality of computation nodes and at least a portion of the plurality of booster nodes in a first distribution; and generating, using information relating to the processing of the plurality of sub-tasks by at least the portion of the plurality of computation nodes and at least the portion of the plurality of booster nodes, a further distribution of the plurality of sub-tasks between the plurality of computation nodes and the plurality of booster nodes for processing thereby in a further computing iteration.



"The subsequent use of definite articles **'the'** or 'said' in a claim to **refer back to the same claim term**[.]"

*Baldwin Graphic Sys. v. Siebert, Inc.,*
512 F.3d 1338, 1342 (Fed. Cir. 2008)

**DESMARAIS** LLP

**41**

# At Least One Instantiation Of "Plurality Of Sub-Tasks" Must Perform All Recited Functions





"While the general rule that 'a' means 'one or more' leaves open the numerical scope of the limitation, *it does not relax the substantive requirement that at least one instantiation of 'a' must embody all of its recited functions* when the remaining context of the claim so requires."

*Carrum Techs., LLC v. Ford Motor Co.,*
*2025 WL 2924504, at \*4-5 (Fed. Cir. Oct. 15, 2025)*

# Microsoft's Construction Adheres To The Specification



- The specification consistently describes changing the distribution of sub-tasks to computation nodes and boosters nodes
  - ➤ Not **adding or removing** sub-tasks

> The tasks may comprise a number of sub-tasks or kernels. Each of these sub-tasks may be more or less suitable for processing by one or more of the computation nodes or one or more of the boosters. In particular, the scalability of the sub-task may indicate whether it is more appropriate for the sub-task to be processed by a computation node or a booster. The system is flexible in all directions, also permitting joint processing of sub-tasks by all nodes addressed herein, as well as reshuffling of processing between the nodes.

*'442 Patent, 3:50-58*

> If a task is computed with a first division of sub-tasks between a computation node and a booster, it is possible that such a division is not an optimal division for the computation of the task. Certain sub-tasks which were assigned to a booster on the first iteration might in fact not be suitable for processing by the booster such that a processing of the sub-tasks by a computation node rather than a booster might optimize the computation of the task as a whole. Accordingly, for a second and possible further iterations, if needed, of the task with an altered second and/or further sub-task distribution might improve the efficiency of the computation of the task.

*'442 Patent, 3:59-4:3*

# Microsoft's Construction Adheres To The Specification



- The invention's feedback mechanism would be unreliable if the sub-tasks differed in the first and further execution

> A job including a task in which an operator has estimated a scalability factor for each sub-task is input into the system. This task is compiled and the compiled code is executed. In the execution, a task is analyzed by the application manager and sub-tasks of the task are divided into computation node suitable sub-tasks and booster suitable sub-tasks and this information is passed to the resource manager for assignment of boosters to computation nodes. During a first iteration of the task, the results of the execution of the sub-tasks are collected together with the information from the daemons concerning the processing of the sub-tasks and the status of the nodes. The application manager then performs a reassignment of the sub-tasks for a subsequent iteration of the task and passes this updated assignment information to the resource manager which may also adjust the assignment of boosters to nodes accordingly.

*'442 Patent, 4:16-31*

# ParTec Attempts To Rewrite The Claim, But Tasks Are <u>Not</u> Sub-Tasks



**ParTec Cites**

A job to be computed by the system may comprise a number of tasks some of which or all may be repeated a number of times during the execution of the job. For

*'442 Patent, Specification, 3:44-46*

**The Claim Reads**

1. A method of operating a heterogeneous computing system comprising a plurality of computation nodes and a plurality of booster nodes, at least one of the plurality of computation nodes and a plurality of booster nodes being arranged to compute a computation task, the computation task comprising a plurality of sub-tasks, the method comprising:

in a first computing iteration, assigning and processing the plurality of sub-tasks by at least a portion of the plurality of computation nodes and at least a portion of the plurality of booster nodes in a first distribution; and generating, using information relating to the processing of the plurality of sub-tasks by at least the portion of the

*'442 Patent, 5:26-38*

# ParTec's Misunderstands The Specification's Reference To "Further" Sub-Tasks



- The specification discusses improving efficiency by moving sub-tasks to boosters, not adding new sub-tasks

> As well as adjusting the distribution of sub-tasks between computation nodes and boosters based on a scalability of the sub-task, the distribution may also be influenced by information learned about the processing of the sub-task and any need to call further sub-tasks during the processing. If a first sub-task being handled by a booster requires input from a second sub-task not being handled by the booster, this may lead to an interruption in the processing of the first sub-task. Accordingly, the daemon at the booster handling the first sub-task can report this situation to the application manager such that in a further iteration both the first and second sub-tasks are handled by the booster. Accordingly, the application manager is arranged using the information provided by the daemons operating in the computation nodes and the boosters to adjust groupings of sub-tasks for assignment to the computation nodes and boosters.

*'442 Patent, 4:48-63*

# "outsource the [second] part of the computation task to the assigned selected [hardware] booster under control of the first [hardware] computation node"



| Microsoft's Proposal | ParTec's Proposal |
|---|---|
| "move the [second] part of the computation task from the first [hardware] computation node to the assigned booster, without implicating the resource manager" | Plain and ordinary meaning |

## First Dispute:

Whether "outsource" requires ***moving*** the part of the computation task.

## Second Dispute:

Whether the booster being "under control of the [] computation node" means the resource manager is not needed to move part of the task.

# "outsource the [second] part of the computation task to the assigned selected [hardware] booster under control of the first [hardware] computation node"



| Microsoft's Proposal | ParTec's Proposal |
|---|---|
| "move the [second] part of the computation task from the first [hardware] computation node to the assigned booster, without implicating the resource manager" | Plain and ordinary meaning |

## First Dispute:

Whether "outsource" requires ***moving*** the part of the computation task.

# Microsoft's Proposal Is Exactly How ParTec Defined "Outsource" During Prosecution



1. A computer cluster system for processing a computation task, comprising:
• • •
provide assignment information to the first hardware computation node after the assignment of the selected hardware booster so as to enable the first hardware computation node to outsource the part of the computation task to the assigned selected hardware booster under control of the first hardware computation node,

*'883 Patent, Claim 1*

The assignment and outsourcing/output of a part of the computation task is a two-step procedure which is clearly defined in independent claims 1 and 14. First, the resource
• • •
In the second step, the first hardware computation node uses said assignment information to outsource a part of the computation task from the first hardware computation node to the assigned booster. The claim language clearly defines that the part of the computation task is moved **from** the first hardware computation node **to** the assigned booster ("the hardware computation node **to output** the part of the computation task to the assigned selected hardware booster" – emphasis added).

*'883 Patent, File History, August 24, 2022 Response, Response Brief (Dkt. 123) Ex. 2 at 0903-904*



"It is well settled that a patentee may define a claim term either in the written description of the patent or, as in the present case, in the prosecution history."

*Honeywell Inc. v. Victor Co. of Japan,*
298 F.3d 1317, 1323 (Fed. Cir. 2002)

DESMARAIS LLP

# ParTec's Definition Applied Equally To "Outsource" Which It Used Interchangeably With "Output" During Prosecution (And Its Reply)



The assignment and <u>outsourcing/output</u> of a part of the computation task is a two-step procedure which is clearly defined in independent claims 1 and 14.  First, the resource

• • •

In the second step, the first hardware computation node uses said assignment information to <u>outsource a</u> part of the computation task from the first hardware computation node to the assigned booster. <mark>The claim language <u>clearly defines</u> that the part of the computation task is moved **from** the first hardware computation node **to** the assigned booster</mark> ("the hardware computation node **to output** the part of the computation task to the assigned selected hardware booster" – emphasis added).

A further limitation is that the <u>output/outsourcing</u> is performed "under control of the first hardware computation node."  Accordingly, after the assignment is performed by the resource manager, the fist hardware computation node can make use of the assignment and outsource parts of the computation tasks to the assigned boosters (without further need to implicate the resource manager).

- ParTec modified "output" to "outsource" sua sponte

computer cluster system for processing a computation task,

omputation nodes, a plurality of hardware boosters, and a
of hardware computation nodes and the plurality of hardware
munication infrastructure;

<u>y of hardware computation nodes being arranged to jointly</u>

eing arranged to assign a selected hardware booster of the
a first hardware computation node of the plurality of
r computation of a part of the computation task, and
wherein the resource manager is arranged to provide assignment information to the first hardware computation node after the assignment of the selected hardware booster so as to enable the first hardware computation node to ~~output~~ <u>outsource</u> the part of the computation task to the assigned selected hardware booster under control of the first hardware computation node.

*'883 Patent, File History, August 24, 2022 Response, Response Brief (Dkt. 123) Ex. 2 at 0903-905, 0939*

**DESMARAIS** LLP

**50**



# "outsource the [second] part of the computation task to the assigned selected [hardware] booster under control of the first [hardware] computation node"

| Microsoft's Proposal | ParTec's Proposal |
|---|---|
| "move the [second] part of the computation task from the first [hardware] computation node to the assigned booster, without implicating the resource manager" | Plain and ordinary meaning |

## Second Dispute:

Whether the booster being "under control of the [] computation node" means the resource manager is not needed to move part of the task.

# ParTec Chose To Claim A Specific Embodiment – Microsoft's Proposed Construction Is Consistent With That Embodiment



**1**. A computer cluster system for processing a computa-tion task, comprising:

**• • •**

provide assignment information to the first hardware computation node after the assignment of the selected hardware booster so as to enable the first hardware computation node to outsource the part of the computation task to the assigned selected hard-ware booster under control of the first hardware computation node,

*'883 Patent, Claim 1*

FIG. **8** shows a block diagram of control flow of a computer cluster arrangement according to a further aspect of the present invention. In the present embodiment the resource manager RM does not pass the at least one part of the computation task to the booster B, but the computation node CN requests an address or a further identification of a booster B, which is arranged to compute the specific at least one part of the computation task. The resource manager RM returns the required address to the computation node CN. The computation node CN is now able to directly access the booster B by means of the communication infrastructure IN.

*'883 Patent, 11:60-12:1*



# Claims Do Not Need To Be Construed To Encompass Other Disclosed Embodiments ParTec Chose Not To Claim

FIG. **5** shows a flow diagram illustrating a method for operating a computer cluster arrangement according to an aspect of the present invention. In the present embodiment after the assignment in step **202** of the at least one booster • • • computation task. This may be of advantage in case the at least second part of the computation task is forwarded to the resource manager RM, which assigns a booster B to the second part of the computation task. The resource manager RM can then transmit the second part of the computation task to the booster B, without the necessity that the computation node CN directly contacts the booster B.

*'883 Patent, 11:4-19 (cited by Opening Brief (Dkt. 114) at 28)*

FIG. **6** shows a block diagram of control flow of a computer cluster arrangement according to an aspect of the present invention. In the present embodiment a computation • • • task. Therefore, a resource manager RM is accessed, which forwards the part of the computation task to a selected booster B. The booster B computes the part of the computation task and returns a result, which is indicated by the most right arrow. According to a further aspect of the present embodiment the return value can be passed back to the computation node CN.

*'883 Patent, 11:35-46 (cited by Opening Brief (Dkt. 114) at 28)*



"[T]he claims of the patent need not encompass all disclosed embodiments."

*TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.,*
529 F.3d 1364, 1373 (Fed. Cir. 2008)

# ParTec Explained What "Under Control" Meant During Prosecution



**1.** A computer cluster system for processing a computation task, comprising:

• • •

provide assignment information to the first hardware computation node after the assignment of the selected hardware booster so as to enable the first hardware computation node to ==outsource the part of the computation task to the assigned selected hardware booster== <u>under control</u> ==of the first hardware computation node,==

*'883 Patent, Claim 1*

• ParTec did so to distinguish prior art

A further limitation is that the ==output/outsourcing is performed "<u>under control</u> of the first hardware computation node."== Accordingly, ==after the assignment is performed by the resource manager, the fist hardware computation node can make use of the assignment and outsource parts of the computation tasks to the assigned boosters== ==(<u>without further need to implicate the resource manager</u>).==

Indeed, Krishnamurthy fails to disclose an assignment of server systems and accelerators and, accordingly, also fails to disclose the two-step arrangement of outsourcing parts of computation tasks. Instead, Krishnamurthy (and particularly the newly cited paragraphs [0038]-[0040]) disclose an "assignment" of tasks to server/accelerator processors.

*'883 Patent, File History, August 24, 2022 Response, Response Brief (Dkt. 123) Ex. 2 at 0904*

# ParTec Argued That The Claims Require The Computation Node Itself To Move The Part, Not The Resource Manager



> With regard to the claimed feature "output the part of the computation task to the assigned selected hardware booster under control of the first hardware computation node," the FOA asserts, from the disclosure of paragraphs [0038] to [0040] of Krishnamurthy, that the workload manager 118 dynamically allocates/provides additional kernels 206, 208, 214, 216 to the server system 102, accelerators 104, or both so that additional accelerator workloads can be executed. Applicant respectfully disagrees with this assertion for multiple reasons.
>
> • • •
>
> Second, claims 1 and 14 require that the first hardware computation node to which the assignment information is provided, *itself outputs* a part of the computation task. In contrast, the server system and accelerators of Krishnamurthy which receive the kernels – which the FOA considers to be the assignment information - also receive the additional workload.
>
> Third, the output of the part of the computation task is not done under the control of the first hardware computation node, i.e., the hardware computation node which receives assignment information. Instead, according to Krishnamurthy, the workload manager dynamically allocates/provides additional kernels to the server systems/accelerators.
>
> Accordingly, the system described in Krishnamurthy is completely different from the claimed features. One advantage of the present invention is that after a booster has been assigned to a computation node, the computation node can make use of the booster and outsource parts of the computation tasks to the booster under said assignment. Such an outsourcing can be done repeatedly under the assignment.

*'883 Patent, File History, August 24, 2022 Response, Response Brief (Dkt. 123) Ex. 2 at 0905*

# ParTec's Argument Regarding Permissive Language Holds No Weight – The Claims Recite Only Capability



**1.** A computer cluster system for processing a computation task, comprising:

• • •

provide assignment information to the first hardware computation node after the assignment of the selected hardware booster so as <u>to enable</u> the first hardware computation node to ==outsource the part of the computation task to the assigned selected hardware booster under control of the first hardware computation node,==

*'883 Patent, Claim 1*

**13.** A method for operating a computer cluster arrangement for processing a computation task, comprising:

• • •

assigning a selected booster of a plurality of boosters to a first computation node of the plurality of computation nodes by a resource manager, for computation of a second part of said computation task, said assignment being accomplished as a function of a predetermined assignment metric wherein the resource manager provides assignment information to the first computation node after the assignment of the selected booster <u>enabling</u> the first computation node to ==outsource the second part of the computation task to the assigned selected booster under control of the first computation node==i

*'883 Patent, Claim 13*



56



# *ParTec AG and BF exaQC AG v. Microsoft Corp.*

(E.D. Tex. Case No. 2:24-cv-00433)
Microsoft's *Markman* Hearing Presentation

