# *ParTec AG, BF exaQC AG vs.*
# *Microsoft Corporation*

## Plaintiffs' Markman Presentation
## Case No. 2:24-cv-00433-RWS-RSP

# U.S. Patent No. 10,142,156

| Claim Term | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| **"Assigned to and shared by more than one of the plurality of hardware computation nodes"**<br><br>**('156 Patent: Claims 1, 14)** | Plain and ordinary meaning | "simultaneously assigned to and useable by more than one of the plurality of hardware computation nodes" |

2

# Microsoft Proposes Two Limitations

| Claim Term | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "Assigned to and shared by more than one of the plurality of hardware computation nodes"<br><br>('156 Patent: Claims 1, 14) | Plain and ordinary meaning | "**simultaneously** assigned to and **useable** by more than one of the plurality of hardware computation nodes" |

# Microsoft's Limitations Are Absent from the Claims and Specification

**No** "simultaneously" requirement.

**No** "usable" requirement.

also be referred to as compute nodes. Hence, a sharing of accelerators, here in form of boosters, by computation nodes is feasible. For an assignment of a booster to a computation

'156 Patent, 2:51-52

wherein the plurality of hardware computation nodes and the plurality of hardware boosters are configured such that during processing of said computation task, assignments of hardware computation nodes and hardware boosters can be provided such that at least (i) at least one of the plurality of hardware computation nodes is arranged to communicate with at least one of the plurality of hardware boosters, (ii) at least one of the plurality of hardware boosters is assigned to and shared by more than one of the plurality of hardware computation nodes such that the compute capacity of the at least one of the plurality of hardware boosters is shared between the more than one of the plurality of hardware computation nodes, and (iii) each of the hardware

'156 Patent, Claim 1, 14

a resource manager (RM) being arranged to assign at least one booster (B) to at least one of said plurality of computation nodes (CN) for computation of said second part of said computation task, the assignment being accomplished as a function of a predetermined assignment metric.

'156 Patent, 6:49-54

InfiniBand. Hence, each of the boosters B can be shared by any of the computation nodes CN. Furthermore a virtualization on cluster level can be accomplished. Each booster, or at least a part of the boosters, can be virtualized and made available to the computation nodes virtually.

'156 Patent, 8:39-43

4

# Microsoft Offers No Argument For Replacing "Shared" with "Usable"



"[A] party wishing to alter the meaning of a clear claim term must overcome the presumption that the ordinary and accustomed meaning is the proper one, demonstrating why such an alteration is required."

*K-2 Corp. v. Salomon S.A.,* **191 F.3d 1356, 1363 (Fed. Cir. 1999)**

5

# No Prosecution Disclaimer in U.S. File History: "Simultaneously" Does Not Appear

**No** "simultaneously" requirement.

**No** "usable" requirement.

A COMPUTER CLUSTER ARRANGEMENT FOR PROCESSING A
COMPUTATION TASK AND METHOD FOR OPERATION THEREOF

CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation of PCT Application No. PCT/EP2011/067888 filed 13 October 2011, which was published in the English language on 19 April 2012 as PCT Publication No. WO 2012/049247. The PCT Application claims priority to EP Application No. 10187436.0 filed 13 October 2010. These documents are hereby incorporated herein by reference.

FIELD OF THE INVENTION

The present invention is directed toward a computer cluster arrangement. In particular, it relates to a computer cluster arrangement with improved resource management as regards the application of computing nodes for processing scalable computation tasks as well as complex computation tasks. It is especially directed toward a computer cluster arrangement for processing a computation task and a method for operating the computer cluster arrangement. The computer cluster arrangement in accordance with the present invention makes use of acceleration functionality, which assist the computing nodes to accomplish a given computation task. The present invention is furthermore directed toward a computer program product being configured for accomplishing the method as well as a computer readable medium for storing the

- 1 -

ParTec_00000045

'156 File History at 0484

Fourth, Dillenberger does not teach or suggest that a single accelerator is **assigned to and shared by more than one of the host systems.** Instead, Dillenberger discloses that an accelerator is assigned to a single host system, where multiple accelerators may be assigned to a single host system. For example, as depicted in FIG. 2 of Dillenberger, Accelerator W is assigned to Host System A, Accelerator X is assigned to Host System B, and Accelerator Y is assigned to Host System N; and as depicted in FIG. 3 of Dillenberger, Accelerators W and X are assigned to Host System A.

In contrast, amended claims 1 and 14 recite that at least one of the plurality of boosters is **assigned to and shared by** more than one of the plurality of hardware computation nodes **such that the compute capacity of the at least one of the plurality of hardware boosters is shared** between the more than one of the plurality of hardware **computation nodes.** As discussed above, while Dillenberger discloses that accelerators are dynamically reassigned to different host systems (e.g., Accelerator X is dynamically assigned from Host System B to Host System A; see paragraph [0035]), the accelerators are only dynamically reassigned "[a]fter all existing jobs have been completed" and after the assignment manager 130 de-allocates the accelerators from the current host system (see paragraph [0034]). Only after accelerator reassignment does the "given host system **then** [begin] to issue jobs from its workload to the newly assigned accelerator resources" (see paragraph [0034]; emphasis added). Thus, it is **never** the case that an accelerator of Dillenberger is assigned to and shared by more than one (i.e., at least two) of the host systems such that the compute capacity of the accelerator is shared between the host systems.

6

# No Disclaimer in Foreign Patent Proceeding: Microsoft Has Not Shown Similarity in Foreign Patent Laws



"[W]e have cautioned against relying on the prosecution of foreign applications in interpreting claim terms of U.S. patents and patent applications."

*Eli Lilly & Co. v. Apotex, Inc.*, 837 F. App'x 780, 785 (Fed. Cir. 2020)

"Defendants have not shown that the relevant patent laws in the foreign jurisdiction are sufficiently similar to the laws of the United States."

*Mars, Inc. v. TruRX LLC*, No. 6:13-CV-526-RWS, 2015 WL 11232358, at *9 (E.D. Tex. Aug. 6, 2015).

# No Disclaimer in Foreign Patent Proceeding: Different Claim Language at Issue

| EP 2628080 | '156 patent |
|---|---|
| "(ii) one or more of the boosters is ==shareable== by more than one computation node of the plurality of computation nodes, and"<br><br>Ex. 7, claim 1. | "(ii) at least one of the plurality of hardware boosters is ==assigned to and shared by== more than one of the plurality of hardware computation nodes such that the compute capacity of the at least one of the plurality of hardware boosters is shared between the more than one of the plurality of hardware computation nodes"<br><br>Ex. A ('156 patent), claim 1. |



Microsoft's Responsive Claim Construction Brief at 6

"[T]he doctrine of prosecution disclaimer generally does not apply when the claim term in the descendant patent uses different language."

*Ventana Med. Sys., Inc. v. Biogenex Lab'ys., Inc.*, 473 F.3d 1173, 1182 (Fed. Cir. 2006)

# No Disclaimer in Foreign Patent Proceeding: Permissive Language is Not "Blatant Admission"



The key point for the correct interpretation of feature 4.2 regarding shareability is that this is claimed in the patent for a different reason. The basic shareability of the boosters, which also existed in the prior art, for example because they are many-core processors, failed because the ==boosters were permanently assigned to their respective computation nodes==, page 1, lines 21-27, page 2, lines 5-10, so that other computation nodes could not access the boosters from a purely technical point of view, i.e., could not use their intrinsic shareability. The invention solves exactly this rigid assignment and connects all computation nodes with all boosters, so that now, ==a resource manager can take advantage of the already existing shareability of the boosters and allow multiple computation nodes to use a booster simultaneously.== This technical relationship is clearly described and disclosed in the patent, page 3, lines 6-14, page 9, line 15, page 11, line 34.

MSFT_PARTEC_000490125

9

# U.S. Patent Nos. 10,142,156 and 11,934,883

| Claim Term | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| **"Assignment metric"**<br><br>**('156 Patent: Claims 1–2, 13–15;<br>'883 Patent: Claims 1–2, 13–15)** | Plain and ordinary meaning | "measurements represented as a group of several parameters" |

# "Assignment Metric" Is a Metric or Measurement for Assignment: Claim Language

a resource manager being arranged to assign the at least one hardware booster to the at least one hardware computation node, including:

at a start of processing of said computation task, establishing an initial assignment by using a predetermined assignment metric specified as a function of at least one of a group of assignment parameters, and during said processing of said computation task: (i) updating the predetermined assignment metric, and (ii) establishing a dynamic assignment by using the predetermined assignment metric that was updated, and

'883 Patent



Claim 1

the resource manager being arranged to:

. . .

initialize a static assignment and further to establish a dynamic assignment during the processing of the computation task, accomplish the assignments as a function of a predetermined assignment metric:

Claim 1



'156 Patent

11

# "Assignment Metric" Is a Metric or Measurement for Assignment: Specification



'156 Patent

a resource manager being arranged to assign at least one booster to at least one of the plurality of computation nodes for computation of the second part of the computation task, the assignment being accomplished as a function of a predetermined assignment metric.

2:42-46

a resource manager (RM) being arranged to assign at least one booster (B) to at least one of said plurality of computation nodes (CN) for computation of said second part of said computation task, the assignment being accomplished as a function of a predetermined assignment metric.

6:49-54

12

# "Assignment Metric" Is Thus Used In Its Plain and Ordinary Sense: A Metric or Measurement for Assignment



**"Assignment":** "the act of assigning or state of being assigned."

Ex. H (Collins English Dictionary (10th ed. 2009))

**"Assignment":** "1. The act of assigning 2. Something assigned, as a task…"

Ex. I (The American Heritage Dictionary (2nd College ed. 1991))





**"Metric":** "standard of measurement."

Ex. J (Merriam-Webster's Collegiate Dictionary (11th ed. 2009));

13

# Microsoft Seeks to Add a Limitation

| Claim Term | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| **"Assignment metric"**<br><br>**('156 Patent: Claims 1–2, 13–15; '883 Patent: Claims 1–2, 13–15)** | Plain and ordinary meaning | "measurements **represented as a group of several parameters**" |

# Microsoft's Limitation Appears in Other Elements or Claims of the Asserted Patents

**'156 Patent Claim 1**

at a start of processing of said computation task, establishing an initial assignment by using a predetermined assignment metric specified as a function of at least one of a group of assignment parameters, and

156 Patent

### Defendant's Proposed Construction

"measurements **represented as a group of several parameters**"

**5.** The computer cluster system according to claim **1**, wherein said predetermined assignment metric is specified as a function of at least one of a group of assignment parameters, said group of assignment parameters comprising: resource information, cost information, complexity information, scalability information, a computation log record, compiler information, priority information, and a time stamp.

**'883 Patent Claim 5**

'883 Patent

15

# Cannot Read a Limitation from a Separate Claim Element or Term Into this Disputed Term

"Considering there is a **separate claim element** that addresses the key configuration, it would be **improper to import such a limitation to this term**."

*Jaipuria v. Linkedin Corp.*, 2013 WL 12146130, at *6 (E.D. Tex. May 15, 2013)

"It is settled law that when **a patent claim does not contain a certain limitation** and **another claim does**, that **limitation cannot be read into the former claim** in determining either validity or infringement."

*SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1122 (Fed. Cir. 1985) (en banc)

"The case law most frequently addresses 'improper importation' of limitations from the specification into the claims. But that applies as well to **improperly 'importing' limitations from other claims** or, in this case, **improperly 'importing' a limitation from another claim element**."

*Gebo Cermex, Inc. v. ACMI USA, Inc.*, 2020 WL 9602347, at *67 (N.D. Ga. Jan. 27, 2020) (quotation omitted)

16

# No Prosecution Disclaimer:
# The Passage Microsoft's Argument Hinges Upon

First, even assuming that Krishnamurthy's number of operations per second functions as an assignment metric, with which Applicant does not necessarily agree, Applicant's independent claim 1 as amended clarifies that Applicant's assignment metric is a *function of a group of assignment parameters*. Therefore, Applicant's assignment metric is not simply a metric represented as a single numeric value, and is instead represented as a group of several parameters.

To this end, Applicant also disagrees with the Final Action's allegation that Applicant's assignment metric is not explicitly defined by Applicant's specification. Final Action, p. 8. Applicant respectfully points out paragraph [0017] [1] of Applicant's specification as originally filed, which states the following:

For accomplishing the assignment between boosters and computation nodes a specific set of rules is required. Therefore, an assignment metric is provided, which serves as a basis for the decision which booster is coupled with which computation node. The assignment metric may be managed by a resource manager. Managing the assignment metric *refers to establishing and updating rules naming at least one booster, which is assigned to at least one further named computation node*.

Specification, para. [0017], emphasis added.

In other words, Applicant's specification as originally filed explains that the assignment metric may be managed via a set of rules, and therefore the assignment metric is representative of one of several groups of parameters utilized as part of these rules. Also see, e.g., Applicant's specification at paragraph [0023].

IN T
In re Patent Ap
Thomas Lippe

Application N

Filed: April 12

For:  A COM
        FOR PR
        AND M

MS RCE
Commissioner
P.O. Box 1450
Alexandria, V

Dear Sir:

In response to the Office Action dated June 2, 2016 ("Final Action"), please amend the above-identified U.S. patent application as follows and enter the Request for Continuing Examination (RCE):

**Amendments to the Claims** are reflected in the listing of claims, which begins on page 2.

**A Statement of Substance of the Interview** begins on page 7.

**Remarks/Arguments** begin on page 8.

'156 File History at 0272-73

17

# No Prosecution Disclaimer:
# Passage Refers to Different Claim Element



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Docket No.: 29959/51333
(PATENT)

In re Patent Application of:
Thomas Lippert

Application No.: 13/861,429          Confirmation No.: 5702

Filed: April 12, 2013                Art Unit: 2441

For: A COMPUTER CLUSTER ARRANGEMENT    Examiner: O. Duong
FOR PROCESSING A COMPUTATION TASK
AND METHOD FOR OPERATION THEREOF

AMENDMENT ACCOMPANYING A
REQUEST FOR CONTINUING EXAMINATION (RCE)

MS RCE
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

First, even assuming that Krishnamurthy's number of operations per second functions as an assignment metric, with which Applicant does not necessarily agree, Applicant's independent claim 1 as amended clarifies that Applicant's assignment metric is a *function of a group of assignment parameters*. Therefore, Applicant's assignment metric is not simply a metric represented as a single numeric value, and is instead represented as a group of several parameters.

'156 File History at 0272-73

## AMENDMENTS TO THE CLAIMS

1.    (Currently Amended) A computer cluster arrangement for processing a computation task, comprising:

[[-]] a plurality of computation nodes (CN), each of which interfacing a communication infrastructure (IN), at least two of which being arranged to jointly compute at least a first part of said computation task;

[[-]] at least one booster (B) being arranged to compute at least a second part of said computation task, each the at least one booster (B) interfacing said with the communication infrastructure (IN); and

[[-]] a resource manager (RM) being arranged to assign the at least one booster (B) to at least one of said plurality of computation nodes (CN) in accordance with an assignment metric that is adjustable for computation of said second part of said computation task, and

wherein said resource manager (RM) being is arranged to perform the assignment by using a predetermined assignment metric at start of processing of said computation task to[[,]] and (i) initialize the assignment, (ii) alter the predetermined assignment metric to an altered assignment metric, and (iii) perform the assignment by using the altered predetermined assignment metric during processing of the computation task, and wherein said assignment metric is specified as a function of at least one of a group of assignment parameters to facilitate an assignment of particular boosters to particular ones of the plurality of computation nodes.

'156 File History at 0265

18

# No Prosecution Disclaimer: Passage Refers to Different Claim Element



Application No. 13/861,429
Amendment dated June 22, 2018
Reply to Office Action of March 30, 2018

Docket No.: 29959/51333

**AMENDMENTS TO THE CLAIMS**

**AMENDMENTS TO THE CLAIMS**

1. (Currently Amended)  A computer cluster-booster ~~arrangement~~ system for processing a computation task, comprising:

~~wherein said~~ a resource manager [[is]] being arranged to ~~perform the assignment by using a predetermined assignment metric~~ assign the at least one hardware booster to the at least one hardware computation node, including:

at a start of processing of said computation task ~~and to update~~, establishing an initial assignment by using a predetermined assignment metric specified as a function of at least one of a group of assignment parameters, and

wherein ~~said assignment metric is specified as a function of at least one of a group of assignment parameters to facilitate an assignment of particular boosters to particular ones of the plurality of computation nodes~~ the plurality of hardware computation nodes and the

assignment at the start of processing by using the predetermined assignment metric,
(ii) altering the assignment metric to an altered assignment metric during processing
of the computation task, and (iii) performing the assignment (ii) establishing a

3

'156 File History at 0476

at a start of processing of said computation task, establishing an initial assignment by using a prede-termined assignment metric specified as a function of at least one of a group of assignment parameters, and

'156 Patent Claim 1

**5**. The computer cluster system according to claim **1**, wherein said predetermined assignment metric is specified as a function of at least one of a group of assignment parameters, said group of assignment parameters comprising: resource information, cost information, complexity information, scalability information, a computation log record, compiler information, priority information, and a time stamp.

'883 Patent Claim 5

19

# No Prosecution Disclaimer: Passage Refers to Different Claim Element

Docket No.: 29959/51333
(PATENT)

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Thomas Lippert

Application No.: 13/861,429                Confirmation No.: 5702

Filed: April 12, 2013                       Art Unit: 2441

For: A COMPUTER CLUSTER ARRANGEMENT
FOR PROCESSING A COMPUTATION TASK
AND METHOD FOR OPERATION THEREOF        Examiner: O. Duong

AMENDMENT ACCOMPANYING A
REQUEST FOR CONTINUING EXAMINATION (RCE)

MS RCE
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

First, even assuming that Krishnamurthy's number of operations per second functions as an assignment metric, with which Applicant does not necessarily agree, Applicant's independent claim 1 as amended clarifies that Applicant's assignment metric is a *function of a group of assignment parameters*. Therefore, Applicant's assignment metric is not simply a metric represented as a single numeric value, and is instead represented as a group of several parameters.

at a start of processing of said computation task, establishing an initial assignment by using a predetermined assignment metric specified as a function of at least one of a group of assignment parameters, and

'156 Patent Claim 1

**5**. The computer cluster system according to claim **1**, wherein said predetermined assignment metric is specified as a function of at least one of a group of assignment parameters, said group of assignment parameters comprising: resource information, cost information, complexity information, scalability information, a computation log record, compiler information, priority information, and a time stamp.

'883 Patent Claim 5

'156 File History at 0272-73

20

# No Prosecution Disclaimer: Passage Refers to Different Claim Element



"Considering there is a **separate claim element** that addresses the key configuration, it would be **improper to import such a limitation to this term**."

*Jaipuria v. Linkedin Corp.*, 2013 WL 12146130, at *6 (E.D. Tex. May 15, 2013)

"It is settled law that when **a patent claim does not contain a certain limitation** and **another claim does**, that **limitation cannot be read into the former claim** in determining either validity or infringement."

*SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1122 (Fed. Cir. 1985) (en banc)

"The case law most frequently addresses 'improper importation' of limitations from the specification into the claims. But that applies as well to **improperly 'importing' limitations from other claims** or, in this case, **improperly 'importing' a limitation from another claim element**."

*Gebo Cermex, Inc. v. ACMI USA, Inc.*, 2020 WL 9602347, at *67 (N.D. Ga. Jan. 27, 2020) (quotation omitted)

21

# No Support for Measurements – Plural



### Defendant's Proposed Construction

"**measurements** represented as a group of several parameters"

Plural



'156 Patent Claim 1

at a start of processing of said computation task, establishing an initial assignment by using a prede-termined assignment metric specified as a function of at least one of a group of assignment parameters, and

156 Patent

Singular

**5**. The computer cluster system according to claim **1**, wherein said predetermined assignment metric is specified as a function of at least one of a group of assignment parameters, said group of assignment parameters comprising: resource information, cost information, complexity information, scalability information, a computation log record, compiler information, priority information, and a time stamp.

'883 Patent Claim 5

'883 Patent

# No Support for Measurements – Plural



**Defendant's Proposed Construction**

"**measurements** represented as a group of several parameters"

Plural

First, even assuming that Krishnamurthy's number of operations per second functions as an assignment metric, with which Applicant does not necessarily agree, Applicant's independent claim 1 as amended clarifies that Applicant's assignment metric is a *function of a group of assignment parameters*. Therefore, Applicant's assignment metric is not simply a metric represented as a single numeric value, and is instead represented as a group of several parameters.

Singular

In other words, Applicant's specification as originally filed explains that the assignment metric may be managed via a set of rules, and therefore the assignment metric is representative of one of several groups of parameters utilized as part of these rules. Also see, e.g., Applicant's specification at paragraph [0023].

'156 File History at 0272-73

23

# The Specification Does Not Help Microsoft



'156 Patent

For accomplishing the assignment between boosters and computation nodes a specific set of rules is required. Therefore, an assignment metric is provided, which serves as a basis for the decision which booster is coupled with which computation node. The assignment metric may be managed by a resource manager. Managing the assignment metric refers to establishing and updating rules naming at least one booster, which is assigned to at least one further named computation node. Hence, it is possible to update the assignment metric at runtime. Such assignment rules may be created as a function of a load balancing, which detects workload of the computer cluster arrangement, especially of the boosters. Furthermore, it is possible to detect computing capacities of boosters and furthermore detect computation task requirements and assign a selected booster, which provides the required capacities to the computation node. For determining an initial assignment of boosters to computation nodes, the assignment metric is predetermined but may be altered at runtime. Hence, static assignment is provided at start of the processing of computation task and dynamic assignment is provided at runtime.

3:47-67

# U.S. Patent Nos. 10,142,156 and 11,934,883

| Claim Term | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| **"Booster"**<br><br>**('156 Patent: Claims 1, 4, 6–8, 12–15; '883 Patent: Claims 1–2, 6–7, 11–13, 15)** | Plain and ordinary meaning<br><br>If not plain and ordinary meaning, then "accelerator" | "one or more booster nodes" |

# Inventor Could Have Used "Booster Nodes" But Didn't



wherein the plurality of hardware computation nodes and the plurality of hardware boosters are configured such that during processing of said computation task, assign-

'156 Patent, Claim 1

wherein the plurality of hardware computation nodes and the plurality of hardware boosters are configured such that during processing of said computation task, assignments of hardware computation nodes and hardware boosters can be provided such that at least (i) at least

'156 Patent, Claim 14

'156 Patent



1. A computer cluster system for processing a computation task, comprising:
a plurality of hardware computation nodes, a plurality of hardware boosters, and a resource manager, the plurality of hardware computation nodes and the plurality of hardware boosters each interfacing a communication infrastructure;

'883 Patent, Claim 1



assigning a selected booster of a plurality of boosters to a first computation node of the plurality of computation nodes by a resource manager, for computation of a

'883 Patent, Claim 13

'883 Patent

26

# Microsoft's Construction Would Exclude Preferred Embodiments

The cluster's computation nodes CN are internally coupled by a standard cluster interconnect, e.g., Mellanox InfiniBand. This network is extended to include the booster (ESB) as well. In the figure we have drawn three such boosters. The ESBs each consist of a multitude of many-core accelerators connected by a specific fast low-latency network. This connection of the CNs with the ESBs is very flexible. A sharing of accelerator capability between computation nodes becomes possible. The virtualization on the cluster level is not hampered by the model and the full ESB parallelism can be exploited. The ESB-to-CN assignment proceeds via a dynamical resource manager RM. A static assignment at start-time can be made dynamic at run-time. All CN-ESB communication proceeds via the cluster network protocol. The intra-AC communication will require new solutions. The ESB allocation can follow the application needs and fault tolerance is guaranteed in case of accelerator failures while all computation nodes share the same growth capacity.

'156 Patent, 10:21-39; '883 Patent, 10:7-25



'156 Patent, Fig 3; '883 Patent, Fig. 3

27

# Microsoft's Construction Would Exclude Preferred Embodiments

In the following same notions will be denoted with the same reference signs, if not indicated otherwise. FIG. 2 shows a computer cluster arrangement comprising a cluster C as well as a booster group BG. The cluster comprises in the present embodiment four computation nodes, also referred as CN, as well as three boosters, also referred to as B. A flexible coupling of boosters to computation nodes is established by a communication infrastructure IN, such as a so called interconnect. This kind of communication infrastructure IN can be implemented for instance by using InfiniBand. Hence, each of the boosters B can be shared by any of the computation nodes CN. Furthermore a virtualization on cluster level can be accomplished. Each booster, or at least a part of the boosters, can be virtualized and made available to the computation nodes virtually.

'156 Patent, 8:28-43; '883, 8:20-34



'156 Patent, Fig 2; '883 Patent, Fig. 2

# Microsoft's Construction Would Exclude Preferred Embodiments

FIG. **5** shows a flow diagram illustrating a method for operating a computer cluster arrangement according to an aspect of the present invention. In the present embodiment after the assignment in step **202** of the at least one booster B to one of the plurality of computations nodes CN the step of computing **201** at least a second part of the computation task is performed. Hence, it is possible to select a specific booster B and based on the assignment being established in step **202** a booster B computes the at least second part of the computation task. This may be of advantage in case the at least second part of the computation task is forwarded to the resource manager RM, which assigns a booster B to the second part of the computation task. The resource manager RM can then transmit the second part of the computation task to the booster B, without the necessity that the computation node CN directly contacts the booster B.

'156 Patent, 11:18-33; '883 Patent, 11:4-19

According to a further aspect of the present invention, the assignment of at least one booster to one of the plurality of computation nodes triggers at least one of a group of signals, the group comprising: a remote procedure call, a parameter handover and a data transmission. This may provide the advantage that at least a part of the computation tasks can be forwarded from one computation node to at least one booster.

'156 Patent, 5:21-28; '883 Patent, 5:21-28

According to a further aspect of the present invention, the at least one booster comprises at least one group of components, the group comprising: a many-core-processor, a scalar processor, a co-processor, a graphical processing unit, a cluster of many-core-processors and a monolithic processor. This may provide the advantage that the boosters are implemented to process specific problems at high speed.

'156 Patent, 5:59–65; '883 Patent, 5:59-65

# Microsoft's Construction Improperly Elevates a Single Embodiment

" "[I]t is **improper to read limitations from a preferred embodiment** described in the specification—even if it is the only embodiment—**into the claims** absent a clear indication in the intrinsic record that the patentee intended the claims be so limited."

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).



'156 Patent, Fig. 9; '883 Patent, Fig. 9

sage exchange. A booster B <u>may for example</u> comprise 1 to 10.000 booster nodes BN, but is not restricted to this range. The resource manager RM may generally manage parts of the booster nodes BN and <u>can</u> therefore partition the overall number of booster nodes BN and dynamically form boosters B out of said number of booster nodes BN. The switching unit S may be implemented by a switch, a router or any network device.

'156 Patent, 12:59 – 13:5; '883 Patent,12:45-58

30

# Microsoft Has Not Shown that Booster is a Coined Term

Q. What is your understanding of the ordinary usage of the word "booster"?

**A. In the systems that I have seen so far that follow the dMSA paradigm, at least to my understanding, it is usually referring to the part of the system that is used for the high scalable code parts of an application.**

Pickartz depo 94:8-14

Q. You don't know of any ordinary meaning of the term "booster" that's used across multiple contexts in the field of high-performance computing?

**A. No, I am not aware of such an ordinary meaning.**

Pickartz depo 95:7-12



**Booster Concept**
- Flexible coupling of booster (BN) to compute nodes (CN)
- Sharing of BNs between CNs
- Virtualization on cluster level
- BN-to-CN assignment goes by resource manager (RM):
  - Static (at job start)
  - Dynamic (at runtime)
- CN-BN communication through network protocol
- Intra-Booster communication requires new very fast solution

CLUSTER    BOOSTER

2.9.2010    CONFIDENTIAL    6

'156 File History, 0394



As a threshold matter, the present application as well as the claims differentiate between boosters and computation nodes. Paragraph [0011] of the present application refers to boosters as accelerators ("a sharing of accelerators, here in form of boosters"). Further, the terms "computation nodes" and "boosters/accelerators" are technical terms in the field of (high performance) computing which have a clear and unambiguous meaning, in particular with regard to their technical design and configuration. A further definition of the design is also given in paragraph [0027]: "Processors being applied in boosters typically comprise an extensive arithmetic logic unit and a simple control structure when being compared to computation nodes processors." Paragraph [0073] references Intel's many-core processor Knight's Corner and Knight's Ferry as an example of a booster.

'883 File History at 0902

31

# If Construed, Booster Should Be Construed As "Accelerator"

In this computer cluster arrangement **acceleration functionality** is being provided by independent **boosters**. The described computer cluster arrangement allows a loose coupling of those **boosters** to computation nodes, which may also be referred to as compute nodes. Hence, a sharing of **accelerators, here in form of boosters**, by computation nodes is feasible. For an assignment of a booster to a computation

'156, 2:47-53; '883, 2:47-53

sor. This may provide the advantage that the **boosters are implemented to process specific problems at high speed.**

'156, 5:64-65; '883, 5:64-65

ment according to an aspect of the present invention. In the present embodiment an **acceleration** of computation of computation tasks being computed by at least one booster B is performed by assigning at least one computation node CN to at least one **booster B.** Hence the control and information

'156, 11:63-67; '883, 11:49-53

Further, the terms "computation nodes" and **"boosters/accelerators" are technical terms in the field of (high performance) computing which have a clear and unambiguous meaning,** in particular with regard to their technical design and configuration. A further definition of the

'883 File History at 0902

- Neither reference discloses an assignment of **accelerators** to computation nodes.
  - Krishnamurthy 770 utilizes a connection via network 108 between the server system 102 and the **accelerators** 104, but this does not require a resource manager, nor does it involve the implementation of an assignment metric.
  - The computer system described in Krishnamurthy 127 allows for **accelerators** to be placed closer to a particular processor to improve performance. As a result, other **accelerators** that are not optimally placed close to a particular processor *still perform their required task*. Thus, a physical placement of an **accelerator** described in Krishnamurthy 127 cannot be equated with an *assignment* of an **accelerator** to a particular processor.
- Krishnamurthy 127 requires that any adjustment of **accelerators** to other tiers occur after a data processing operation has been completed that allowed the performance of the **accelerator** to be measured in the first place. Therefore, the computer system described in Krishnamurthy 127 cannot be said to adjust an assignment metric once processing has been started.

'156 File History 0295

# U.S. Patent Nos. 10,142,156 and 11,934,883

| Claim Term | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "Computer cluster-booster [system/arrangement]" ('156 Patent: Claims 1, 14) / "computer cluster [system/arrangement]" ('883 Patent: Claims 1, 13) | Preamble Not Limiting | Limiting |

33

# Microsoft's Argument is Limited

- No argument that preamble:

  o Provides necessary structure

  o Provides antecedent basis

- MSFT's only argument based on prosecution history

# Legal Standard:  "Clear Reliance"



"**clear reliance** on the preamble during prosecution to distinguish the claimed invention from the prior art"

*Symantec Corp. v. Computer Assoc Inter., Inc. 522 F.3d 1279, 1288 (Fed. Cir. 2008).*

"[I]t is assumed that the preamble language is duplicative of the language found in the body of the claims or merely provides context for the claims, absent any indication to the contrary in the claims, the specification or the prosecution history."

*Id. at 1289.*

35

# Preamble Provides Context



**1. A computer cluster-booster system for processing a computation task, comprising:**

a plurality of hardware computation nodes, each of which interfaces with a communication infrastructure, at least two of the hardware computation nodes being arranged to jointly compute at least a first part of said computation task;

a plurality of hardware boosters, each hardware booster having a compute capacity, at least one hardware booster of the plurality of hardware boosters being arranged to compute at least a second, specific part of said computation task after having been assigned to at least one hardware computation node and under control of that at least one hardware computation node, the at least one hardware booster interfacing with the communication infrastructure; and

a resource manager being arranged to assign the at least one hardware booster to the at least one hardware computation node, including:

at a start of processing of said computation task, establishing an initial assignment by using a predetermined assignment metric specified as a function of at least one of a group of assignment parameters; and

during said processing of said computation task: (i) updating the predetermined assignment metric, and (ii) establishing a dynamic assignment by using the predetermined assignment metric that was updated, and

wherein the plurality of hardware computation nodes and the plurality of hardware boosters are configured such that during processing of said computation task, assignments of hardware computation nodes and hardware boosters can be provided such that at least (i) at least one of the plurality of hardware computation nodes is arranged to communicate with at least one of the plurality of hardware boosters, (ii) at least one of the plurality of hardware boosters is assigned to and shared by more than one of the plurality of hardware computation nodes such that the compute capacity of the at least one of the plurality of hardware boosters is shared between the more than one of the plurality of hardware computation nodes, and (iii) each of the hardware boosters is assignable to each of the hardware computation nodes.

'156 Patent

# Examiner Describes Prior Art as Computer Cluster

3.      Claims 1-12, 14 and 16-19 is/are rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over Krishnamurthy et al (hereafter, "Krishnamurthy"), US 2012/0054770 A1 (hereafter, "Krishnamurthy '770"), in view of Krishnamurthy et al, US 2009/0213127A1 (hereafter, "Krishnamurthy '127").

Regarding claim 1, Krishnamurthy '770 teaches a computer cluster arrangement for processing a computation task, comprising:

a plurality of computation nodes (i.e., 102, 104), each of which interfacing a communication infrastructure (i.e., network 108) (i.e., Fig. 1), at least two of which being arranged to jointly compute at least a first part of said computation task (i.e., page 5 paragraph [0049]);

at least one booster (i.e., accelerator/processor) being arranged to compute at least a second part of said computation task (i.e., page 3 paragraph [0035]), the at least one booster interfacing with the communication infrastructure (i.e., Fig. 1);

Ex. D, at ParTec 280

37

# Interview Focuses on Body of Claims to Distinguish

## PROPOSED ARGUMENTS

- Krishnamurthy 770 and Krishnamurthy 127 are directed to different types of computer architectures, each processing data in a different manner than the *computer cluster-booster arrangement* to which Applicant's claims are directed. In particular, Krishnamurthy 770's overall operating environment 100 at best functions not as a computer cluster, but as a *single* computation node.

- Krishnamurthy 770 and Krishnamurthy 127 utilize *data parallel* processing, in contrast with the *task parallel* processing achieved by Applicant's process.

- Neither reference discloses an assignment of accelerators to computation nodes.

  - Krishnamurthy 770 utilizes a connection via network 108 between the server system 102 and the accelerators 104, but this does not require a resource manager, nor does it involve the implementation of an assignment metric.

  - The computer system described in Krishnamurthy 127 allows for accelerators to be placed closer to a particular processor to improve performance. As a result, other accelerators that are not optimally placed close to a particular processor *still perform their required task*. Thus, a physical placement of an accelerator described in Krishnamurthy 127 cannot be equated with an *assignment* of an accelerator to a particular processor.

- Krishnamurthy 127 requires that any adjustment of accelerators to other tiers occur after a data processing operation has been completed that allowed the performance of the accelerator to be measured in the first place. Therefore, the computer system described in Krishnamurthy 127 cannot be said to adjust an assignment metric once processing has been started.

Ex. D, at ParTec 295

38

# Patentee Amends Body of Claim to Overcome Prior Art

Therefore, one or ordinary skill in the art would understand that both Krishnamurthy 770 and Krishnamurthy 127 utilize *data parallel* processing, in contrast with the *task parallel* processing achieved by Applicant's computer-cluster arrangement. To be sure, Applicant's claims explicitly specify that the "*at least two of the computation nodes*" and "*at least one computation node*" are arranged to compute parts of "*a computation task*." Thus, Applicant does not agree with the characterization of these references being directed to cluster computing as described in the Office Action, but nonetheless has further amended the independent claims 1 and 14 to clarify the interaction between Applicant's computation nodes and boosters.

In particular, Applicant has amended independent claim 1 (and similarly independent claim 14) to recite that the at least one booster is "*arranged to compute at least a second, specific part of said computation task after having been assigned to at least one computation node and under control of that at least one computation node,*" and that "*the plurality of computation nodes and the plurality of boosters are configured as part of a computer cluster arrangement such that during processing of said computation task, assignments of communication nodes and boosters can be provided such that at least (i) at least one of the plurality of computation nodes is arranged to communicate with at least one of the plurality of boosters, (ii) at least one of the plurality of boosters is shareable by more than one of the plurality of computation nodes, and (iii) each of the boosters is assignable to each of the computation nodes.*" Neither Krishnamurthy 770 nor Krishnamurthy 127, alone or any combination thereof, discloses these features.

Ex. D, at ParTec 310-311

# Patentee Relies on Body of Claim

To be sure, even assuming that Krishnamurthy 770's processors 114 may be considered individual computation nodes, with which Applicant does not agree, Krishnamurthy 770 still fails to assign an accelerator 104, or individual processors thereof, to individual computation nodes (i.e., to the processors 114). Instead, Krishnamurthy 770's workload manager 118 sends "*computer kernels* to the accelerators 104" (Krishnamurthy 770, para. [0035], emphasis added), while a workload mobility manager 134 manages the workload of the accelerators, which are dependent on other workloads being grouped together in a "workload cluster." See, e.g., Krishnamurthy 770, paras. [0042] and [0047]. In other words, there is no *interaction* between Krishnamurthy 770's "computation nodes" and "accelerators," as workload managers handle any connections via network 108. As a result, Krishnamurthy 770 fails to disclose (1) at least one booster that is "*arranged to compute at least a second, specific part of said computation task after having been assigned to at least one computation node and **under control of that at least one computation node**,*" and (2) "*at least one of the plurality of computation nodes* [being] ***arranged to communicate*** *with at least one of the plurality of boosters*," as recited in independent claims 1 and 14 as amended.

Ex. D, at ParTec 311-312

# Pantentee Relies on Limitations to Distinguish

However, Krishnamurthy 127 is likewise not directed to a computer cluster arrangement, nor does Krishnamurthy 127 disclose such features. Specifically, Krishnamurthy 127 does not disclose an assignment of an accelerator or group of accelerators to a particular processor, and thus also fails to disclose a resource manager that assigns accelerators to a computation node. Instead, Krishnamurthy 127 explains that an "[i]nitial attachment of the particular accelerator in a hierarchy tier within relatively close proximity to the components/processors associated with video processing may be prudent." Krishnamurthy 127, para. [0031].

Ex. D, at ParTec 312

# Timeline

**1/11/2017**
Office action rejecting claims

**6/28/2017**
Interview with Examiner

**7/6/2017**
Amendment to Address Office Action

**4/20/2018**
Second Interview with Examiner

**6/22/2018**
 Amendment to Address Office Action

# Preamble Not Used to Distinguish

**April 20, 2018 Interview with Examiner**

**Agenda for Interview – 13/861,429**

1. (Previously Presented) A computer cluster-booster arrangement for processing a computation task, comprising:

a plurality of computation nodes, each of which interfaces with a communication infrastructure, at least two of the computation nodes being arranged to **jointly compute** at least a first part of said computation task;

- The prior art does not teach or suggest that the host systems (or comparable nodes) jointly compute the "same part" of a computation task

a plurality of boosters, at least one booster of the plurality of boosters being arranged to compute at least a **second, specific part** of said computation task after having been assigned to at least one computation node and under control of that at least one computation node, the at least one booster interfacing with the communication infrastructure; and

- The prior art does not teach or suggest that an accelerator/booster computes a second part of "the same computation task"

a resource manager being arranged to perform the assignment of the at least one booster to the at least one computation node in accordance with an assignment metric for computation of said second part of said computation task,

- In Dillenberger, an accelerator is assigned to a host "if a host is running a high priority job that is not meeting its performance goal" ([0015]). In contrast, the resource manager of claim 1 assigns a booster to a node based on the "assignment metric" of computation of a second part of a task. In other words, Dillenberger merely uses its accelerators for "overflow" processing.

wherein the plurality of computation nodes and the plurality of boosters are configured as part of a computer cluster arrangement such that during processing of said computation task, assignments of communication nodes and boosters can be provided such that at least (i) at least one of the plurality of computation nodes is arranged to communicate with at least one of the plurality of boosters,

- In Dillenberger, the assignment manager 130 facilitates communication with the hosts and the accelerators (i.e., the hosts and the accelerators do not communicate)

(ii) at least one of the plurality of boosters is **shareable by more than one** of the plurality of computation nodes, and (iii) each of the boosters is assignable to each of the computation nodes,

- The accelerators of Dillenberger are not sharable by "more than one" (i.e., at least two) hosts. Instead, an accelerator is assigned to a single host (and a host can have assigned one or more accelerators) (see FIGs. 2 and 3 of Dillenberger)

wherein said resource manager is arranged to perform the assignment by using a predetermined assignment metric at start of processing of said computation task **and to update the assignment metric during said processing** by (i) initializing the assignment at the start of processing by using the predetermined assignment metric, (ii) altering the assignment metric to an altered assignment metric during processing of the computation task, and (iii) performing the assignment by using the altered assignment metric, and

- Dillenberger does not teach or suggest that an assignment metric is updated during a processing. Instead, Dillenberger discloses initial assignment configuration data 140 that is used to initially assign accelerators to hosts (see paragraph [0019]). However, this initial assignment configuration data is "not" accessed, let alone updated, during processing of jobs/workloads. Instead, a job monitor 132 monitors jobs to ensure that service classes are satisfying their goals (see [0022])

wherein said assignment metric is specified as a function of at least one of a group of assignment parameters to facilitate an assignment of particular boosters to particular ones of the plurality of computation nodes.

Ex. D, ParTec_472-73

43

# Elements in Claim Body Used to Distinguish



'156 Patent

1. A computer cluster-booster system for processing a computation task, comprising:

a plurality of hardware computation nodes, each of which interfaces with a communication infrastructure, at least two of the hardware computation nodes being arranged to jointly compute at least a first part of said computation task;

a plurality of hardware boosters, each hardware booster having a compute capacity, at least one hardware booster of the plurality of hardware boosters being arranged to compute at least a second, specific part of said computation task after having been assigned to at least one hardware computation node and under control of that at least one hardware computation node, the at least one hardware booster interfacing with the communication infrastructure; and

a resource manager being arranged to assign the at least one hardware booster to the at least one hardware computation node, including:

at a start of processing of said computation task, establishing an initial assignment by using a predetermined assignment metric specified as a function of at least one of a group of assignment parameters, and during said processing of said computation task: (i) updating the predetermined assignment metric, and (ii) establishing a dynamic assignment by using the predetermined assignment metric that was updated, and

wherein the plurality of hardware computation nodes and the plurality of hardware boosters are configured such that during processing of said computation task, assignments of hardware computation nodes and hardware boosters can be provided such that at least (i) at least one of the plurality of hardware computation nodes is arranged to communicate with at least one of the plurality of hardware boosters, (ii) at least one of the plurality of hardware boosters is assigned to and shared by more than one of the plurality of hardware computation nodes such that the compute capacity of the at least one of the plurality of hardware boosters is shared between the more than one of the plurality of hardware computation nodes, and (iii) each of the hardware boosters is assignable to each of the hardware computation nodes.

44

# No Clear Reliance on Preamble to Distinguish

# U.S. Patent No. 11,537,442

| Claim Term | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| **"First computing iteration" / "further computing iteration"**<br><br>**('442 Patent: Claims 1, 3, 7, 9)** | Plain and ordinary meaning | "an initial execution of the plurality of sub-tasks" / "a repeated execution of the plurality of sub-tasks" |

# The Parties' Lone Dispute

| Claim Term | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| **"First computing iteration" / "further computing iteration"**<br><br>**('442 Patent: Claims 1, 3, 7, 9)** | Plain and ordinary meaning | **a first**<br>"~~an initial~~ execution of the plurality of sub-tasks" / "a **repeated** execution of the plurality of sub-tasks" |

> [6] ParTec also takes issue with Microsoft's use of the term "initial" instead of "first," (Br. at 24-25) but that concern is misplaced. Microsoft did not change the meaning of the term "first" or add any new limitations—"first" and "initial" are synonyms. Indeed, Microsoft's proposal used "initial" solely to indicate the temporal sequence between the first and subsequent iterations—a sequence that ParTec does not dispute. Accordingly, if it would resolve ParTec's concerns, Microsoft would not object to revising its proposed construction of "first computing iteration" to read "a *first* execution of the plurality of sub-tasks."

Microsoft's Responsive Claim Construction Brief at 25 n.6

# "Iteration" is Descriptive of the Other Claim Elements



'442 Patent, Claim 1

1. A method of operating a heterogeneous computing system comprising a plurality of computation nodes and a plurality of booster nodes, at least one of the plurality of computation nodes and a plurality of booster nodes being arranged to compute a computation task, the computation task comprising a plurality of sub-tasks, the method comprising:

in a first computing iteration, assigning and processing the plurality of sub-tasks by at least a portion of the plurality of computation nodes and at least a portion of the plurality of booster nodes in a first distribution; and generating, using information relating to the processing of the plurality of sub-tasks by at least the portion of the plurality of computation nodes and at least the portion of the plurality of booster nodes, a further distribution of the plurality of sub-tasks between the plurality of computation nodes and the plurality of booster nodes for processing thereby in a further computing iteration.

# Microsoft's Arguments are Directed to a Separate Term of the '442: "The Plurality of Sub-Task"



Microsoft's Responsive Claim Construction Brief

in a <u>first computing iteration</u>, assigning and processing <span style="border:1px solid red">the</span> <u>plurality of sub-tasks</u> by at least a portion of the plurality of computation nodes and at least a portion of the plurality of booster nodes in a first distribution; and generating, using information relating to the processing of the plurality of sub-tasks by at least the portion of the plurality of computation nodes and at least the portion of the plurality of booster nodes, a further distribution of <span style="border:1px solid red">the</span> plurality of sub-tasks between the plurality of computation nodes and the plurality of booster nodes for processing thereby in a <u>further computing iteration</u>.

49

# Microsoft Is Wrong that the Same Sub-Tasks Must be Repeated: Claim Language



'442 Patent, Claim 1

1. A method of operating a heterogeneous computing system comprising a plurality of computation nodes and a plurality of booster nodes, at least one of the plurality of computation nodes and a plurality of booster nodes being arranged to compute a computation task, the computation task comprising a **plurality of sub-tasks**, the method comprising:

in a first computing iteration, assigning and processing the plurality of sub-tasks by at least a portion of the plurality of computation nodes and at least a portion of the plurality of booster nodes in a first distribution; and generating, using information relating to the processing of the plurality of sub-tasks by at least the portion of the plurality of computation nodes and at least the portion of the plurality of booster nodes, a further distribution of the plurality of sub-tasks between the plurality of computation nodes and the plurality of booster nodes for processing thereby in a further computing iteration.

# Microsoft Is Wrong that the Same Sub-Tasks Must be Repeated: Further Claim Language



6. The method according to claim 1, wherein the first distribution is determined based on a rating provided in source code for each sub-task in the plurality of sub-tasks.

7. The method according to claim 1, wherein the information is used to provide a grouping of sub-tasks in at least one of the first computing iteration and the further computing iteration.

'442 Patent

# Microsoft Is Wrong that the Same Sub-Tasks Must be Repeated: the Specification



> A job to be computed by the system may **comprise a number of tasks** some of which or all may be repeated a number of times during the execution of the job. For

'442 Patent, 3:44-46

'442 Patent

# The Specification & File History Confirm That Sub-Tasks Need Not Be the Same For Each Iteration

As well as adjusting the distribution of sub-tasks between computation nodes and boosters based on a scalability of the sub-task, **the distribution may also be influenced by information learned about the processing of the sub-task and any need to call further sub-tasks during the processing.** If a first

'442 Patent, 4:48-52



'442 Patent

**sub-tasks**, including adjusting the distribution of sub-tasks between computation nodes and boosters based on a scalability of the sub-task. **The distribution may also be influenced by information learned about the processing of the sub-task and any need to call further sub-tasks during the processing (see, e.g., paragraph [0024] of the instant application).** While amended claims 1 and 9 relate to analyzing the plurality of sub-tasks and obtaining

File History, Ex. F at 1211

53

# U.S. Patent No. 11,934,883

| Claim Term | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| **"Outsource the [second] part of the computation task to the assigned selected [hardware] booster under control of the first [hardware] computation node"**<br><br>**('883 Patent: Claims 1, 13)** | Plain and ordinary meaning | "move the [second] part of the computation task from the first [hardware] computation node to the assigned booster, without implicating the resource manager" |

# Two Contested Issues

| Claim Term | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| **"Outsource the [second] part of the computation task to the assigned selected [hardware] booster under control of the first [hardware] computation node"**<br><br>**('883 Patent: Claims 1, 13)** | Plain and ordinary meaning | **(1)** "**move** the [second] part of the computation task from the first [hardware] computation node to the assigned booster, **(2) without implicating the resource manager**" |

# The Specification Uses "Outsource"



'883 Patent

power. Hence, problems can be **outsourced** from one of the computation nodes CN to the boosters B, be computed by the booster and the result may be delivered back to the computation node. The assignment of boosters ESB to

8:40-43

# No Reason to Replace "Outsource" with "Move"



"[I]t is **not helpful to simply substitute** (without specification support) **one word for another word**, particularly when the substitution is no more helpful than that of the term's ordinary meaning."

**Astute Tech., LLC v. Learners Digest Int'l LLC**, 2014 WL 1385191, at *21 (E.D. Tex. Apr. 2, 2014)



"move" **vs** "outsource"

57

# No Reason to Replace "Outsource" with "Move": Microsoft's Lone Support is the Prosecution History

Docket No.: 29959/51333B
(PATENT)

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Thomas Lippert

Application No.: 17/196,665          Confirmation No.: 8466

Filed: March 9, 2021                      Art Unit: 2441

For:   COMPUTER CLUSTER ARRANGEMENT FOR
        PROCESSING A COMPUTATION TASK AND
        METHOD FOR OPERATION THEREOF          Examiner: O. Duong

AMENDMENT IN RESPONSE TO FINAL OFFICE ACTION, ACCOMPANYING REQUEST

MS RCE
Commissioner
P.O. Box 1450
Alexandria, VA

Dear Sir:

In res

Listing

Remar

> In the second step, the first hardware computation node uses said assignment information to outsource a part of the computation task from the first hardware computation node to the assigned booster. The claim language clearly defines that the part of the computation task is moved from the first hardware computation node to the assigned booster ("the hardware computation node to output the part of the computation task to the assigned selected hardware booster" – emphasis added).

'883 File History at 0904

58

# No Reason to Replace "Outsource" with "Move": "Outsource" Was Not Used in the Claims at the Time

Docket No.: 29959/51333B
(PATENT)

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Thomas Lippert

Application No.: 17/196,665          Confirmation No.: 8466

Filed: March 9, 2021               Art Unit: 2441

For:  COMPUTER CLUSTER ARRANGEMENT FOR      Examiner: O. Duong
      PROCESSING A COMPUTATION TASK AND
      METHOD FOR OPERATION THEREOF

**AMENDMENT IN RESPONSE TO FINAL OFFICE ACTION, ACCOMPANYING REQUEST
FOR CONTINUED EXAMINATION**

MS RCE
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

**INTRODUCTORY COMMENTS**

In response to the Final Office Action dated May 4, 2022:

**Listing of the Claims** begins on page 2 of this paper.

**Remarks/Arguments** begin on page 5 of this paper.

---

In the second step, the first hardware computation node uses said assignment information to outsource a part of the computation task from the first hardware computation node to the assigned booster. The claim language clearly defines that the part of the computation task is moved **from** the first hardware computation node **to** the assigned booster ("the hardware computation node **to output** the part of the computation task to the assigned selected hardware booster" – emphasis added).

---

Application No. 17/196,665          Docket No.: 29959/51333B
Response dated August 24, 2022
Reply to Office Action of May 4, 2022

**LISTING OF THE CLAIMS**

1.    (Original)  A computer cluster system for processing a computation task, comprising:

---

wherein the resource manager is arranged to provide assignment information to the first hardware computation node after the assignment of the selected hardware booster so as to enable the first hardware computation node to output the part of the computation task to the assigned selected hardware booster under control of the first hardware computation node.



"outsource"

'883 File History at 0904, 0899

# No Reason to Replace "Outsource" with "Move": Microsoft Ignores Important Context

**Column 1 (page 6):**

wherein the accelerator architecture is optimized with respect to the service system for speed of execution of a particular class of computing functions. Due to the differences in hardware architecture, computer program instructions compiled for execution on the processors of a server system generally would not be expected to execute natively on the processor of an accelerator.

Server systems and accelerators support different instruction sets, as indicated by the example in paragraph [0025] of Krishnamurthy naming the IBM System z processor for host computers and the IBM POWER instruction set implemented by architectural registers of accelerators.

Bearing in mind the meaning of the technical terms "host computer/computer nodes" in combination with "accelerators/boosters" as described in Krishnamurthy, a person having ordinary skill in the art would not equate the accelerators 104 of Krishnamurthy with the hardware computation nodes of claims 1 and 14 or the server systems 102 of Krishnamurthy with the boosters of claims 1 and 14, as is asserted in the FOA. Instead, a person having ordinary skill in the art would equate accelerators with boosters and hardware computation nodes with server systems. Therefore, the FOA employs improper technical meanings of these claimed technical terms.

**Assignment**

Regarding the claimed features of "the resource manager being arranged to assign a selected hardware booster of the plurality of hardware boosters to a first hardware computation node of the plurality of hardware computation nodes for computation of a part of the computation task, and wherein the resource manager is arranged to provide assignment information to the first hardware computation node after the assignment of the selected hardware booster so as to enable the first hardware computation node to output the part of the computation task to the assigned selected hardware booster under control of the first hardware computation node," the FOA asserts a now-alleged disclosure in Krishnamurthy of said features. Applicant respectfully disagrees with this assertion.

The assignment and outsourcing/output of part of the computation task is a two-step procedure which is clearly defined in independent claims 1 and 14. First, the resource manager assigns a selected hardware booster to a first computation node. Accordingly, this assignment is an assignment of two entities within the system. Subsequently, the assignment information is provided to the first hardware combination node, i.e., to the first hardware computation node to which the booster is assigned.

In a second step, the first hardware computation node uses said assignment information to outsource a part of the computation task from the first hardware computation

6

**Column 2 (page 7):**

node to the second booster. The claim language clearly defines that the part of the computation task is moved from the first hardware computation node to the assigned booster ("the hardware computation node to output the part of the computation task to the assigned selected hardware booster" – emphasis added).

A further limitation is that the output/outsourcing is performed "under control of the first hardware computation node." Accordingly, after the assignment is performed by the resource manager, the first hardware computation node can make use of the assignment and outsource parts of the computation tasks to the assigned boosters (without further need to implicate the resource manager).

Indeed, Krishnamurthy fails to disclose an assignment of server system nodes to accelerators and, accordingly, also fails to disclose the two-step arrangement of outsourcing parts of computation tasks. Instead, Krishnamurthy (and particularly the newly cited paragraphs [0038]-[0040]) disclose an "assignment" of tasks to server/accelerator processors.

The process described in paragraph [0039] in Krishnamurthy is used when the accelerators cannot satisfy the SLA requirements. In this case, the workload manager schedules a portion of the accelerator workload to so-called surrogate processors. At best, this is an assignment of workload/tasks to surrogate processors/server processors and not an assignment of entities like server system processors to accelerators/accelerator processors. Accordingly, Krishnamurthy fails to disclose the assignment functionality as recited in claims 1 and 14.

With regard to the claimed feature "output the part of the computation task to the assigned selected hardware booster under control of the first hardware computation node," the FOA asserts, from the disclosure of paragraphs [0038] to [0040] of Krishnamurthy, that the workload manager 118 dynamically allocates/provides additional kernels 206, 208, 214, 216 to the server system 102, accelerators 104, or both so that additional accelerator workloads can be executed. Applicant respectfully disagrees with this assertion for multiple reasons.

First, the allocation of kernels cannot be considered to be equal to "provide assignment information to the first hardware computation node," as recited in claims 1 and 14. Assignment information is information about the assignment, i.e., the assignment of a booster to the computation node, so that the computation node is aware of which boosters are assigned. Instead, according to Krishnamurthy, kernels are sent, which are considered to be sub-tasks.

7

**Column 3 (page 8):**

Second, claims 1 and 14 require the first hardware computation node to which the assignment information is provided outputs a part of the computation task. In contrast, the server system and accelerators of Krishnamurthy which receive the kernels – which the FOA considers to be the assignment information - also receive the additional workload.

The output of the part of the computation task is not done under the control of the first hardware computation node which receives assignment information. Instead, according to Krishnamurthy, the workload manager dynamically allocates/provides additional kernels to the server systems/accelerators.

Accordingly, the system described in Krishnamurthy is completely different from the claimed features. One advantage of the present invention is that after a booster has been assigned to a computation node, the computation node can make use of the booster and outsource parts of the computation tasks to the booster under said assignment. Such an outsourcing can be done repeatedly under the assignment.

For all these reasons, Krisnamurth fails to disclose the claimed combination "the resource manager being arranged to assign a selected hardware booster of the plurality of hardware boosters to a first hardware computation node of the plurality of hardware computation nodes for computation of a part of the computation task," and "wherein the resource manager is arranged to provide assignment information to the first hardware computation node after the assignment of the selected hardware booster so as to enable the first hardware computation node to output the part of the computation task to the assigned selected hardware booster under control of the first hardware computation node," as recited in claims 1 and as similarly recited in claim 14. Therefore, Krishnamurthy fails to anticipate claims 1 and 14.

Accordingly, Applicant respectfully submits that the rejection of claims 1 and 14 under 35 U.S.C. § 102 is overcome and requests that the rejection be withdrawn. Further, claims 2-13 and 15 depend from either claim 1 or 14. Therefore, the rejection of these claims should be withdrawn for at least the reasons mentioned below.

8

# No Reason to Add "Without Implicating": Absent from the Claim Language

**'883 Patent**

1. A computer cluster system for processing a computation task, comprising:
   a plurality of hardware computation nodes, a plurality of hardware boosters, and a resource manager, the plurality of hardware computation nodes and the plurality of hardware boosters each interfacing a communication infrastructure;
   the resource manager being arranged to:
   assign a selected hardware booster of the plurality of hardware boosters to a first hardware computation node of the plurality of hardware computation nodes for computation of a part of the computation task,
   provide assignment information to the first hardware computation node after the assignment of the selected hardware booster so as to enable the first hardware computation node to outsource the part of the computation task to the assigned selected hardware booster under control of the first hardware computation node,

Claim 1

**No** "without implicating the resource manager" requirement.

13. A method for operating a computer cluster arrangement for processing a computation task, comprising:
   computing at least a first part of a computation task by at least two of a plurality of computation nodes, each computation node of the plurality of computation nodes interfacing a communication infrastructure;
   assigning a selected booster of a plurality of boosters to a first computation node of the plurality of computation nodes by a resource manager, for computation of a second part of said computation task, said assignment being accomplished as a function of a predetermined assignment metric wherein the resource manager provides assignment information to the first computation node after the assignment of the selected booster enabling the first computation node to outsource the second part of the computation task to the assigned selected booster under control of the first computation nodei

Claim 13

61

# No Reason to Add "Without Implicating": Microsoft's Construction Excludes Multiple Embodiments

task is performed. Hence, it is possible to select a specific booster B and based on the assignment being established in step 202 a booster B computes the at least second part of the computation task. This may be of advantage in case the at least second part of the computation task is forwarded to the resource manager RM, which assigns a booster B to the second part of the computation task. The resource manager RM can then transmit the second part of the computation task to the booster B, without the necessity that the computation node CN directly contacts the booster B.

'883 Patent at 11:16-19 & Fig. 5

FIG. 6 shows a block diagram of control flow of a computer cluster arrangement according to an aspect of the present invention. In the present embodiment a computation node CN receives a computation task and requests a booster B for outsourcing at least a part of the received computation task. Therefore, a resource manager RM is accessed, which forwards the part of the computation task to a selected booster B. The booster B computes the part of the compu-

'883 Patent at 11:37-42 & Fig. 6

200

201

202

CN     RM     B

Resource manager **is** implicated in the outsourcing.



'883 Patent

62

# No Reason to Add "Without Implicating": Microsoft's Sole Support is a Remark in the File History



'883 File History at 0904

# No Reason to Add "Without Implicating": The Remark Uses Permissive Language



'883 File History at 0904

# No Reason to Add "Without Implicating": The Prosecution History is Consistent with the Specification

task is performed. Hence, it is possible to select a specific booster B and based on the assignment being established in step **202** a booster B computes the at least second part of the computation task. This may be of advantage in case the at least second part of the computation task is forwarded to the resource manager RM, which assigns a booster B to the second part of the computation task. The resource manager RM can then transmit the second part of the computation task to the booster B, without the necessity that the computation node CN directly contacts the booster B.

FIG. **6** shows a block diagram of control flow of a computer cluster arrangement according to an aspect of the present invention. In the present embodiment a computation node CN receives a computation task and requests a booster B for outsourcing at least a part of the received computation task. Therefore, a resource manager RM is accessed, which forwards the part of the computation task to a selected booster B. The booster B computes the part of the compu-

'883 Patent



of the present invention. In the present embodiment the resource manager RM does not pass the at least one part of the computation task to the booster B, but the computation node CN requests an address or a further identification of a booster B, which is arranged to compute the specific at least one part of the computation task. The resource manager RM



Resource manager **is** implicated in the outsourcing.



'883 Patent at 11:16-19 & Fig. 5          '883 Patent at 11:37-42 & Fig. 6          '883 Patent at 11:60-65 & Fig. 8

# No Reason to Add "Without Implicating" Considering the Permissive Prosecution Language and the Teachings of the Specification



The "**statements Microsoft now plucks** from the prosecution history **do not clearly and unmistakably disavow** storage means that are not files" given "the specification discloses embodiments where the storage format is not a file."

*i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 843 (Fed. Cir. 2010) (alterations adopted and quotation marks omitted)

66

# No Reason to Add "Without Implicating": Context Is Again Important

node to the assigned booster. The claim language clearly defines that the part of the computation task is moved **from** the first hardware computation node **to** the assigned booster ("the hardware computation node **to** output the part of the computation task to the assigned selected hardware booster" – emphasis added).

A further limitation is that the output/outsourcing is performed "under control of the first hardware computation node." Accordingly, after the assignment is performed by the resource manager, the fist hardware computation node can make use of the assignment and outsource parts of the computation tasks to the assigned boosters (without further need to implicate the resource manager).

Indeed, Krishnamurthy fails to disclose an assignment of server systems and accelerators and, accordingly, also fails to disclose the two-step arrangement of outsourcing parts of computation tasks. Instead, Krishnamurthy (and particularly the newly cited paragraphs [0038]-[0040]) disclose an "assignment" of tasks to server/accelerator processors.

Second, claims 1 and 14 require that the first hardware computation node to which the assignment information is provided, itself outputs a part of the computation task. In contrast, the server system and accelerators of Krishnamurthy which receive the kernels – which the FOA considers to be the assignment information - also receive the additional workload.

Third, the output of the part of the computation task is not done under the control of the first hardware computation node, i.e., the hardware computation node which receives assignment information. Instead, according to Krishnamurthy, the workload manager dynamically allocates/provides additional kernels to the server systems/accelerators.

Accordingly, the system described in Krishnamurthy is completely different from the claimed features. One advantage of the present invention is that after a booster has been assigned to a computation node, the computation node can make use of the booster and outsource parts of the computation tasks to the booster under said assignment. Such an outsourcing can be done repeatedly under the assignment.

For at least these reasons, Krisnamurth fails to disclose the claimed combination "the

> Third, the output of the part of the computation task is not done under the control of the first hardware computation node, i.e., the hardware computation node which receives assignment information. Instead, according to Krishnamurthy, the workload manager dynamically allocates/provides additional kernels to the server systems/accelerators.

reasons.

First, the allocation of kernels cannot be considered to be equal to "provide assignment information to the first hardware computation node," as recited in claims 1 and 14. Assignment information is information about the assignment, i.e., the assignment of a booster to the computation node, so that the computation node is aware of which boosters are assigned. Instead, according to Krishnamurthy, kernels are sent, which are considered to be sub-tasks.

claims should be withdrawn for at least the reasons mentioned below.

7

8

'883 File History at 0904-05

67

# No Reason to Add "Without Implicating": Context Is Again Important

**1.** A computer cluster system for processing a computation task, comprising:

a plurality of hardware computation nodes, a plurality of hardware boosters, and a resource manager, the plurality of hardware computation nodes and the plurality of hardware boosters each interfacing a communication infrastructure;

the resource manager being arranged to:

assign a selected hardware booster of the plurality of hardware boosters to a first hardware computation node of the plurality of hardware computation nodes for computation of a part of the computation task,

provide assignment information to the first hardware computation node after the assignment of the selected hardware booster so as to ==enable the first hardware computation node to outsource the part of the computation task to the assigned selected hardware booster under control of the first hardware computation node,==

Claim 1

'883 Patent

**13.** A method for operating a computer cluster arrangement for processing a computation task, comprising:

computing at least a first part of a computation task by at least two of a plurality of computation nodes, each computation node of the plurality of computation nodes interfacing a communication infrastructure;

assigning a selected booster of a plurality of boosters to a first computation node of the plurality of computation nodes by a resource manager, for computation of a second part of said computation task, said assignment being accomplished as a function of a predetermined assignment metric wherein the resource manager provides assignment information to the first computation node after the assignment of the selected booster ==enabling the first computation node to outsource the second part of the computation task to the assigned selected booster under control of the first computation node==i

Claim 13

68

# Thank You

# Pantentee Relies on Limitations to Distinguish

Furthermore, Krishnamurthy 127 explains that accelerators may be profiled based upon their measured performance, to better match an accelerator to a physical slot of the computer system.  See, e.g., Krishnamurthy 127, para. [0033].  But in selecting the particular slot based upon profiled performance metrics, the system disclosed in Krishnamurthy 127 requires that any adjustment of accelerators to other tiers, or movement to another slot, be done *after* a particular data processing operation has occurred that allowed the accelerator to be measured in the first place.  In other words, the computer system described in Krishnamurthy 127 cannot be said to adjust an assignment metric *during* processing, and thus Krishnamurthy 127 fails to disclose *"altering the assignment metric to an altered assignment metric **during processing of the computation task**,"* and *"performing the assignment by using the altered assignment metric during processing of the computation task,"* as recited in independent claims 1 and 14 as amended.

Ex. D, at ParTec 312-313