**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| PARTEC AG and BF EXAQC AG, | |
| Plaintiffs, | Civil Action No. 2:24-cv-00433-RWS-RSP |
| v. | **JURY TRIAL DEMANDED** |
| MICROSOFT CORPORATION, | ████████████████████ |
| Defendant. | ███████████ |

**DEFENDANT MICROSOFT CORPORATION'S MOTION FOR EXTENSION OF
<u>DEADLINES AND CONTINUANCE OF TRIAL DATE</u>**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL BACKGROUND ..................................................................................1

  A.   Discovery Related To ParTec's Forthcoming Infringement Theories And The OpenAI Supercomputer ...................................................................2

  B.   Discovery From Los Alamos National Laboratory Relating To Prior Art ..............3

  C.   Discovery From IPCom and FIPA Relating To Microsoft's Licensing Defense ..................................................................................................4

  D.   Outstanding Depositions .................................................................................5

  E.   Discovery From Foreign Third Parties Under The Hague Convention ...................5

III.  LEGAL STANDARDS ..........................................................................................6

IV.   ARGUMENT ..........................................................................................................6

  A.   Microsoft Has Good Cause For A Continuance Because The Current Schedule Cannot Be Met Despite Microsoft's Diligence. .......................................6

  B.   The Outstanding Discovery Is Critically Important To Microsoft's Defenses .................................................................................................11

  C.   A Short Continuance Is Necessary To Prevent Prejudice And Will Not Unfairly Harm ParTec ..................................................................................14

V.    CONCLUSION ......................................................................................................15

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*AGIS Software Dev. LLC v. Samsung Elecs. Co.*,
No. 2:19-CV-00362-JRG, 2022 WL 1608045 (E.D. Tex. May 20, 2022) ...............................6

*American Video Graphics, L.P. v. Electronic Arts, Inc.*,
359 F. Supp. 2d 558, 560 (E.D. Tex. 2005) ..............................................................................7

*Barnes v. Road Carriers, Inc.*,
No. 4:23-CV-01012-SDJ-BD, 2025 WL 603011 (E.D. Tex. Feb. 24, 2025) ..........................6

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
No. 1917, 2015 WL 12947119 (N.D. Cal. Mar. 24, 2015) .....................................................11

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ...................................................................................................................6

*Cook v. Credit Sys. Int'l, Inc.*,
No. 4:19-CV-308-SDJ-KPJ, 2020 WL 3791504 (E.D. Tex. July 6, 2020) .............................6

*Dynapass IP Holdings LLC v. JPMorgan Chase & Co.*,
No. 2:22-CV-0212-JRG-RSP, 2024 WL 233223 (E.D. Tex. Jan. 22, 2024)...........................8

*First Christian Church (Disciples of Christ) of Tyler v. Church Mut. Ins. Co., S.I.*,
No. 6:23-CV-342-JDK, 2024 WL 5454582 (E.D. Tex. Aug. 27, 2024) ........................6, 7, 11

*Myers v. CitiMortgage, Inc.*,
557 F. App'x 296 (5th Cir. 2014) .............................................................................................6

*S&W Enters. L.L.C. v. SouthTrust Bank of Ala.*,
315 F.3d 533 (5th Cir. 2003) ....................................................................................................6

*S.E.C. v. Stanford Int'l Bank, Ltc.*,
776 F. Supp. 2d 323 (N.D. Tex. Apr. 6, 2011) ......................................................................11

*Sapp v. Mem'l Healthcare Sys.*,
406 Fed. App'x 866 (5th Cir. 2010) ..........................................................................................6

*Sec. & Exch. Comm'n v. Waldman*,
No. 17-CV-2088-RMB, 2018 WL 11221233 (S.D.N.Y. Sept. 12, 2018) ..............................11

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
759 F.3d 1307 (Fed. Cir. 2014)...............................................................................................15

**RULES**

Fed. R. Civ. P. 16(b)(4)......................................................................................................6

Fed. R. Civ. P. 30(b)(6).............................................................................................. *passim*

**TABLE OF EXHIBITS**

Exhibits cited "Ex." refer to the exhibits attached to the Declaration of Caitrianne Feddeler, filed contemporaneously.

| Exhibit | Description |
|---------|-------------|
| A | Microsoft's Subpoena for Deposition Testimony and Production of Documents to Los Alamos National Laboratory ("LANL"), issued October 15, 2024 |
| B | Microsoft's Subpoena for Deposition Testimony and Production of Documents to Triad National Security, LLC ("Triad"), issued November 13, 2024 |
| C | Excerpts of email thread between counsel for LANL/Triad and Microsoft, dated between December 10, 2024 and December 11, 2025 |
| D | Email thread between counsel for Microsoft and counsel for ParTec, dated October 18, 2025 between and December 9, 2025 |
| E | Email from counsel for ParTec to counsel for Microsoft, dated December 3, 2025 |
| F | Letter from counsel for Microsoft to counsel for ParTec, dated July 2, 2025 |

**TABLE OF ABBREVIATIONS**

| Abbreviation | Description |
|--------------|-------------|
| ParTec | Plaintiffs ParTec AG and exaQC AG, collectively. |
| Microsoft | Defendant Microsoft Corporation. |
| FIPA | FIPA Frohwitter Intellectual Property AG. |
| IPCom | IPCom GmbH & Co. KG. |

## I.    INTRODUCTION

Microsoft respectfully moves to continue the trial date and to extend all remaining deadlines—including the fact discovery cutoff, expert disclosure deadlines, dispositive motion deadlines, and the trial date—by at least two months.[1] Despite Microsoft's diligence, the parties cannot reasonably complete the substantial outstanding discovery in the remaining time for three independent yet additive reasons: a) ParTec's forthcoming supplemental infringement contentions introducing new theories regarding the OpenAI Supercomputer, b) the need to obtain critical third-party and licensing discovery, which is currently impeded in part due to ParTec's refusal to enter into a supplemental Protective Order to protect ███████████████ surrounding Los Alamos National Laboratory; and c) the large number (over 20) of remaining individual and Rule 30(b)(6) depositions, including foreign depositions subject to the Hague Convention and depositions subject to the pending Motion for Alternative Service (Dkt. No. 126).

This discovery is essential to the parties' infringement, invalidity, inventorship, licensing, and damages analyses, and proceeding without it would materially prejudice Microsoft's ability to present its defenses. A short extension will not unfairly prejudice ParTec and will allow both sides to complete discovery in an orderly manner and ensure that expert reports, dispositive motions, and trial proceed on a complete and reliable evidentiary record.

## II.    FACTUAL BACKGROUND

ParTec filed this action on June 21, 2024, accusing Microsoft's Azure AI infrastructure of infringing three patents. Since then, the parties have engaged in substantial fact discovery,

---

[1] The precise amount of time necessary to complete discovery will depend on the pace at which several outstanding issues are resolved—notably third-party discovery involving OpenAI, LANL, and FIPA/IPCom. Microsoft also notes that its counsel has previously-scheduled obligations in July, namely a two-week arbitration hearing, and therefore separately requests that the trial date be reset to August or later to accommodate those unavoidable scheduling constraints. *See Groq, Inc. v. Positron AI, Inc., et al.* (JAMS Ref # 5110000702).

including document production, ESI discovery, and third-party discovery efforts, including numerous Letters Rogatory under the Hague Convention. Fact discovery is currently scheduled to close on January 26, 2026, with opening expert reports due February 2, 2026. With a little over a month remaining in fact discovery, significant and essential discovery remains outstanding, including discovery relating to ParTec's infringement allegations, third party prior art, Microsoft's licensing defense, foreign discovery, and the parties' numerous unscheduled depositions.

A.   **Discovery Related To ParTec's Forthcoming Infringement Theories And The OpenAI Supercomputer**

On September 4, 2024, ParTec served its initial infringement contentions alleging that Microsoft's Azure AI infrastructure infringed the asserted patents. These contentions did not include a separate theory directed to the OpenAI Supercomputer and did not disclose theories for key claim elements relating to dynamic assignment. *See* Dkt. No. 88 at 3-7. Microsoft raised these deficiencies repeatedly, but ParTec declined to supplement (*see id.* at 2-3; Feddeler Decl. ¶ 7):

- On July 2, 2025, Microsoft sent ParTec a letter detailing these deficiencies;

- Throughout July 2025, the parties corresponded via email regarding these deficiencies;

- On August 15, 2025, the parties held a conference with lead and local counsel;

- On September 11, 2025, the parties held a second conference with lead and local counsel;

- On September 24, 2025, third-party OpenAI objected to the production of OpenAI Supercomputer documents.

On September 25, 2025, after reaching an impasse, Microsoft moved to compel supplemental infringement contentions requiring ParTec to (1) provide a separate chart and complete theory for the OpenAI Supercomputer and (2) disclose its theories for the dynamic-assignment elements. Dkt. No. 88. On October 7, 2025, ParTec filed its own motion to compel

Microsoft to produce confidential OpenAI documents in Microsoft's possession. Dkt. No. 97. OpenAI objected to any production absent an articulated infringement theory addressing the OpenAI Supercomputer. *See* Dkt. No. 88, Ex. C.

On December 3, 2025, ParTec agreed to withdraw its opposition to Microsoft's motion and to provide amended contentions by December 23, 2025. Dkt. No. 129. On December 12, 2025, the Court granted Microsoft's motion and ordered ParTec to serve amended contentions—including, for the first time, a separate, cognizable theory directed to the OpenAI Supercomputer—by December 23. Dkt. No. 131. The Court also directed the parties to submit a joint status report by January 9, 2026 regarding ParTec's motion to compel. *Id.* Under that Order, Microsoft will receive ParTec's standalone theory one day before Christmas Eve and only one month before the close of fact discovery (with much of that time period unavailable for depositions given the holidays).

**B.    Discovery From Los Alamos National Laboratory Relating To Prior Art**

On October 15, 2024 and November 13, 2024, Microsoft served subpoenas on Los Alamos National Laboratory and Triad National Security, LLC (collectively "LANL") seeking evidence concerning the Roadrunner supercomputer, a potentially anticipatory prior art system. Exs. A-B.

Soon after LANL accepted Microsoft's subpoena service, Microsoft provided assistance to LANL on its document collection. *See* Ex. C at 15, 24-25, 29. Between December 2024 and May 2025, LANL identified and collected responsive documents and began its ███████████████ ███████████. During this process, LANL informed Microsoft that the ███████████████ ███████████ was expected to be completed in November. *Id.* at 16.

On October 10 and 15, 2025, LANL informed Microsoft that ███████████████ ██████████████████████████████████████████████████:

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████



*Id.* at 14.

*Id.* at 13. By November 2025, LANL's ████████████████████████ was near completion for production in December, but LANL requested the entry of a supplemental protective order ████████████████████████████████████████████. *Id.* at 4-7. LANL's forthcoming production contains a substantial amount of ████████ ████████████████████████. *Id.* at 1. Despite LANL's request for the entry of a protective order █████████████████████████, ParTec opposed the requested additional ████████████████ (Ex. D), and the issue will be pending before the Court. LANL will not complete its production without entry of the supplemental protective order.

### C.    Discovery From IPCom and FIPA Relating To Microsoft's Licensing Defense

On September 26, 2025, Microsoft amended its answer to assert an express and implied license defense based on an April 9, 2018 license agreement between Microsoft and FIPA and IPCom, companies that share a common CEO and owner, Bernhard Frohwitter, as ParTec. Dkt. No. 89. In September and October, Microsoft diligently sought third-party discovery from FIPA and IPCom concerning the scope and operation of the agreement, the relationships among the entities, and related licensing practices. *See, e.g.*, Dkt. No. 116 at 3-4, Exs. 2-7. However, FIPA, IPCom, and their U.S. counsel refused service of Microsoft's subpoenas. *See id*.

Microsoft filed an unopposed motion for alternative service on November 3, 2025 (Dkt. No. 116) and—following the Court's Order (Dkt. No. 119)—submitted a renewed motion on December 1, 2025 providing additional information regarding FIPA and IPCom's sufficient minimum contacts. Dkt. No. 126. Although ParTec did not oppose Microsoft's initial motion seeking the same relief, it now opposes the renewed motion, citing the three weeks between the Court's order and Microsoft's renewed filing and asserting that "fact discovery closes next month." Dkt. No. 130 at 6. The critical third-party licensing discovery from FIPA and IPCom therefore remains outstanding pending the Court's ruling on Microsoft's renewed motion.

### D.       Outstanding Depositions

A substantial number of party depositions remain outstanding. ParTec has noticed the depositions of twelve current or former Microsoft employees. Feddeler Decl. ¶ 4. Two of those depositions have been scheduled to occur in January. *Id*. The remaining ten have not yet been scheduled. Microsoft has likewise noticed the depositions of seven ParTec witnesses. *Id.* ¶ 5. None of those depositions have been scheduled. *Id.* Further, both parties have also served Rule 30(b)(6) deposition notices identifying numerous topics. *Id.* ¶ 3. No corporate designees have been identified or scheduled for examination. *Id.*

### E.       Discovery From Foreign Third Parties Under The Hague Convention

Throughout discovery, Microsoft has requested that the Court issue Rogatory Letters seeking documentary and testimonial evidence relevant to key issues—including inventorship, conception, and implementation of the systems ParTec alleges practice the claimed invention. *See* Dkt. Nos. 39, 44, 51, 56. While Microsoft has completed six of the requested hearings under the Court's issued Rogatory Letters, one hearing, requested for Leibniz Supercomputing Centre, scheduled for January 21, remains outstanding and two other hearings, requested for Jülich Supercomputing and LuxProvide SA, remain to be scheduled. Feddeler Decl. ¶ 6.

III.    **LEGAL STANDARDS**

Under Federal Rule of Civil Procedure 16(b)(4), a "scheduling order may be modified for good cause with the court's consent." *AGIS Software Dev. LLC v. Samsung Elecs. Co.*, No. 2:19-CV-00362-JRG, 2022 WL 1608045, at *2 (E.D. Tex. May 20, 2022). To determine good cause to modify scheduling orders, Fifth Circuit courts consider four factors: "(1) the party's explanation; (2) the importance of the requested relief; (3) the potential prejudice in granting the relief; and (4) the availability of a continuance to cure such prejudice." *Cook v. Credit Sys. Int'l, Inc.*, No. 4:19-CV-308-SDJ-KPJ, 2020 WL 3791504, at *2 (E.D. Tex. July 6, 2020) (citing *S&W Enters. L.L.C. v. SouthTrust Bank of Ala.*, 315 F.3d 533, 536 (5th Cir. 2003)). "No single factor is dispositive, nor must all the factors be present." *Sapp v. Mem'l Healthcare Sys.*, 406 Fed. App'x 866, 869 (5th Cir. 2010) (citing *S&W Enters.*, 315 F.3d at 536-37).

A court has broad discretion in deciding to a motion for continuance "pursuant to its inherent power to control its own docket." *AGIS Software*, 2022 WL 1608045, at *2 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)); *see also Myers v. CitiMortgage, Inc.*, 557 F. App'x 296, 298 (5th Cir. 2014). "When making scheduling decisions, the district court must consider not only the facts of the particular case but also all of the demands on counsel's time and the court's [time]." *First Christian Church (Disciples of Christ) of Tyler v. Church Mut. Ins. Co., S.I.*, No. 6:23-CV-342-JDK, 2024 WL 5454582, at *1 (E.D. Tex. Aug. 27, 2024).

IV.    **ARGUMENT**

    A.    **Microsoft Has Good Cause For A Continuance Because The Current Schedule Cannot Be Met Despite Microsoft's Diligence.**

Good cause exists to amend the scheduling order where a party, despite diligent efforts, cannot reasonably meet the existing case deadlines. *See Barnes v. Road Carriers, Inc.*, No. 4:23-CV-01012-SDJ-BD, 2025 WL 603011, at *1-2 (E.D. Tex. Feb. 24, 2025) (granting an extension

when the parties were unable to meet discovery deadlines "due to scheduling conflicts and other delays, including third party discovery, outside of [their] control."). Here, several developments occurring late in the discovery period make it impossible for Microsoft to complete essential discovery before the current January 26, 2026 fact-discovery cutoff.

*First*, ParTec's forthcoming supplemental infringement contentions—due December 23, 2025—will, for the first time, provide a separate infringement theory directed to the OpenAI Supercomputer. Under the Court's standard patent procedures, infringement contentions are served early and are followed by many months of fact discovery so that the parties may develop their defenses and prepare expert reports based on complete and stable disclosures. *See Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005) ("[T]he Patent Rules are designed to streamline the discovery process . . . [and] demonstrate high expectations as to plaintiffs' preparedness before bringing suit, requiring plaintiffs to disclose their preliminary infringement contentions before discovery has even begun."). Here, however, ParTec will be serving materially expanded contentions more than fifteen months after its initial contentions were due and only one month before the close of fact discovery. Further, ParTec unilaterally elected December 23—the day just before Christmas Eve—to supplement its contentions despite Microsoft's request that ParTec supplement its deficient infringement contentions more than five months ago. Exs. E-F. These supplemental contentions will not only introduce a new OpenAI theory but will supplement ParTec's theories for the critical dynamic-assignment limitations. Because these theories were not timely disclosed, Microsoft has not yet had the opportunity to evaluate, prepare responsive discovery, or pursue necessary third-party information.

The Court has also directed the parties to submit a status report on January 9, 2025 regarding ParTec's motion to compel OpenAI-related materials in Microsoft's possession. Dkt.

No. 131. Microsoft cannot address that issue until it receives ParTec's supplemental contentions to understand which OpenAI materials may now be implicated. OpenAI is currently objecting to Microsoft's production absent an articulated infringement theory (Dkt. No. 88, Ex. C) and will also need time to review the new allegations and assess confidentiality concerns—steps by a third party outside of Microsoft's control that may delay production.

Microsoft will also require sufficient time to analyze ParTec's new theories and prepare its responsive discovery, including supplemental non-infringement responses, preparing supplemental invalidity contentions, and identifying any additional information that must be obtained. And because OpenAI—not Microsoft—operates the OpenAI Supercomputer and maintains relevant information, Microsoft (and potentially ParTec) will need to subpoena OpenAI seeking additional documents and testimony once the scope of ParTec's theory is known.

Given the timing of ParTec's contentions, the Court-ordered status report, OpenAI's anticipated review, and the third-party discovery that must follow, these steps cannot reasonably be completed within the remaining month before the current fact-discovery deadline. *See, e.g.*, *Dynapass IP Holdings LLC v. JPMorgan Chase & Co.*, No. 2:22-CV-0212-JRG-RSP, 2024 WL 233223, at *2 (E.D. Tex. Jan. 22, 2024) (granting three-month continuance to cure prejudice caused by amended infringement contentions).

***Second***, Microsoft has been diligently pursuing prior-art discovery from LANL since serving subpoenas on October 15, 2024 and November 13, 2024. From the outset, Microsoft worked cooperatively with LANL to facilitate its collection and review efforts—including by proposing search terms, identifying potential custodians, and ███████████████████████ ████████████████████████████████████ Ex. C at 15, 24-25, 29. Even with Microsoft's assistance, however, LANL was required to perform ████████████████

██████████ █

███████████████████████████"—and did not complete such review before

November 2025. *Id.* at 18. As LANL explained, ████████████████████████

██████████████████████ *See Id.* at 16 ██████

████████████████████████████████████

███████████

Despite the diligence of both Microsoft and LANL, circumstances outside their control

have prevented LANL from proceeding with its planned production. For instance, ███████

████████████████████████████████████

*Id.* at 13-14. Further, when LANL advised the parties that █████████████████████

██████████ ██ ████████ ██████ ███ ████ █████ █████

████████████████████████ ParTec flatly refused to

accommodate LANL's request. Ex. D. As a result, LANL's document production remains

outstanding ████████████████████████████████

██████████████████, pending the Court's resolution of the protective-order

issue. Ex. C at 1. As LANL cannot produce these critical documents, Microsoft cannot conduct

any follow-up discovery, including deposition of LANL's representative knowledgeable about the

Roadrunner prior-art system. ██████████████████████

governing this material and the outstanding protective order dispute, it is not feasible for this

discovery to be completed within the current fact-discovery schedule.

**Third**, Microsoft has been diligently pursuing third-party licensing discovery from FIPA

and IPCom—entities that share a common CEO and owner with ParTec—since asserting its

license defense on September 26, 2025. *See* Dkt. No. 89 at 53-54. Microsoft promptly sought

discovery from these entities concerning the scope of the April 9, 2018 license agreement; the relationships among FIPA, IPCom, and ParTec; and other relevant information. *See* Dkt. No. 116 at 3-4, Exs. 2-7. After FIPA's and IPCom's U.S. counsel refused service of the subpoenas, Microsoft promptly moved for alternative service on November 3, 2025, and, following the Court's order, submitted a renewed motion on December 1, 2025, with additional analysis of their sufficient minimum contacts. Dkt. Nos. 116, 126. That motion remains pending. Until service is authorized, Microsoft cannot obtain the evidence necessary to evaluate the license agreement. *See* Dkt. No. 116 at 3-4. Given the time required to effect service, obtain responses, and conduct follow-up discovery, this licensing discovery cannot be completed within the current deadlines.

*Fourth*, numerous depositions remain outstanding and cannot realistically be completed in the time remaining, particularly in light of the newly arisen discovery issues relating to the OpenAI Supercomputer, Microsoft's license defense, and LANL. ParTec has noticed twelve current or former Microsoft employees; only two have been scheduled. Microsoft has likewise noticed seven ParTec witnesses, none of whom have been scheduled. Both parties have also served Rule 30(b)(6) notices covering numerous topics, and no corporate representatives have yet been designated or scheduled. The volume of new discovery required—including analysis of ParTec's forthcoming supplemental contentions, third-party discovery from OpenAI, license-related discovery from FIPA and IPCom, and ███████████ discovery from LANL—makes it impracticable for the parties to simultaneously prepare for and complete these depositions before the current fact-discovery cutoff. Coordinating and conducting these examinations will require substantial time and resources from witnesses and counsel, which the current schedule simply does not allow.

*Fifth*, despite Microsoft's diligence in pursuing foreign discovery—including by completing six deposition hearings to date in multiple foreign jurisdictions—several Rogatory

Letters remain outstanding and cannot be completed within the current schedule. Although one remaining deposition is set to occur in January, two additional depositions have not yet been scheduled by the foreign authorities. Feddeler Decl. ¶ 6. These outstanding requests concern core issues such as inventorship and invalidity. Hague procedures are inherently time-consuming and governed by processes outside the parties' control. When combined with the substantial new discovery issues discussed above, it is not feasible for the parties to complete this foreign discovery within the current deadline. *See, e.g., Sec. & Exch. Comm'n v. Waldman*, No. 17-CV-2088-RMB, 2018 WL 11221233, at *1 (S.D.N.Y. Sept. 12, 2018) (finding good cause to modify scheduling order to "permit the remaining foreign discovery" where Plaintiff "promptly requested and pursued foreign discovery"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 1917, 2015 WL 12947119, at *2 (N.D. Cal. Mar. 24, 2015); *S.E.C. v. Stanford Int'l Bank, Ltc.*, 776 F. Supp. 2d 323, 328 (N.D. Tex. 2011) ("Hague procedures are slow and cumbersome and usually take far longer than discovery procedures under the Federal Rules.") (citations omitted).

Finally, the remaining discovery period overlaps with the December–January holiday season, when witnesses and counsel availability is significantly reduced. This further limits the parties' ability to complete the outstanding discovery before January 26. Taken together, these circumstances show that Microsoft has acted diligently but cannot reasonably meet the current deadlines given the volume, timing, and nature of the remaining discovery.

### B.    The Outstanding Discovery Is Critically Important To Microsoft's Defenses

The discovery that remains outstanding is essential to Microsoft's ability to develop and present its defenses on infringement, invalidity, and licensing. Without this information, Microsoft cannot meaningfully prepare expert reports, dispositive motions, or its case for trial.

*First*, ParTec's forthcoming supplemental infringement contentions will, for the first time, purportedly articulate a separate theory directed to the OpenAI Supercomputer and supplemental

theories on the dynamic-assignment limitations. These theories will define the scope of the accused functionality and set out how ParTec contends the claim elements are met by both the OpenAI Supercomputer and the Singularity-managed Azure AI Infrastructure. Microsoft must review these theories to identify the necessary technical evidence, evaluate the alleged functionality, conduct corresponding third-party discovery, and prepare supplemental non-infringement responses and invalidity contentions. The supplemental contentions will also guide the issues to be addressed in depositions and expert reports. In short, these disclosures form the foundation of Microsoft's non-infringement and invalidity defenses.

*Second*, the discovery from LANL is critically important to Microsoft's invalidity defenses. LANL possesses documents concerning the Roadrunner prior-art system that go directly to its technical disclosure, functionality, and potential anticipatory nature. The system is particularly significant because it may anticipate all asserted claims, making LANL's materials essential to evaluating validity. Because these materials ████████████████████████████ ████████████████, they cannot be produced until the Court resolves LANL's request for a supplemental protective order. These materials are necessary to establish what the prior-art system was, its operation, and what was publicly known—issues central to invalidity. Once the protective order issue is resolved, Microsoft will need time to review LANL's production, conduct depositions, and incorporate the information into its expert analyses. Until then, Microsoft cannot fully develop its invalidity positions. Given the sensitivity of the materials and the procedural steps still pending, this critical discovery cannot be completed under the current schedule.

*Third*, discovery from FIPA and IPCom is critical to Microsoft's express and implied licensing defenses, which—if established—would dispose of ParTec's infringement claims in full. *See* Dkt. No. 89 at 53-54. Microsoft has diligently sought discovery necessary to evaluate this

defense, including evidence concerning the scope and interpretation of the April 9, 2018 license agreement; the relationships among FIPA, IPCom, and ParTec; and whether the asserted patents fall within the conveyed rights. *See* Dkt. No. 116 at 3-4, Exs. 2-7. However, because FIPA's and IPCom's U.S. counsel refused to accept service (*see id.*), Microsoft cannot obtain this discovery unless and until the Court authorizes alternative service. Without that discovery, Microsoft cannot fully evaluate or prove its defenses that may resolve all asserted claims. And once service is permitted, Microsoft will need time to obtain and review the materials, take depositions, and incorporate this evidence into its expert analyses and dispositive motions. This critical, potentially case-dispositive discovery cannot be completed under the current fact-discovery schedule.

*Fourth*, the outstanding depositions—including both individual and Rule 30(b)(6) witnesses—will address issues central to the case. ParTec has noticed the depositions of numerous Microsoft engineers and business personnel whose testimony will cover the design and operation of the accused Azure AI infrastructure, issues relating to the OpenAI Supercomputer once ParTec's new theories are disclosed, and damages topics such as revenues and use of the accused products. Likewise, Microsoft's depositions of ParTec witnesses are critical to Microsoft's defenses. Testimony from ParTec inventors and technical personnel will address the conception, development, and scope of the asserted patents and will provide evidence directly relevant to Microsoft's inventorship and invalidity defenses. In addition, the parties' Rule 30(b)(6) depositions will further address corporate and technical topics central to infringement, invalidity, licensing, and damages theories. Collectively, the testimony obtained in these depositions will form a substantial portion of the factual record that expert analyses, dispositive motions, and trial presentations will rely upon, underscoring the importance of this discovery.

*Fifth*, the outstanding Rogatory Letters concern issues that are central to Microsoft's inventorship and invalidity defenses and cannot be obtained through domestic discovery. Microsoft's Rogatory Letters seek evidence relating to the conception, development, and attribution of the asserted patents, as well as other information bearing directly on inventorship and the scope of the alleged inventions. Because foreign authorities must execute these requests, the resulting discovery is uniquely obtainable through Hague procedures and may provide evidence otherwise unavailable. This evidence will be important to Microsoft's technical and invalidity experts and may be critical to resolving inventorship and validity issues, making this foreign discovery a necessary component of Microsoft's defenses.

Together, this discovery forms the core evidentiary foundation of Microsoft's defenses. Without adequate time to obtain, analyze, and incorporate it, Microsoft cannot meaningfully prepare its expert reports, pursue summary judgment, or present a complete defense at trial.

### C.    A Short Continuance Is Necessary To Prevent Prejudice And Will Not Unfairly Harm ParTec

Absent a continuance, Microsoft will be significantly prejudiced because it will be unable to obtain and incorporate critical discovery necessary to develop its defenses. As described above, Microsoft cannot evaluate ParTec's forthcoming theories regarding the OpenAI Supercomputer, analyze the ▉▉▉▉▉▉▉▉▉▉ prior art materials from LANL, pursue potentially case-dispositive licensing discovery from FIPA and IPCom, or complete the numerous individual and Rule 30(b)(6) depositions without additional time. Proceeding to expert reports, dispositive motions, and trial preparation without this essential evidence would materially impair Microsoft's ability to present its non-infringement, invalidity, inventorship, and licensing defenses.

A brief extension will not unfairly prejudice ParTec. To the contrary, completing the outstanding discovery will clarify the issues for expert analysis, avoid disputes caused by

14

incomplete or premature disclosures, and ensure that both sides have a complete and accurate evidentiary record. ParTec will likewise benefit from the orderly completion of the numerous individual and Rule 30(b)(6) depositions and from the resolution of the OpenAI-related discovery issues which will be critical to ParTec's infringement theories. Moreover, ParTec will not be harmed by a short extension because it is not a direct competitor of Microsoft. *See VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014) (finding little prejudice when there was "no evidence in [the] record that the two [parties] ever competed for the same customer or contract."). Any brief delay in the trial date is fully compensable through monetary relief, including reasonable-royalty damages, should ParTec ultimately prevail. *See id*. ("A [schedule delay] will not diminish the monetary damages to which [the plaintiff] will be entitled if it succeeds in its infringement suit—it only delays realization of those damages"). Allowing the parties adequate time to complete these steps will provide a clearer framing of the issues and a more reliable presentation of the evidence at later stages of the case.

Moreover, any potential prejudice to ParTec is fully curable through the brief extension Microsoft seeks. Courts in this District routinely grant continuances where, as here, key third-party discovery remains outstanding, newly disclosed theories necessitate additional discovery, and deposition schedules cannot be reasonably completed within the current deadlines. A short extension will ensure that both parties can complete fact discovery, prepare expert reports based on a complete record, and present dispositive motions and trial evidence fairly and efficiently.

## V.     CONCLUSION

For the foregoing reasons, Microsoft respectfully requests that the Court grant its motion and extend the remaining case deadlines—including the fact-discovery cutoff, expert disclosure deadlines, dispositive-motion deadlines, and the trial date—by at least two months.

Dated: December 19, 2025

Respectfully submitted,

/s/ Melissa R. Smith

Melissa R. Smith
State Bar No. 24001351
melissa@gillamsmithlaw.com
GILLAM & SMITH LLP
303 South Washington Avenue
Marshall, TX 75670
Tel: (903) 934-8450
Fax: (903) 934-9257

Betty Chen
LEAD ATTORNEY
State Bar No. 24056720
bchen@desmaraisllp.com
Peter Magic
pmagic@desmaraisllp.com (*pro hac vice*)
DESMARAIS LLP
101 California Street
San Francisco, CA 94111
Tel: (415) 573-1900
Fax: (415) 573-1901

Jeffrey Seddon (*pro hac vice*)
jseddon@desmaraisllp.com
Caitrianne Feddeler (*pro hac vice*)
cfeddeler@desmaraisllp.com
Lee Matalon
State Bar No. 24117858
lmatalon@desmaraisllp.com
Michael Wueste (*pro hac vice*)
mwueste@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: (212) 351-3400
Fax: (212) 351-3401

*Counsel for Defendant Microsoft Corporation*

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document and all attachments have been served on all counsel of record via email on December 19, 2025.

*/s/ Melissa R. Smith*
Melissa R. Smith

## CERTIFICATE OF CONFERENCE

The undersigned counsel hereby certifies that Microsoft has met its meet-and-confer obligations in connection with the issues presented in Microsoft's motion, and that Plaintiffs are opposed to the relief sought herein.

*/s/ Melissa R. Smith*
Melissa R. Smith