**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| PARTEC AG and BF EXAQC AG, | |
| Plaintiffs, | Civil Action No. 2:24-cv-00433-RWS-RSP |
| vs. | **JURY TRIAL DEMANDED** |
| MICROSOFT CORPORATION, | |
| Defendant. | |

**PLAINTIFFS' OPPOSITION TO MICROSOFT'S MOTION**
**FOR ENTRY OF SUPPLEMENTAL PROTECTIVE ORDER**

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................... 1

II.     BACKGROUND ....................................................................................................... 2

III.    LEGAL STANDARD................................................................................................ 5

IV.     ARGUMENT ............................................................................................................ 6

        A.      Microsoft Has Not Demonstrated Good Cause to Modify the
                Protective Order. ........................................................................................... 6

        B.      Microsoft's Proposed Protective Order Will Unfairly Hinder Plaintiffs'
                Ability to Prosecute Their Claims.............................................................. 9

        C.      Even if the Four-Factor Test Applies, The Proposed Supplemental
                Protective Order Is Not Warranted. ...................................................... 10

V.      CONCLUSION....................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allergan, Inc. v. Teva Pharms. USA*,
2017 WL 772486 (E.D. Tex. Feb. 28, 2017) ......................................................5, 10

*Funai Elec. Co. v. Daewoo Elecs. Corp.*,
616 F.3d 1357 (Fed. Cir. 2010)..........................................................................9

*Helminski v. Ayerst Lab'ys, a Div. of Am. Home Prods. Corp.*,
766 F.2d 208 (6th Cir. 1985) .............................................................................9

*Lockheed Aircraft Corp. v. U.S.*,
213 Ct. Cl. 395, 553 F.2d 69 (1977) ..................................................................8

*Nearstar, Inc v. Waggoner*,
2009 WL 10677780 (E.D. Tex. Dec. 11, 2009)..........................................6, 11

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
122 F.3d 1396 (Fed. Cir. 1997)..........................................................................8

*Petrobras Am. Inc. v. Vicinay Caadenas, S.A.*,
2015 WL 12940017 (S.D. Tex. Dec. 18, 2015) ................................................10

*Raytheon Co. v. Indigo Sys. Corp.*,
2008 WL 4371679 (E.D. Tex. Sept. 18, 2008) .............................................5, 10

*Uniloc 2017 LLC v. Cardo Sys., Inc.*,
2019 WL 13472203 (E.D. Tex. May 22, 2019).................................................6

*United States v. Baker*,
2020 WL 4589808 (S.D.N.Y. Aug. 10, 2020).................................................7

*Vulcan Eng'g Co. v. Fata Aluminium, Inc.*,
278 F.3d 1366 (Fed. Cir. 2002)..........................................................................8

**Regulations**

15 C.F.R. § 736.2(b) .................................................................................................7

22 C.F.R. § 120.50(a)(2) ..........................................................................................7

22 C.F.R. § 120.52(a) ...............................................................................................7

22 C.F.R. § 125.1(a) .................................................................................................7

██████████████████████████

**TABLE OF DEFINED TERMS**

| Abbreviation | Description |
|---|---|
| Dkt. No. | Filings on this Court's docket. |
| Plaintiffs | Plaintiffs ParTec AG and BF exaQC AG. |
| Microsoft | Defendant Microsoft Corporation. |
| Mot. | Microsoft's Motion for Entry of Supplemental Protective Order (Dkt. No. 151). |
| LANL | Third-Party Los Alamos National Laboratory. |
| CUI | Controlled Unclassified Information. |

Emphases added unless otherwise indicated.

## I.      INTRODUCTION

On October 9, 2024, Microsoft and Plaintiffs agreed to terms for a comprehensive protective order—adopted from the Court's model order—that would ensure sensitive information exchanged during litigation was protected from public disclosure. Dkt. No. 24. The Court entered the parties' agreed protective order. Dkt. No. 30. Now, more than a year later, Microsoft seeks to revisit that agreement to add provisions related to export control and CUI that were allegedly requested by third-party LANL. The requested supplemental order, which was in fact originally proposed by Microsoft not LANL, should not be entered for either of two reasons.

First, Microsoft has failed to meet its burden of demonstrating good cause for modifying the existing protective order. Microsoft's motion offers only the conclusory statement that the protective order is necessary "for compliance with national security regulations" and fails to explain what those regulations require beyond a general prohibition on "transmission of export-controlled information outside the United States." Mot. at 6. Microsoft's good cause argument *does not even mention CUI*. In fact, the only justification Microsoft offers for the terms of the order it proposes is LANL's declaration that ███████████████████████████ Mot. at 6. But the assurances of a non-party government entity that the terms of Microsoft's protective order are necessary to meet statutory and regulatory requirements, without more, is not sufficient to show good cause. Moreover, Microsoft's purported "cause" for requiring the order—so it can obtain *nonpublic* information from LANL relevant to support its prior art defense—is self-defeating and legally baseless. If the information is nonpublic, it cannot be prior art.

Second, the imposition of the proposed modification to the protective order would significantly prejudice Plaintiffs. Because Plaintiffs' officers and directors are not U.S. persons, they would be barred from any proceedings where export control and CUI information is discussed, including trial, hampering Plaintiffs' ability to prosecute their case. The proposed order

also permits LANL to produce documents solely to Microsoft while prohibiting their production to Plaintiffs—a provision that is both obviously prejudicial and a plain violation of the Court's discovery order.

The Court should accordingly deny Microsoft's motion for a supplemental protective order.

## II.    BACKGROUND

Plaintiffs allege that Microsoft infringes three patents (the "Asserted Patents") that generally teach systems and methods for dynamic resource management in heterogenous computing systems. Dkt. No. 1. Microsoft contends that the Roadrunner supercomputer built and operated by LANL in partnership with IBM is invalidating prior art. As a result, Microsoft issued a subpoena to LANL seeking information related to the Roadrunner system more than one year ago, on October 15, 2024. Dkt. No. 144, Ex. A. Microsoft followed by dragging its feet in seeking discovery from LANL. It took Microsoft two months to first suggest a list of potential document custodians to LANL. Dkt. No. 144, Ex. C at 28. It then took Microsoft another three months—and more than five months after serving its subpoena—to propose a first set of search terms. *Id.* at 23–24. LANL countered with slightly modified search terms that would reduce the number of responsive documents from 1,467 to 717 and "████████████████████████████████████ ████." *Id.* at 21. Microsoft flatly refused. *Id.* at 20.

Instead of agreeing to narrow its search to expedite discovery, Microsoft told LANL— without consulting Plaintiffs or the Court—that "████████████████████████████████ ████████████████████████████████████████████████████████." *Id.* at 21. LANL responded that "adding ██████████████████████████████████ ████████." *Id.* at 18. Given Microsoft's refusal to agree to a narrower set of search terms, LANL then told Microsoft that ████████████████████████████████. *Id.* at 17.

███████████████████████████████████████████████████

Several months later, on October 10, LANL told Microsoft that ████████████████

████████████████████████████████. *Id.* at 13. A week later, Microsoft

asked Plaintiffs if they would "████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████" Dkt. No. 144,

Ex D at 7. Noting that Microsoft's proposal appeared to give Microsoft an "████████████

████████████████████████████" and that Microsoft had already had a full year to

seek discovery from LANL, Plaintiffs declined to agree to the modification. *Id.* at 5–6. Rather than

propose a more reasonable modification—for example, asking Plaintiffs to agree to give LANL

the four additional days it actually requested to complete its production—Microsoft replied that it

would "██████████████████████████████████████████

████████████████." *Id.* at 5.

Microsoft then misrepresented Plaintiffs' position to LANL, stating that "████████████

████████████████████████████████████," even though the

proposal Microsoft made and which Plaintiffs opposed had in fact been much more expansive.

Dkt. No. 144, Ex. C at 10. Nonetheless, LANL told Microsoft that ██████████████████

████████████████████████████████████████████

████████████. *Id.* at 9.

On November 20, LANL, without explanation, sent Microsoft "██████████████

████████████████████████████████████████." *Id.* at 3. It is not

apparent from Microsoft's hand-selected email excerpts what prompted LANL's reversal from

contending that an export control supplement to the protective order would not facilitate the review

process, *id.* at 18, to insisting that such an order is necessary for production, *id.* at 3; Kafka Decl.

███████████████████████████████████████████████████████

¶ 7. After sitting on LANL's request for two weeks, Microsoft told Plaintiffs on December 3 that

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████. Dkt. No. 144, Ex. D at 4. Microsoft did not share that the idea for

a protective order was originally Microsoft's, that LANL had previously stated that such an order

was not necessary, or that LANL had already committed to completing its production by December

31, 2025. *Id.*

Plaintiffs explained to Microsoft that they could not agree to "███████████████████████████

██████████████████████████████████" *Id.* at 2. Plaintiffs noted that the Court's protective

order already provides robust protection for sensitive information and that they would suffer

prejudice by the supplemental order's terms—which would exclude their officers and directors,

none of whom are U.S. persons, from proceedings such as trial where LANL documents were

discussed. *Id.* Plaintiffs also objected to Paragraph 8.a of the proposed order which purported to

give LANL the ability to produce documents to Microsoft while prohibiting the sharing of those

documents with Plaintiffs—even their U.S. counsel—in plain violation of this Court's discovery

order. *Id.*

During a December 9 meet and confer, Plaintiffs reiterated their concerns with the

protective order as drafted. Plaintiffs further explained how, unlike ATTRONEYS' EYES ONLY

designations, the parties would not have the ability to negotiate an agreement that would allow

their corporate representatives to be present at proceedings, like trial, where CUI and export control

information was included. Plaintiffs also asked whether Microsoft would agree to replace

Paragraph 8.a with a provision that would force LANL to produce documents to both parties or

not at all. Microsoft responded that Plaintiffs' concerns about Paragraph 8.a were speculative and

████████████████████████████████

unwarranted because LANL was unlikely to invoke the provision. Rather than take Microsoft's word for it, Plaintiffs asked whether Microsoft would agree to remove paragraph 8.a if it was truly superfluous and LANL had no intent to ever invoke it. Plaintiffs also asked whether Microsoft had an alternative proposal that would address Plaintiffs' other concerns with the protective order as proposed. Microsoft demurred during the call but agreed to consider whether it could provide a narrower updated proposal. Microsoft never responded to Plaintiffs. Instead, Microsoft told LANL—not Plaintiffs—that it "████████████████████████████████

████████" Dkt. No. 144, Ex. C at 1. Microsoft then filed this motion nearly three weeks later, on December 29. Dkt. No. 151.

In the interim, on December 18, LANL produced 887 responsive documents to Microsoft on December 18. Microsoft waited five days, until December 23, to produce those documents to Plaintiffs.

## III.    LEGAL STANDARD

Microsoft inaccurately claims that the Court should follow the four-factor test used in *Raytheon* and related cases to decide whether to modify the stipulated protective order.[1] *See* Mot. at 5 (citing *Raytheon Co. v. Indigo Sys. Corp.*, 2008 WL 4371679, at *2 (E.D. Tex. Sept. 18, 2008)). Under that test courts consider: "(1) the nature of the protective order, (2) the foreseeability, at the time of the issuance of the order, of the modification requested, (3) the parties' reliance on the order, and most significantly (4) whether good cause exists for modification." *Allergan, Inc. v. Teva Pharms. USA*, 2017 WL 772486, at *4 (E.D. Tex. Feb. 28, 2017). Microsoft's motion, however, "unlike the typical motion for modification of a protective order,

---

[1] Although Microsoft's motion purports to rely on the four-factor test, Microsoft's analysis does not follow it. For example, Microsoft does not discuss the "nature of the protective order" factor and instead adds a discussion about prejudice to Plaintiffs. This is recognition that the test is an inappropriate fit for this situation.

which argues for reducing the level of protection for confidential documents, … is requesting additional protection." *Nearstar, Inc v. Waggoner*, 2009 WL 10677780, at *2 (E.D. Tex. Dec. 11, 2009). In circumstances where a party is requesting to add protections, as here, courts have recognized that "[t]he four-factor test … is not helpful." *Id.* Instead motions for supplemental protective orders like the one Microsoft proposes should be evaluated "like a request for a new protective order rather than a modification." *Id.* And under Fed. R. Civ. P. 26(c), "[t]he party seeking a protective order must show 'good cause' for its issuance." *Uniloc 2017 LLC v. Cardo Sys., Inc.*, 2019 WL 13472203, at *2 (E.D. Tex. May 22, 2019). If good cause is shown, then the burden shifts to the party opposing the protective order to show that the order would "necessarily impair its ability to prosecute … its claims." *Id.* (quotation omitted).

## IV.    ARGUMENT

### A.  Microsoft Has Not Demonstrated Good Cause to Modify the Protective Order.

Microsoft has not met its burden to demonstrate good cause to modify the Protective Order currently governing the case, which is modelled on the Court's model order. First, the record is silent as to why LANL represented in April that an export control supplement was unnecessary, Doc. No. 144, Ex. C at 18, but now insists that the proposed supplemental protective order is needed ███████████████████████████████████████ Kafka Decl. at ¶ 7. LANL's inconsistent representations about the necessity of the supplemental protective order—combined with Microsoft's incomplete production of its communications with LANL—is enough for the Court to find that a supplemental order is not needed and that Microsoft has failed to meet its burden.

Second, even setting aside this inconsistency, Microsoft still fails to establish good cause for why its proposed supplement "provides necessary protections for compliance with national security regulations." Mot. at 6. Microsoft conclusorily asserts that "the supplemental protective

order" is needed to "prohibit[] export-control information from being taken overseas or provided to any foreign persons in the United States." Mot. at 7. But this rote statement is insufficient to meet Microsoft's burden. Microsoft does not even explain the specific requirements of the relevant regulations let alone explain why the provisions of its proposed supplemental order are necessary to meet those requirements.[2] Microsoft's conclusive reliance on LANL's assertion that it "█████ ███████████████████████████████████████████████" is similarly insufficient to carry Microsoft's burden. Mot. at 6 (citing Kafka Decl.). Microsoft cannot show good cause merely by asking the Court to accept LANL's assertion that the provisions are necessary. *Cf. United States v. Baker*, 2020 WL 4589808, at *3 (S.D.N.Y. Aug. 10, 2020) ("The fact that the Government may have convinced other District Judges, in other cases involving other facts, to sign protective orders similar or identical to its proposal does not mean this Judge in this case should adopt the Government's form.").

Microsoft's showing is particularly deficient with respect to the need for CUI provisions. CUI does not even appear in the section of Microsoft's motion on "good cause," despite nearly every provision of its proposed supplement implicating CUI. *See* Ex. A ¶¶ 1–2, 4, 5, 7(a), 8, 8(a), 9. At a minimum, the Court cannot enter a protective order regarding CUI when Microsoft has not offered *any* cause to do so—good or otherwise.

Third, Microsoft has not provided any legitimate basis for why it needs to introduce nonpublic export control or CUI information into this case. Microsoft states that it needs the

---

[2] Microsoft's unexplained string citation to four provisions of the CFR is beside the point because none of them pertain to CUI. Instead, they merely pertain to the general scope of what constitutes the unauthorized export of information. *See* 22 C.F.R. § 120.50(a)(2) (defining "export"); 22 C.F.R. § 125.1(a) (regulations apply to "technical data" and "classified defense articles"); 22 C.F.R. § 120.52(a) (requiring license for "export of unclassified technical data"); 15 C.F.R. § 736.2(b) ("general prohibitions describe[ing] exports, reexports, transfers … and other conduct" prohibited without a license).

protective order to obtain nonpublic information about the Roadrunner system that it alleges is invalidating prior art. *See* Mot. at 6. But this purported justification—and by extension the requested supplemental protective order—is legally baseless. Information and systems that are "secret" and not "publicly known or used" are "not prior art." *Vulcan Eng'g Co. v. Fata Aluminium, Inc.*, 278 F.3d 1366, 1372 (Fed. Cir. 2002); *see also OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1402 (Fed. Cir. 1997) ("Thus, the patent laws have not generally recognized as prior art that which is not accessible to the public."); *Lockheed Aircraft Corp. v. U.S.*, 213 Ct. Cl. 395, 553 F.2d 69, 78, (1977) ("It is clear that these reports, classified at the time the … patent issued, are not prior art within the meaning of 35 U.S.C.A. §§ 102 or 103."). Microsoft's contention that it needs information that is, by definition, nonpublic to demonstrate that the Roadrunner system is public prior art is self-defeating.

Finally, the Court should not credit Microsoft's simply incorrect contention that Plaintiffs' "unwillingness to agree to the supplemental protective order" with "less than a month of fact discovery remaining" will have the "practical effect of blocking Microsoft's access to [LANL] documents." Mot. at 8. Any failure of Microsoft to obtain discovery from LANL due to the pending close of fact discovery is traceable solely to Microsoft's own lack of diligence. Microsoft served its subpoena on LANL well over one year ago and then dragged its feet. Microsoft waited five months to provide search terms to LANL, refused to narrow its search terms to generate a reasonable number of hits despite warnings from LANL about the review timeline, agreed to a review timeline putting production close to the end of discovery, failed to timely follow up on its requests as the discovery deadline approached, and waited until December to take action regarding this allegedly necessary supplemental protective order. *See* Dkt. No. 144, Ex. C. Microsoft's lack of diligence is not good cause to modify the protective order.

**B. Microsoft's Proposed Protective Order Will Unfairly Hinder Plaintiffs' Ability to Prosecute Their Claims.**

Even if Microsoft had shown good cause, which it has not, Microsoft's proposed order is still not justified as it would severely hamper Plaintiffs' ability to prosecute their case. Microsoft does not dispute, as it cannot, that Plaintiffs' officers and directors would be excluded from any proceedings where that material is presented or discussed. Critically, that includes trial. *See Helminski v. Ayerst Lab'ys, a Div. of Am. Home Prods. Corp.*, 766 F.2d 208, 213 (6th Cir. 1985) ("[E]xclud[ing] arbitrarily a party who desires to be present merely because he is represented by counsel … would violate the due process clause of the Fifth Amendment"). Microsoft contends that this is prejudice Plaintiffs simply must bear by virtue of being foreign entities. But "it is fundamental to the rule of law that the courts are open to native and alien alike, when affected by a violation of United States law." *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1379 (Fed. Cir. 2010). Microsoft cannot discount the prejudice Plaintiffs would suffer under the proposed protective order merely because Plaintiffs are not U.S. entities and ask the Court to authorize provisions that would bar Plaintiffs from hearing evidence being offered against them. That is highly prejudicial to Plaintiffs and to their prosecution of the case.

Microsoft also attempts to analogize CUI and export control restrictions with material designated RESTRICTED – ATTORNEYS' EYES ONLY or RESTRICTED CONFIDENTIAL SOURCE CODE under the current protective order, but this argument is misplaced. The provisions Microsoft seeks would create an absolute barrier to Plaintiffs participating in any proceedings where that material is presented or discussed, including trial. This is unlike material designated RESTRICTED – ATTORNEYS' EYES ONLY or RESTRICTED CONFIDENTIAL SOURCE CODE, which is frequently presented at trial in open court or, at minimum, with the court room closed except designated representatives of the parties. Microsoft's comparison is inapt.

Lastly, Microsoft's attempt to justify Paragraph 8(a) of the protective order is inadequate. Paragraph 8(a) provides that "[i]f the United States Government so requests, the Parties or Third Parties will not produce any document potentially containing CUI to any other Party without first providing that document to the United States Government for its approval." Ex. A at 5. In other words, LANL can produce documents to Microsoft and simultaneously instruct Microsoft not to produce those documents to Plaintiffs—including to their U.S. counsel. This would obviously prejudice plaintiffs and violate the Court's Discovery Order that requires parties to "promptly serve each other with copies of any documents produced by third parties." Dkt. No. 23. Microsoft's unilateral belief that LANL will not invoke Paragraph 8(a) is not a sufficient guarantee against the obvious prejudice of Microsoft having one-sided discovery, nor does Microsoft's apparently unsupported belief render the prejudice speculative. Microsoft's position is particularly questionable given its refusal to consider removing the provision despite its alleged superfluousness and Microsoft's failure to provide any statutory or regulatory basis for the provision's necessity.

### C.  Even if the Four-Factor Test Applies, The Proposed Supplemental Protective Order Is Not Warranted.

Even if the *Raytheon* four-factor test Microsoft invokes does apply, there is still no basis for supplementing the protective order as Microsoft requests. Factor one—the nature of the protective order—weighs against modification in cases where, as here, "the parties stipulated to [the order's] terms." *Petrobras Am. Inc. v. Vicinay Caadenas, S.A.*, 2015 WL 12940017, at *1 (S.D. Tex. Dec. 18, 2015). Factor two—foreseeability—similarly weighs against the party seeking modification when that party fails to negotiate for protective measures that were reasonably foreseeable. *Allergan*, 2017 WL 772486, at *5. That is certainly the case here. Microsoft subpoenaed LANL seeking information on the Roadrunner supercomputer—a system that was

publicly acknowledged to have confidential aspects—just days after filing a joint motion proposing the terms of the protective order. *See* Dkt. No. 24. It was thus reasonably foreseeable that its subpoena may implicate nonpublic information (e.g., export control and CUI). Factor three—reliance—cannot logically apply here when Microsoft seeks to increase the protection offered by the protective order. *See Nearstar*, 2009 WL 10677780, at *2. Factor four—good cause—weighs strongly against Microsoft's proposed order because, as detailed above, Microsoft has failed to explain either the necessity of the provisions it seeks to add or offer a permissible basis on which it seeks to introduce nonpublic information into this litigation.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny Microsoft's motion for a supplemental protective order.


Dated: January 9, 2026                    Respectfully submitted,

                                          */s/ Jacob B. Levin*
                                          Justin A. Nelson – Lead Counsel
                                          Texas State Bar No. 24034766
                                          SUSMAN GODFREY, L.L.P.
                                          1000 Louisiana Street, Suite 5100
                                          Houston, Texas 77002
                                          Telephone: (713) 651-9366
                                          Facsimile: (713) 654-6666
                                          jnelson@susmangodfrey.com

                                          Matthew R. Berry
                                          Washington State Bar No. 37364
                                          Alexander W. Aiken
                                          Washington State Bar No. 55988
                                          SUSMAN GODFREY, L.L.P.
                                          401 Union St., Suite 3000
                                          Seattle, Washington 98101
                                          Telephone: (206) 516-3880
                                          Facsimile: (206) 516-3883
                                          mberry@susmangodfrey.com

aaiken@susmangodfrey.com

Jacob Brooks Levin
New York State Bar No. 6247589
SUSMAN GODFREY L.L.P.
One Manhattan West
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
jlevin@susmangodfrey.com

Claire Abernathy Henry
Texas State Bar No. 24053063
MILLER, FAIR, HENRY PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
Fax: (903) 757-2323
claire@millerfairhenry.com

S. Calvin Capshaw
Texas State Bar No. 03783900
CAPSHAW DERIEUX LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: (903) 845-5770
ccapshaw@capshawlaw.com

*Counsel for Plaintiffs ParTec AG and BF exaQC AG*

## CERTIFICATE OF SERVICE

This is to certify that on January 9, 2026, all counsel of record were served a copy of the foregoing via email.

*/s/ Jacob B. Levin*
Jacob B. Levin