**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| PARTEC AG and BF EXAQC AG,<br><br>          Plaintiffs,<br><br>          v.<br><br>MICROSOFT CORPORATION,<br><br>          Defendant. | Civil Action No. 2:24-cv-00433-RWS-RSP<br><br>**JURY TRIAL DEMANDED**<br><br>████████████████████████<br>██████████████████ |

**DEFENDANT MICROSOFT CORPORATION'S**
**MOTION TO STRIKE**
**THE "OPENAI SUPERCOMPUTER"**
**FROM PLAINTIFFS' INFRINGEMENT CONTENTIONS**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

FACTUAL BACKGROUND ..................................................................................1

    A.    ParTec Sought And Received Discovery Regarding OpenAI By July 2025—While Hiding Its Infringement Theories On The OpenAI Supercomputer. ......................................................................................1

    B.    When Microsoft Moved To Compel Better Infringement Contentions In September 2025, ParTec Opposed And Refused To Supplement. ...........2

    C.    In December 2025, At ParTec's Request, Microsoft Agreed To A Carefully Negotiated, Narrow Set Of Amendments To Moot The Motion To Compel. ...................................................................................................3

    D.    ParTec's December 23, 2025 Infringement Contentions Disclosed An Entirely New Theory Of Infringement For The OpenAI Supercomputer Based On Documents Microsoft Produced More Than Six Months Earlier. ..........4

    E.    ParTec's New Infringement Theories Implicate ▮▮▮▮▮▮ Aspects Of The OpenAI Supercomputer—Too Late For Microsoft To Secure Discovery From OpenAI. ...............................................................7

LEGAL STANDARD ..............................................................................................8

ARGUMENT ..........................................................................................................9

I.    PARTEC'S NEW INFRINGEMENT THEORY FOR THE OPENAI SUPERCOMPUTER VIOLATES LOCAL PATENT RULE 3-6(B) AND SHOULD BE STRICKEN FROM ITS CONTENTIONS. .................................9

    A.    ParTec's Entirely New Infringement Theory Goes Beyond The Agreed Order And Violates Local Patent Rule 3-6(b). .......................................9

    B.    ParTec Cannot Demonstrate "Good Cause" For Its Belated Amendments. ..........10

        1.    ParTec Was Not Diligent And Has No Reason For Its Delay. ................11

        2.    Striking ParTec's Infringement Theory Against The OpenAI Supercomputer Will Not Harm ParTec's Case. .........................................12

        3.    Allowing ParTec To Proceed Will Unfairly Prejudice Microsoft By Forcing It To Defend Claims Based On Third-Party Conduct Without Adequate Third-Party Discovery. .................................................13

4.      A Continuance Is Not Available To Cure The Prejudice—And Any
        Continuance Would Likely Require Significantly Delaying Trial. ...........15

CONCLUSION..................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*,
No. 6:07-CV-559, 2009 WL 81874 (E.D. Tex. Jan. 12, 2009)...........................................9, 11

*Mojo Mobility, Inc. v. Samsung Elecs. Co.*,
No. 2:22-CV-00398-JRG-RSP, 2024 WL 3297145 (E.D. Tex. July 3, 2024) ........................9

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
467 F.3d 1355 (Fed. Cir. 2006)...................................................................................12

*Sybase, Inc. v. Vertica Systems, Inc.*,
No. 6:08-CV-24, 2009 WL 4574690 (E.D. Tex. Nov. 30, 2009) ...........................................12

*Sycamore IP Holdings LLC v. AT&T Corp.*,
No. 2:16-CV-588-WCB, 2017 WL 4517953 (E.D. Tex. Oct. 10, 2017)......................8, 12, 13

**Rules**

L.P.R. 3-1 ................................................................................................................8

L.P.R. 3-6(b) ................................................................................................1, 9, 10, 12

## TABLE OF EXHIBITS

Exhibits cited "Ex." refer to the exhibits attached to the Declaration of Caitrianne Feddeler, filed contemporaneously.

| Exhibit | Description |
|---|---|
| A | Email from counsel for ParTec to counsel for Microsoft (Aug. 15, 2025) |
| B | Correspondence between counsel for ParTec and counsel for Microsoft (Dec. 3-8, 2025) (excerpted) |
| C | Deposition transcript of Christophe Herrbach (Jan. 8, 2026) (excerpted) |
| D | Deposition transcript of Brent Ingraham (Jan. 12, 2026) (excerpted) |
| E | OpenAI's response to Microsoft's document subpoena (Jan. 20, 2026) |
| F | OpenAI's response to Microsoft's deposition subpoena (Jan. 20, 2026) |
| G | Letter from counsel for Microsoft to counsel for ParTec (July 2, 2025) |
| H | Plaintiffs' Amended Infringement Contentions (Dec. 23, 2025) (excerpted) |
| I | Exhibit A – Chart for the '156 Patent (excerpted), from Plaintiffs' Original Infringement Contentions (Sept. 4, 2024) |
| J | Exhibit B – Chart for the '883 Patent (excerpted), from Plaintiffs' Original Infringement Contentions (Sept. 4, 2024) |
| K | Exhibit C – Chart for the '442 Patent (excerpted), from Plaintiffs' Original Infringement Contentions (Sept. 4, 2024) |
| L | Exhibit G – Chart for the '156 Patent – OpenAI Supercomputer (excerpted), from Plaintiffs' Amended Infringement Contentions (Dec. 23, 2025) |
| M | Exhibit H – Chart for the '883 Patent – OpenAI Supercomputer (excerpted), from Plaintiffs' Amended Infringement Contentions (Dec. 23, 2025) |
| N | Exhibit I – Chart for the '442 Patent – OpenAI Supercomputer (excerpted), from Plaintiffs' Amended Infringement Contentions (Dec. 23, 2025) |
| O | Correspondence between counsel for Microsoft and counsel for ParTec (Jan. 26, 2026) (excerpted) |

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| ParTec | Plaintiffs ParTec AG and exaQC AG, collectively. |

## INTRODUCTION

At the very end of fact discovery, ParTec dramatically changed its infringement case.  After nearly a year and a half of litigating theories directed to Microsoft's Azure AI infrastructure and Microsoft's Singularity service, ParTec served "supplemental" infringement contentions on December 23, 2025, that disclosed an entirely new infringement theory targeting third-party controlled functionality in the OpenAI Supercomputer.

ParTec's eleventh-hour amendment violates Local Patent Rule 3-6(b) and should be stricken from the case for at least two reasons.  First, ParTec's theory was not authorized "by order of the Court" as the Rule requires.  While the parties agreed to and the Court issued an Order (Dkt. 131) permitting supplementation of certain limitations, ParTec's new theory goes well beyond that—ParTec amended numerous additional limitations and crafted an entirely new infringement theory for the OpenAI Supercomputer.  Second, ParTec cannot demonstrate "good cause" for its late amendment, as Rule 3-6(b) requires.  The new OpenAI Supercomputer infringement theories are based on documents that Microsoft produced ***more than six months ago*** and ParTec has no legitimate basis for its delay in amending its contentions.  Moreover, ParTec's theories are based on ███████████████, yet its late amendment foreclosed Microsoft's ability to seek meaningful discovery from OpenAI—that is clear and unfair prejudice to Microsoft.  Accordingly, Microsoft respectfully requests that the Court stop ParTec's attempt at trial by ambush and strike its late-disclosed infringement contentions targeting the OpenAI Supercomputer.

## FACTUAL BACKGROUND

### A.     ParTec Sought And Received Discovery Regarding OpenAI By July 2025— While Hiding Its Infringement Theories On The OpenAI Supercomputer.

ParTec's original infringement contentions, served September 4, 2024, accused Microsoft's "Azure AI infrastructure" of infringing the three asserted patents, which it contended

included the "OpenAI Supercomputer." *See, e.g.*, Dkt. 96 at 1–2. Microsoft accordingly provided discovery on all three instrumentalities, including the "OpenAI Supercomputer." *See, e.g.*, Dkt. 96 at 9 (admitting "Microsoft has produced some documents concerning the OpenAI Supercomputer"). Indeed, by July 2025, however, Microsoft made a substantial production of both technical documents and source code—including technical documents regarding the OpenAI Supercomputer. *See, e.g.*, App'x A (listing such documents and their production dates).

ParTec, however, had not updated its infringement contentions in light of Microsoft's technical production. ParTec's claim charts mixed together citations to documents describing three different instrumentalities—the Azure AI infrastructure; the OpenAI Supercomputer; and Microsoft's Singularity service—in a single combined chart for each asserted patent without clearly articulating its theory for each accused instrumentality. *See* Dkt. 88 at 2, Ex. A at 25-28. Accordingly, Microsoft asked ParTec to clarify its infringement contentions, including its theory of infringement for the OpenAI Supercomputer. After meeting and conferring on the topic, ParTec refused, insisting that doing so "while discovery is ongoing is premature." *See* Ex. A at 1.

At the same time, ParTec insisted that Microsoft produce OpenAI-confidential documents in its possession. When Microsoft notified OpenAI of the request (as required by a non-disclosure agreement with OpenAI), OpenAI objected, noting that ParTec's contentions did not set forth an infringement theory for the OpenAI Supercomputer. *See* Dkt. 88 at 2-3, Ex. C.

### B. When Microsoft Moved To Compel Better Infringement Contentions In September 2025, ParTec Opposed And Refused To Supplement.

Following ParTec's refusal to clarify its infringement contentions, Microsoft moved to compel ParTec to (1) provide contentions with "discrete infringement theories" for each accused instrumentality, including the OpenAI Supercomputer, as well as to (2) substantively supplement its contentions "for claim limitations requiring dynamic assignment" in September 2025. *See* Dkt.

88 at 1.  ParTec opposed the motion, asserting that its contentions explained ParTec's theories of infringement "in detail and at length" and were "more than sufficient to put Microsoft on notice of ParTec's theories."  *See* Dkt. 96 at 1.  For example, ParTec argued that "Singularity and the OpenAI Supercomputer" were "part of the accused Azure AI infrastructure, not as separate instrumentalities."  *See id.* at 8.  Indeed, ParTec filed its own motion to compel on the basis that "the OpenAI Supercomputer is plainly accused."  *See* Dkt. 97 at 2.

### C.    In December 2025, At ParTec's Request, Microsoft Agreed To A Carefully Negotiated, Narrow Set Of Amendments To Moot The Motion To Compel.

On December 3, 2025, ParTec reversed its position, and proposed that it supplement its contentions by December 23, 2025, in order to resolve Microsoft's motion to compel.  *See* Ex. B at 3.  Rather than agree directly, Microsoft asked for clarification on the scope of ParTec's supplementation, noting that "[t]he proposed December 23 date" raised concerns because "[f]act discovery closes on January 26," "opening expert reports are due February 2," and ParTec's proposed schedule may not be "workable" without "knowing the substance and extent of the proposed supplementation."  *See* Ex. B at 1-2.

ParTec responded by specifically delineating its intended changes—ParTec intended to

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

*See* Ex. B at 1.  Based on that representation, Microsoft agreed and, after some back and forth, the parties agreed on a specifically worded proposed order—requiring ParTec to provide "separate infringement contention charts" and to "***supplement***" its contentions on specifically identified limitations regarding "dynamic assignment" and "distribution of sub-tasks":

the Motion is **GRANTED**. Plaintiffs shall serve amended infringement contentions no later than December 23, 2025, to (1) provide discrete infringement theories and separate infringement contention charts for (a) the OpenAI supercomputer and (b) the Singularity-managed Azure infrastructure; and (2) supplement their contentions for claim limitations in the '156 and '883 patents requiring dynamic assignment of boosters, including elements [1-c-ii] and [14-e-ii] of the '156 patent and elements [1-b-iii], [2], [3], [13-d] and [16] of the '883 patent, and for claim limitations in the '442 patent requiring distribution of sub-tasks, including elements [1-b], [2], [3-b] and [9-d].

*See* Dkt. 129-1, Proposed Order. The proposed order did not, however, allow ParTec to introduce entirely new infringement theories, nor did it authorize ParTec to supplement other claim limitations. *See id.* The Court adopted the proposed order without change. *See* Dkt. 131.

### D.   ParTec's December 23, 2025 Infringement Contentions Disclosed An Entirely New Theory Of Infringement For The OpenAI Supercomputer Based On Documents Microsoft Produced More Than Six Months Earlier.

On December 23, 2025, ParTec served a new set of infringement contentions, with a separate set of charts addressing "the OpenAI Supercomputer (also referred to as the 'Cray Supercomputer,' ██████████)." *See* Ex. H at 3.

The new OpenAI Supercomputer contentions, however, did not just disentangle its mix-and-match allegations into separate charts—rather, ParTec presented an entirely new infringement theory. Indeed, ParTec jettisoned its previous Singularity-based infringement theory and entirely rewrote its contentions based on a new set of supposedly infringing components. For example, for the "resource manager" limitations,[1] ParTec now identifies ████████████████ ██████ as the purportedly infringing components of the OpenAI Supercomputer. *See, e.g.*, Ex. L at 48-49. That theory is entirely new, as can be seen from a side-by-side comparison with ParTec's original contentions for that limitation:

'156 Patent, element 1-c: *"a resource manager being arranged to assign the at least one hardware booster to the at least one hardware computation node"*

---

[1] *E.g.*, '156 patent, element [1-c]; '883 patent, element [1-b]; '442 patent, element [3-a].



| Original Contentions | New Contentions |
|---|---|
| The Microsoft Azure AI system includes a resource manager.<br><br>For example, the system includes "Project Forge"—previously called "Singularity"—which, in part, provides a "global scheduler across one fleet of CPUs and GPUs." Microsoft, *AI Frontiers: Human Insights on AI Training* (Apr. 22, 2024), \*\*\*\*\*\*\*\*techcommunity.microsoft.com/t5/ai-azure-ai-services-blog/ai-frontiers-human-insights-on-ai-training/ba-p/4120574 (ParTec_Microsoft_00000711); *see also* Microsoft, *What Runs ChatGPT? Inside Microsoft's AI Supercomputer \| Featuring Mark Russinovich* (May 24, 2023), https://techcommunity.microsoft.com/t5/microsoft-mechanics-blog/what-runs-chatgpt-inside-microsoft-s-ai-supercomputer-featuring/ba-p/3830281 (ParTec_Microsoft_00000352) ("And the way we address that in Azure is with a **containerization and global scheduler service** that we've been working on called **Project Forge** . . . ."); Microsoft, *Singularity: Plant-Scale, Preemptive and Elastic Scheduling of AI Workloads*, https://arxiv.org/pdf/2202.07848 (ParTec_Microsoft_00000001) ("At the heart of **Singularity** is a novel, **workload-aware scheduler** that can transparently preempt and elastically scale deep learning workloads to drive high utilization without impacting their correctness or performance across a global fleet of AI accelerators (e.g., GPUs, FPGAs).").<br><br>. . .<br><br>The resource manager is arranged to assign at least one hardware booster to at least one hardware computation node. "GPUs, **coupled** with the CPU infrastructure" in the **Microsoft Azure AI system** "provide the necessary computational power to support AI workloads effectively." Toolify.ai, *Unveiling the Power of Microsoft's AI Infrastructure* (Updated Mar. 2, 2024), https://www.toolify.ai/ai-news/unveiling-the-power-of-microsofts-ai-infrastructure-2528872 (ParTec_Microsoft_00000331). "[A]n **AI workload aware scheduler, known as Project Forge (formerly Singularity)** optimizes the utilization of these resources"—that is, is responsible for the coupling/assignment. *Id.*<br><br>. . .<br><br>"Project Forge," for example and in part, pools GPU capacity from different regions to help run Microsoft's global scale AI workloads and maintain high levels of utilization. "Project Forge," in part, assigns hardware boosters (e.g., GPUs) to computation nodes (e.g., CPUs and/or CPU cores) as needed and depending on utilization. *See* Microsoft, *What Runs ChatGPT? Inside Microsoft's AI Supercomputer \| Featuring Mark Russinovich* (May 24, 2023), https://techcommunity.microsoft.com/t5/microsoft-mechanics-blog/what-runs-chatgpt-inside-microsoft-s-ai-supercomputer-featuring/ba-p/3830281 (ParTec_Microsoft_00000352) ("And the way we address that in Azure is with a containerization and global scheduler service that we've been working on called **Project Forge**, which is designed specifically to help run Microsoft's global scale AI workloads and maintain really high levels of utilization. Project Forge introduces transparent checkpointing, where it periodically saves the state of a model incrementally, without the model's code needing to do anything. That way, if anything fails, it can quickly resume for the most recent checkpoint. We combine this with our integrated global scheduler that **pools GPU capacity from regions around the world**. So, if you need to pause a job to prioritize another one, that allows us to migrate that pause job to another region if necessary and available, with minimal impact on its progress."); Microsoft, *Singularity: Plant-Scale, Preemptive and Elastic Scheduling of AI Workloads*, https://arxiv.org/pdf/2202.07848 (ParTec_Microsoft_00000001) ("At the heart of **Singularity** is a novel, workload-aware scheduler that can transparently preempt and **elastically scale** deep learning workloads to drive high utilization without impacting their correctness or performance across a global fleet of AI accelerators (e.g., GPUs, FPGAs).").<br><br>Ex. I at 17, 20-21. | Ex. L at 48-49, 55. |

ParTec's theories of "an initial assignment"[2] are similarly entirely new, pointing to "███████" instead of "Singularity":

| '156 Patent, element 1-c-i: *"at a start of processing of said computation task, establishing an initial assignment by using a predetermined assignment metric specified as a function of at least one of a group of assignment parameters"* | |
|---|---|
| **Original Contentions** | **New Contentions** |
| The **Microsoft Azure AI system** includes a resource manager. *See* evidence for **Claim [1-c]**.<br><br>The resource manager is arranged, at the start of processing of a computation task, to establish an initial assignment by using a predetermined assignment metric specified as a function of at least one of a group of assignment parameters.<br><br>For example, Microsoft explains that "Singularity [now Project Forge] introduces the GPU fraction metric that quantifies throughput in the face of preemption and elasticity." Microsoft, *Singularity: Plant-Scale, Preemptive and Elastic Scheduling of AI Workloads*, \*\*\*\*\*\*\*\*arxiv.org/pdf/2202.07848 (ParTec_Microsoft_00000001).<br><br>Microsoft further explains that the below table "describes the multiple tiers of SLAs [service level agreements—*i.e.*, agreements between Microsoft and customers specifying the level of service the customer will be provided] that Singularity [now Project Forge] provides"—premium, standard, and basic—and the metrics associated with each:<br><br>. . . | . . . |

---

[2] *E.g.*, '156 patent, element [1-c-i]; '883 patent, element [1-b-iii].

| | |
|---|---|
| Finally, Microsoft explains that Project Forge (formerly Singularity), in part, establishes an initial assignment of a hardware booster or hardware boosters (*e.g.*, GPUs) to a computation node or computation nodes (*e.g.*, CPUs and/or CPU cores) "depending on the competing cluster load" and the SLA of the job. Microsoft, *Singularity: Planet-Scale, Preemptive and Elastic Scheduling of AI Workloads*, https://arxiv.org/pdf/2202.07848 (ParTec_Microsoft_00000001). As Microsoft puts it, "a job arriving with a demand for *N* GPU (based on soft quota) may get more than *N* or fewer than *N* GPUs, depending on the competing cluster load. The user is charged only for the actual usage and not for the quota; unused quota can be transparently used by other users/jobs." *Id.* |  |
| Ex. I at 24-25. | Ex. L at 56, 66. |

So too with ParTec's theory of "shared" hardware boosters[3]—instead of pointing to "multi-tenant cloud compute," ParTec contends that the OpenAI Supercomputer infringes via an unexplained theory based on previously unidentified "███████████":

| '156 Patent, element 1-d-ii: *". . . (ii) at least one of the plurality of hardware boosters is assigned to and shared by more than one of the plurality of hardware computation nodes such that the compute capacity of the at least one of the plurality of hardware boosters is shared between the more than one of the plurality of hardware computation nodes,"* | |
|---|---|
| **Original Contentions** | **New Contentions** |
| For example, Microsoft touts that the GPUs of the Azure AI infrastructure "are designed specifically for multi-tenant cloud compute"—that is, they are designed to be shared by multiple users or tenants. Microsoft, *What Runs ChatGPT? Inside Microsoft's AI Supercomputer | Featuring Mark Russinovich* (May 24, 2023), ********techcommunity.microsoft.com/t5/microsoft-mechanics-blog/what-runs-chatgpt-insid microsoft-s-ai-supercomputer-featuring/ba-p3830281 (ParTec_Microsoft_00000352) ("And the new H100 VM series in Azure, powered by NVIDIA H100 Tensor Core GPUs, lets you choose one or more GPUs, cluster up to eight GPUs per VM using NVLink, and scale out to thousands if your demands grow, using NVIDIA Quantum-2 InfiniBand networking. That's up to 30x higher performance in inferencing and 4x higher for training compared to NVIDIA's previous A100 generation of GPUs. **These are designed specifically for multi-tenant cloud compute**, giving us the ability to isolate **customers sharing the same server** from one another, and with that we can achieve the elastic scale that we need."). <br><br> Ex. I at 33. |  <br><br> Ex. L at 85. |

And those differences are merely exemplary—ParTec makes similar rewrites throughout its new OpenAI Supercomputer contentions. Put simply, ParTec's new contentions contain entirely new theories and go well beyond supplementing the agreed limitations in the Court's Order.

What is more, ParTec's belated contentions are based on documents that Microsoft produced in July 2025—more than six months earlier. For example, the "███████████ ███████████" features that ParTec now contends are a "resource manager" and establish "an initial assignment" were described in documents that Microsoft produced in July 2025. *See, e.g.*, App'x A (showing, for example, that MSFT_PARTEC_000189442 was produced in July 2025).

---

[3] *E.g.*, '156 patent, element [1-d-ii].

Similarly, the "███████████████████" that ParTec now points to as evidence of "shared" boosters were produced in July 2025 and earlier.  *See, e.g.*, *id.* (showing, for example, that MSFT_PARTEC_000051792 was produced in December 2024 and MSFT_PARTEC_000181739 was produced in July 2025).  Indeed, every screenshot in ParTec's infringement contentions—presumably showcasing the key aspects of its infringement theories—reflects publicly available content or content produced by Microsoft on or before July 2025.  *See* App'x A (listing production dates for the sources of non-public screenshots in ParTec's new contentions).  In other words, ParTec's "new" theories are based on information that it has possessed for more than half a year.

**E.    ParTec's New Infringement Theories Implicate ████████████████ Aspects Of The OpenAI Supercomputer—Too Late For Microsoft To Secure Discovery From OpenAI.**

Moreover, ParTec's new theories turn on ████████████████████—e.g., resource management and job scheduling—████████████████████████

████████████████████████.  To put it bluntly, ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████

While Microsoft promptly sought discovery from OpenAI on ParTec's new infringement

theory, requesting the production of documents and witness testimony within the fact discovery period, *see, e.g.*, Dkt. 159, Ex. J, there simply was not enough time remaining in fact discovery.

██████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████. *See, e.g.*, Ex. E at 6, Ex. F.  In fact, discovery has now closed without any production by OpenAI, and ParTec has objected to any deposition of OpenAI after the close of fact discovery.  Ex. O.  Nor is there time for additional discovery—opening expert reports are due on February 2, 2026, and the Court has already denied Microsoft's motion to extend the schedule.  *See* Dkt. 161.

Accordingly, if ParTec is allowed to proceed with its new OpenAI Supercomputer infringement theories, Microsoft will be forced to proceed without adequate opportunity to take discovery on accused functionality squarely ██████████████.

## **LEGAL STANDARD**

Local Patent Rule 3-1 requires a plaintiff to identify the accused instrumentalities "as specific[ally] as possible" and provide "[a] chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality."  L.P.R. 3-1.  "[T]he Local Patent Rules require that the parties prepare infringement contentions to ensure that they 'formulate, test, and crystalize their infringement theories' early in the case, so that 'the case takes a clear path, focusing discovery on building precise final infringement or invalidity contentions and narrowing issues for Markman, summary judgment, trial, and beyond.' *See Sycamore IP Holdings LLC v. AT&T Corp.*, No. 2:16-CV-588-WCB, 2017 WL 4517953, at *4 (E.D. Tex. Oct. 10, 2017) (quoting *Realtime Data, LLC v. Actian Corp.*, No. 6:15-cv-463, 2016 WL 9340797 (E.D. Tex. Aug. 11, 2016)).  Accordingly, except in response to a claim construction order, "[a]mendment or supplementation of any Infringement Contentions . . . may be made only by order of the Court, which shall be entered *only on a showing of good cause.*"  L.P.R. 3-6(b).

"The tests for determining whether to allow a party to supplement infringement contentions and for determining whether to strike infringement contentions are essentially the same." *See Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, No. 6:07-CV-559, 2009 WL 81874, at *3 (E.D. Tex. Jan. 12, 2009). "A court must consider the following factors: (1) the reason for the delay and whether the party has been diligent; (2) the importance of what the court is excluding and the availability of lesser sanctions; (3) the danger of unfair prejudice; and (4) the availability of a continuance and the potential impact of a delay on judicial proceeding." *See id.*; *see also Mojo Mobility, Inc. v. Samsung Elecs. Co.*, No. 2:22-CV-00398-JRG-RSP, 2024 WL 3297145, at *1 (E.D. Tex. July 3, 2024) (listing similar factors for evaluating "good cause").

## ARGUMENT

### I.    PARTEC'S NEW INFRINGEMENT THEORY FOR THE OPENAI SUPERCOMPUTER VIOLATES LOCAL PATENT RULE 3-6(B) AND SHOULD BE STRICKEN FROM ITS CONTENTIONS.

#### A.    ParTec's Entirely New Infringement Theory Goes Beyond The Agreed Order And Violates Local Patent Rule 3-6(b).

ParTec's addition of an entirely new infringement theory in December goes well beyond the targeted supplementation authorized by the parties' agreement and the Court's December 12 Order, thus was not made "only by order of the Court" on a "showing of good cause" as the Local Patent Rules require. *See* L.P.R. 3-6(b).

As an initial matter, the Order authorized ParTec to do two things and only two things. First, ParTec was to provide separate infringement charts for (a) the Singularity-managed Azure AI infrastructure and (b) the OpenAI Supercomputer. *See* Dkt. 131. Second, ParTec was permitted to supplement specific, enumerated claim limitations related to "dynamic assignment" and "distribution of sub-tasks." *See id.* The Order did not authorize ParTec to amend other claim elements, to substitute different accused components, or to advance new theories of how unlisted

9

limitations were satisfied. *Id.* Nor is there any room for dispute on this point—the parties explicitly negotiated a limited scope for the proposed order in view of the late timing of ParTec's proposed amendment. *See* Ex. B at 1-2.

ParTec's new contentions, however, reflect a wholesale re-engineering of ParTec's infringement theory for the OpenAI Supercomputer with changes throughout—including amendments to limitations that the Court never authorized (and to which Microsoft never agreed). For example, ParTec introduced an entirely new theory for the "resource manager" limitations—a key aspect of the claims and alleged invention. *See supra* at 4-5 (illustrating new allegations against previously unaccused "████████████████████" software components). ParTec's theory of "static assignment" is similarly entirely new. *See supra* at 5-6 (identifying new allegations based on "████████████████████"). So too for ParTec's theory for the "shared hardware booster" limitations. *See supra* at 6 (contrasting previous theory with new allegations targeting previously unaccused "████████████████"). And those are just examples—ParTec identifies new supposedly infringing components and functionality across its independent claims. *See* App'x B (identifying limitations with new theories).

Unveiling an entirely new infringement theory for the OpenAI Supercomputer at this late hour is inconsistent with both the agreed Order and Local Patent Rule 3-6(b). Here, the Court's Order was entered based on a narrow, negotiated understanding of what ParTec would—and would not—change. And by amending unlisted claim limitations and introducing an entirely new theory, ParTec's amendment violates the plain terms of the Order and thus the Local Rules. *See* L.P.R. 3-6(b) (permitting amendment "only by order of the Court"). Accordingly, ParTec's new infringement theory for the OpenAI Supercomputer should be stricken.

**B.    ParTec Cannot Demonstrate "Good Cause" For Its Belated Amendments.**

ParTec's amended contentions should also be stricken because it cannot demonstrate "good

cause" for its late amendment.  *See* L.P.R. 3-6(b) (allowing amendment by "order of the Court" entered "***only on a showing of good cause***.").  ParTec cannot credibly argue diligence for its eleventh-hour disclosure—its new theory rests on documents that Microsoft produced ***more than six months ago*** in July 2025.  And the other "good cause" factors similarly weigh against allowing ParTec to introduce a new theory at this late hour—tacking on a new theory based on third-party (OpenAI) controlled features and components shortly before the close of fact discovery is inherently prejudicial to Microsoft.  Accordingly, ParTec's new OpenAI Supercomputer theory should also be stricken because it lacks good cause.  *See Davis-Lynch*, 2009 WL 81874, at *3.

### 1.    ParTec Was Not Diligent And Has No Reason For Its Delay.

First, ParTec cannot demonstrate diligence and therefore cannot establish good cause for its belated infringement amendments.  ParTec's newly disclosed infringement theories are based on information that it possessed more than six months ago.  ParTec could have supplemented its contentions in response to Microsoft's original request in July 2025 (*see* Ex. G), after the parties' meet and confer on the issue in August (*see* Ex. A), or even in response to Microsoft's motion to compel in September (*see* Dkt. 88).  ParTec chose not to do so.  Instead, it dragged its feet, delaying any supplement until little more than a month in fact discovery remained and supplemented its contentions on December 23, 2025.  That is delay, not diligence, and courts in this district have repeatedly refused leave to amend contentions in similar situations.

Indeed, in *Sycamore IP Holdings LLP v. AT&T Corp.*, a court in this district denied leave to amend where plaintiff waited several months after learning the basis for amendment, emphasizing that the plaintiff could have sought leave earlier but "adamant[ly] refus[ed]" to do so while the close of fact discovery approached.  2017 WL 4517953, at *2–3 (E.D. Tex. Oct. 10, 2017).  The court specifically noted that a four-month delay (from March to June) was "not trivial" "as the parties were in the midst of fact discovery," which concluded one month later in July.  *Id;*

*see also Sybase, Inc. v. Vertica Systems, Inc.*, No. 6:08-CV-24, 2009 WL 4574690, at *2 (E.D. Tex. Nov. 30, 2009) (rejecting amendment where plaintiff "waited over four months after its deadline to seek leave to supplement its Infringement Contentions"); *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1367 (Fed. Cir. 2006) (finding several months delay weighed against amended contentions where the party has provided no justification).

Here too, ParTec delayed and adamantly refused to amend its contentions for more than five months after receiving the documents it now relies upon and Microsoft warning ParTec of its need to do so.  Only at the very tail end of fact discovery did ParTec reverse course and disclose its new theories.  ParTec's decision to wait until two days before Christmas appears to be deliberate gamesmanship and because ParTec has no legitimate explanation for that delay, it cannot satisfy the "good cause" requirement of Local Patent Rule 3-6(b).

### 2.     Striking ParTec's Infringement Theory Against The OpenAI Supercomputer Will Not Harm ParTec's Case.

Striking ParTec's newly disclosed infringement theories against the OpenAI Supercomputer will not meaningfully prejudice ParTec or impair its ability to litigate this case. ParTec litigated this case for more than a year based on infringement theories directed to the Microsoft Azure AI infrastructure and Singularity.   Those theories remain in ParTec's infringement contentions today and ParTec is free to proceed on the same Microsoft-based theories it originally disclosed and pursued throughout fact discovery.  Where a plaintiff continues to pursue its original infringement theories, striking a belated theory would not unduly prejudice the plaintiff.  *See, e.g.*, *Sycamore IP Holdings LLC v. AT&T Corp.*, No. 2:16-CV-588-WCB, 2017 WL 4517953, at *3 (E.D. Tex. Oct. 10, 2017) (holding that exclusion was appropriate where the plaintiff retained other infringement theories and exclusion would not be case-dispositive).

By contrast, the timing and posture of ParTec's amendments demonstrates that the OpenAI

Supercomputer theories are not critical to ParTec's claims.  If ParTec's new OpenAI-theories were essential, ParTec would have disclosed them promptly after receiving the documents on which it now relies and sought discovery from OpenAI itself.  Instead, ParTec delayed for months, resisted supplementation, and waited until less than a week was left in fact discovery to subpoena OpenAI. Moreover, striking ParTec's OpenAI Supercomputer theory does not prevent ParTec from pursuing any claims against OpenAI it believes it may have based on ████████████.  It simply prevents ParTec from injecting a late-disclosed, third-party-centric theory into this case after discovery has effectively closed.

Because ParTec can continue to litigate its claims based on the Microsoft-based theories it timely disclosed—and because ParTec's own delay demonstrates that the OpenAI Supercomputer theory is not essential—this factor weighs strongly in favor of striking the late-added theory.  *See Sycamore IP Holdings*, 2017 WL 4517953, at *3.

### 3.    Allowing ParTec To Proceed Will Unfairly Prejudice Microsoft By Forcing It To Defend Claims Based On Third-Party Conduct Without Adequate Third-Party Discovery.

Allowing ParTec to proceed on its newly disclosed OpenAI Supercomputer theories would unfairly prejudice Microsoft by forcing it to defend claims that turn on third-party conduct outside Microsoft's control and knowledge, without a fair opportunity to obtain third-party discovery. ParTec's new theory depends on how the OpenAI Supercomputer is operated, including resource management, job scheduling, and load balancing behavior.  The information necessary to test those new allegations ████████████████████.  ████████████████████

████████████████████████████

██████ *See, e.g.*, Ex. C at 40:16-17, 67:8-10; Ex. D at 212:11-18, 212:21-24, 214:9-13.

Because ParTec disclosed this theory for the first time on December 23, 2025, Microsoft was forced to pursue third-party discovery from OpenAI with only a month remaining in fact

13

discovery. Microsoft promptly served a subpoena seeking documents and testimony relevant to ParTec's new allegations.  Thus, despite the fact that the accused functionality resides with OpenAI, ParTec's late disclosure has precluded Microsoft from obtaining meaningful third-party discovery within the existing schedule.

During the parties' meet and confer, ParTec argued that Microsoft could have avoided any prejudice by seeking third-party discovery earlier. Not so. First, before December 23, ParTec had not disclosed any infringement theory directed to OpenAI, much less identified the software components—e.g., "█████████████████████████"—it now accuses. Microsoft therefore had no basis to seek discovery into OpenAI-controlled functionality that ParTec had not put at issue. Second, even if Microsoft had sought discovery earlier, there is no reason to expect that it would have succeeded. To the contrary, there is every reason to believe that OpenAI would have objected to providing discovery into its confidential scheduling and resource management software—it already did so in this case on the grounds that the OpenAI Supercomputer was not accused of infringement. *See* Dkt. 88 at 2-3, Ex. C. Finally, ParTec cannot shift the blame for its own lack of diligence in complying with P.R. 3-1(c) to Microsoft. ParTec, not Microsoft, bears the burden of identifying its infringement theories and proving infringement. ParTec cannot credibly argue that Microsoft should have sought discovery on theories that it deliberately hid.

Moreover, ParTec's new theory—which turns on ████████████████████ core claim elements—also introduces unresolved questions of attribution and divided infringement that further underscore the unfairness of allowing the theory to proceed on a closed discovery record.

### 4.    A Continuance Is Not Available To Cure The Prejudice—And Any Continuance Would Likely Require Significantly Delaying Trial.

The prejudice resulting from ParTec's late-disclosed OpenAI Supercomputer theories cannot be cured through a continuance.  Recognizing that even a limited amendment may require additional discovery, Microsoft asked this Court to extend fact discovery in December, shortly after ParTec disclosed its intention to amend the contentions.  *See* Dkt. 144.  ParTec opposed Microsoft's motion and the Court denied that request.  *See* Dkts. 152, 161.

With no ability to extend discovery, Microsoft is prejudiced by its limited access to OpenAI documents that could rebut the allegedly infringing ████████████. And even if a continuance were available, curing the prejudice would require more than a modest schedule adjustment. Meaningful relief would entail reopening fact discovery, permitting third-party depositions, and allowing corresponding expert discovery—significantly disrupting the existing schedule and trial, which is currently set for less than five months away, in June 2026. Accordingly, this factor weighs strongly in favor of striking ParTec's late-disclosed OpenAI Supercomputer theories.

### CONCLUSION

ParTec's December 23, 2025, infringement contentions introduced new theories beyond the scope of the agreed Order, in violation of the Local Patent Rules, at the very end of fact discovery, and without justification and with incurable prejudice to Microsoft.  The Court should accordingly strike the contentions directed to the OpenAI Supercomputer (aka OWL) system.

Dated: January 29, 2026

Respectfully submitted,

/s/ Melissa R. Smith

Melissa R. Smith
State Bar No. 24001351
melissa@gillamsmithlaw.com
GILLAM & SMITH LLP
303 South Washington Avenue
Marshall, TX 75670
Tel: (903) 934-8450
Fax: (903) 934-9257

Betty Chen
LEAD ATTORNEY
State Bar No. 24056720
bchen@desmaraisllp.com
Peter Magic
pmagic@desmaraisllp.com (*pro hac vice*)
DESMARAIS LLP
101 California Street
San Francisco, CA 94111
Tel: (415) 573-1900
Fax: (415) 573-1901

Jeffrey Seddon (*pro hac vice*)
jseddon@desmaraisllp.com
Caitrianne Feddeler (*pro hac vice*)
cfeddeler@desmaraisllp.com
Lee Matalon
State Bar No. 24117858
lmatalon@desmaraisllp.com
Michael Wueste (*pro hac vice*)
mwueste@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: (212) 351-3400
Fax: (212) 351-3401

*Counsel for Defendant Microsoft Corporation*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document and all attachments have been served on all counsel of record via email on January 29, 2026.

/s/ Melissa R. Smith
Melissa R. Smith

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for the parties complied with the meet and confer requirement in Local Rule CV-7(h), and that Plaintiffs are opposed to the relief sought herein.

/s/ Melissa R. Smith
Melissa R. Smith

**APPENDIX A**

| Screenshot Content | Date Produced |
| --- | --- |
| MSFT_PARTEC_000051792 | Dec. 23, 2024 |
| MSFT_PARTEC_000052975 | Feb. 5, 2025 |
| MSFT_PARTEC_000058648 | Feb. 5, 2025 |
| MSFT_PARTEC_000064824 | Mar. 21, 2025 |
| MSFT_PARTEC_000180081 | July 17, 2025 |
| MSFT_PARTEC_000180501 | July 17, 2025 |
| MSFT_PARTEC_000181739 | July 17, 2025 |
| MSFT_PARTEC_000186145 | July 17, 2025 |
| MSFT_PARTEC_000187340 | July 17, 2025 |
| MSFT_PARTEC_000189442 | July 17, 2025 |
| MSFT_PARTEC_000189542 | July 17, 2025 |
| MSFT_PARTEC_000197316 | July 17, 2025 |
| MSFT_PARTEC_000206287 | July 17, 2025 |
| MSFT_PARTEC_000206394 | July 17, 2025 |
| MSFT_PARTEC_000208729 | July 17, 2025 |