# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| PARTEC AG and BF EXAQC AG,<br><br>    Plaintiffs,<br><br>    v.<br><br>MICROSOFT CORPORATION,<br><br>    Defendant. | Civil Action No. 2:24-cv-00433-RWS-RSP<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT MICROSOFT CORPORATION'S OBJECTIONS TO THE COURT'S CLAIM CONSTRUCTION ORDER [DKT. 188]**

**TABLE OF CONTENTS**

**Pages**

ARGUMENT ................................................................................................................................1

    A.    "booster" ('156 patent, claims 1, 4, 6-8, 12-15; '883 patent, claims 1-2, 6-7, 11-13, 15) ................................................................................................................1

    B.    "first computing iteration," "further computing iteration" ('442 patent, claims 1, 3, 7, 9) ........................................................................................................3

CONCLUSION ..............................................................................................................................4

Pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule CV-72(b), Defendant Microsoft Corporation respectfully submits these objections to the Claim Construction Order issued on February 18, 2026 (Dkt. 188) with respect to the terms identified below in U.S. Patent Nos. 10,142,156; 11,934,883; and 11,537,442.[1]

## ARGUMENT

**A. "booster" ('156 patent, claims 1, 4, 6-8, 12-15; '883 patent, claims 1-2, 6-7, 11-13, 15)**

Microsoft respectfully objects to the Court's construction of the term "booster" to mean "accelerator" (Dkt. 188 at 16-17) because the specification does not define booster to mean accelerator and instead distinguishes boosters from the accelerators in the prior art.

As the Court recognized, the term "booster" "does not have a well-understood meaning" and, thus, one "must look at the specification's use of the term for guidance." *See* Dkt. 188 at 17. Moreover, the Court interpreted the specification to "strongly suggest[] that boosters are a *type* of accelerator" and, in particular, to suggest that "a 'booster' is an 'accelerator' that is not tightly coupled with a computation node." *See id.* at 17 (emphasis added). That contrasts with prior art accelerators that were "tightly coupled" with a computation node. *See* '156 patent at 2:2-3; *see also id.* 1:36-46, 1:66-2:12, 10:11-17. Indeed, despite repeatedly discussing accelerators in the specification, the patentee chose not to use the term "accelerator" in its claims and instead claims an architecture based on "boosters." *See, e.g.*, '156 patent, claim 1; *see also* Dkt. 188 at 17 (recognizing "[t]he patent then stops using the work 'accelerator' and starts using the word 'booster'"). Claim construction should "give effect to the term[] chosen by the patentee," not erase that choice by rewriting "booster" to mean the "accelerator." *See K-2 Corp. v. Salomon S.A.*, 191

---

[1] For brevity, Microsoft refers to the patents as the '156 patent, the '883 patent, and the '442 patent, corresponding to U.S. Pat. Nos. 10,142,156; 11,934,883; and 11,537,442, respectively.

F.3d 1356, 1364 (Fed. Cir. 1999); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (each term is presumed to be "used consistently throughout the patent.").

Moreover, the intrinsic record further demonstrates that the claimed "boosters" are not equivalent to any "accelerators." First, while boosters provide "acceleration functionality," they do so independent of computation nodes. *See, e.g.*, '156 patent, 2:47-48 ("In this computer cluster arrangement acceleration functionality is being provided by independent boosters."); *see also id.* at 3:10-12. Second, boosters contain accelerators, typically multiple accelerators. *See, e.g.,* '156 patent at 10:25-26 (describing "the booster (ESB)" as consisting of "a multitude of many-core accelerators connected by a specific fast low-latency network"), 10:57-58 (describing "a booster based on many-core accelerators"). Third, the specification describes a booster architecture that includes a set of booster nodes, each of which includes at least one accelerator, and which are connected by a network. *See, e.g.*, '156 patent at 12:65-66 ("A booster B may for example comprise 1 to 10.000 booster nodes BN"); *id.*, Fig. 9 (depicting a booster "B" comprising booster nodes "BN" connected by a network); *id.* at 10:49-63, 12:41-46 (describing the network). The inventor (Dr. Lippert) declaration submitted during prosecution similarly depicts a "booster" as a set of booster nodes "BN" connected by a network. *See, e.g.*, Dkt. 123-2 ('156 file history) at ParTec_00000394; *see also id.* at ParTec_00000378. And that is consistent with the inventor's contemporaneous public statements. *See, e.g.*, Dkt. 114-14 (Lippert publication) at MSFT_PARTEC_000490090 (describing a "Booster comprising of nodes of accelerators and a high-speed interconnect with a torus-topology").

Furthermore, while the Order describes the construction as "consistent with ParTec's explanation during prosecution of the '883 Patent that 'boosters' are 'accelerators'" (Dkt. 188 at 17), ParTec did not define "boosters" as "accelerators" during prosecution. To the contrary, the

2

cited portion of the prosecution history notes only that the "application *refers* to boosters as accelerators ('a sharing of accelerators, here in form of boosters')" as part of an attempt to "differentiate between boosters and computation nodes." *See* Dkt. 114-6 ('883 file history) at 0902. That is not definitional language. *Cf. Baxalta Inc. v. Genentech, Inc.*, 972 F.3d 1341, 1349 (Fed. Cir. 2020) ("the standard for lexicography is exacting"). Moreover, ParTec's statements during prosecution, when read in light of the specification, demonstrate that boosters are a particular "*form*" of accelerator with specific characteristics. *See* Dkt. 114-6 ('883 file history) at 0902. To be sure, ParTec addressed the Examiner's attempt to map the Krishnamurthy prior art (which described accelerators) to the claims (which require boosters), but nowhere did ParTec define "boosters" to be "accelerators" or make an equivalent disavowal of claim scope. *See, e.g.*, *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325 (Fed. Cir. 2003) ("we have thus consistently rejected prosecution statements too vague or ambiguous to qualify as a disavowal of claim scope"); *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005) ("An examiner's statement cannot amend a claim.").

Accordingly, Microsoft respectfully objects to the Court's construction of "booster" as "accelerator," and requests that the Court adopt Microsoft's proposed construction for "booster": "one or more booster nodes."

### B. "first computing iteration," "further computing iteration" ('442 patent, claims 1, 3, 7, 9)

Microsoft agrees with the Court's analysis and clarification that the "'the plurality of sub-tasks' refers to 'a plurality of sub-tasks' in the preamble, which are the same sub-tasks throughout performance of the method," e.g., in both the "first computing iteration" and "further computing iteration." *See* Dkt. 188 at 23-34. Microsoft respectfully objects, however, to the Court's issuance of a "[p]lain and ordinary meaning" construction that omits that clarification. *See id.* at 25. The

3

clarification resolves a "dispute regarding the scope of a claim term," thus should be addressed in the claim construction. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360-1362 (Fed. Cir. 2008). The "plain and ordinary meaning" construction "does not resolve the parties' dispute" on its own, thus does not provide adequate guidance to the jury on the scope of the claims, *see id.* at 1361, especially given that Microsoft is barred from mentioning the Court's clarification in the presence of the jury. *See* Dkt. 188 at 25.

Further, Federal Circuit has emphasized the importance of setting forth express constructions of disputed terms, both to guide the jury and to permit meaningful appellate review. *AFG Indus., Inc. v. Cardinal IG Co., Inc.*, 239 F.3d 1239, 1247 (Fed. Cir. 2001) ("It is critical for trial courts to set forth an express construction of the material claim terms in dispute, in part because the claim construction becomes the basis of the jury instructions, should the case go to trial…. It is also the necessary foundation of meaningful appellate review."); *see also Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004). And withholding the construction from the jury defeats the purpose of claim construction: to resolve the disputed scope of the claims *for the jury*. *See, e.g.*, *Cal. Inst. Of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 989 (Fed. Cir. 2022) (remanding a case for a new trial on infringement where the district court did not instruct the jury of a claim construction). Thus, the Court's entire construction should be fully disclosed to the jury to assist in their factfinding.

Accordingly, Microsoft respectfully objects to the "plain and ordinary meaning" construction and requests that the Court modify the construction to include its clarification that "the plurality of sub-tasks" in the "first computing iteration" and the "further computing iteration" refers to "the same sub-tasks throughout performance of the method."

## **CONCLUSION**

For the reasons stated herein, Microsoft respectfully objects to the constructions of the terms discussed above.

| | |
|---|---|
| Dated: March 3, 2026 | Respectfully submitted, |
| | /s/ *Melissa R. Smith* |
| | Melissa R. Smith<br>State Bar No. 24001351<br>melissa@gillamsmithlaw.com<br>GILLAM & SMITH LLP<br>303 South Washington Avenue<br>Marshall, TX 75670<br>Tel: (903) 934-8450<br>Fax: (903) 934-9257 |
| | Betty Chen<br>LEAD ATTORNEY<br>State Bar No. 24056720<br>bchen@desmaraisllp.com<br>Peter Magic<br>pmagic@desmaraisllp.com<br>DESMARAIS LLP<br>101 California Street<br>San Francisco, CA 94111<br>Tel: (415) 573-1900<br>Fax: (415) 573-1901 |
| | Jeffrey Seddon (*pro hac vice*)<br>jseddon@desmaraisllp.com<br>Caitrianne Feddeler (*pro hac vice*)<br>cfeddeler@desmaraisllp.com<br>Lee J. Matalon<br>State Bar No. 24117858<br>lmatalon@desmaraisllp.com<br>DESMARAIS LLP<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 351-3400<br>Fax: (212) 351-3401 |
| | *Counsel for Defendant Microsoft Corporation* |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was filed electronically on March 3, 2026. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system.

> */s/ Melissa R. Smith*
> Melissa R. Smith