# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| PARTEC AG and BF EXAQC AG, | |
| Plaintiffs, | Civil Action No. 2:24-cv-00433-RWS-RSP |
| vs. | **JURY TRIAL DEMANDED** |
| MICROSOFT CORPORATION, | |
| Defendant. | |

## PLAINTIFFS' OBJECTIONS TO CLAIM CONSTRUCTION ORDER

Pursuant to Fed. R. Civ. P. 72(a), Plaintiffs respectfully object to two constructions from the Claim Construction Order. Dkt. 188. Plaintiffs incorporate by reference their claim construction briefs (Dkt. 114, 124), slide presentation (Dkt. 135-1), and hearing arguments (Dkt. 138).

**I.    "computer cluster-booster [system/arrangement]" ('156 Patent, Claims 1, 14); "computer cluster [system/arrangement]" ('883 Patent, Claims 1, 13)**

Plaintiffs respectfully object to the Court's construction of the preamble terms "computer cluster[-booster] [system/arrangement]" as limiting. Microsoft's counsel conceded that it was not arguing the claims are structurally incomplete, Hr'g Tr., Dkt. 138 at 70:24–25, and preamble language is generally not limiting where "a patentee defines a structurally complete invention in the claim body." *Shoes by Firebug LLC v. Stride Rite Children's Grp., LLC*, 962 F.3d 1362, 1367 (Fed. Cir. 2020) (quotation omitted). The Court nonetheless held the preambles limiting because (1) the patentee "relied on the preambles to distinguish" prior art during prosecution and (2) repeatedly characterized the invention as "a computer cluster arrangement" in the specification. Dkt. 188 at 18–19. Neither is sufficient to find the preambles limiting.

*First*, the file history does not demonstrate "*clear reliance* on the preamble" to distinguish prior art. *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002). The Court relies on a response to office action in which the patentee stated the Krishnamurthy references "are directed to different types of computer architectures, each processing data in a different manner than the computer cluster-booster arrangement to which Applicant's claims are directed." Dkt. 114-5 at 0309. Importantly, the examiner (not the patentee) first used the term "computer cluster arrangement" as shorthand for the Krishnamurthy prior art. Dkt. 135-1, slide 37.

To correct the examiner's misuse of "computer cluster" to describe Krishnamurthy, the patentee provided two definitions as "additional *background* for clarity." Dkt. 114-5 at 0309.

1

(emphasis added). But contrary to the Court's conclusion, neither these definitions nor the statement that the Krishnamurthy references are not "directed to a computer cluster arrangement" were the basis upon which the patentee distinguished the prior art. *Id.* at 0310. Instead, the patentee distinguished the Krishnamurthy references *solely* by referencing limitations in the body of the claims that were lacking in Krishnamurthy, including (a) no resource manager, (b) no assignment metric, (c) no assignment of an accelerator to particular processor, and (d) no adjustment of an assignment metric. *See* Dkt. 135-1, slide 38; *see also* Dkt. 114-5 at 0310–13. Each of the patentee's distinctions rely on limitations in the body of the claims, not the preambles. *See* Dkt. 135-1, slide 44. This fact alone confirms that the preamble is not limiting.

The patentee's contemporaneous amendments to the claim language are an independent reason that the preamble is not limiting. Although the patentee disagreed with the examiner's characterization of Krishnamurthy as "directed to cluster computing," he "nonetheless … further amended the [body of the] *independent claims* to clarify the interaction between Applicant's computation nodes and boosters." Dkt. 114-5 at 0310; *see also* Dkt. 135-1, slide 39. Adding structural requirements to the claim body and arguing the significance of these structural features falls far short of the "clear reliance" necessary to render a preamble limiting. *See Arthrex, Inc. v. Smith & Nephew, Inc.*, 2016 WL 4211504, *33 (E.D. Tex. Aug. 10, 2016) (J. Payne) (no "clear reliance" even though preamble was amended to overcome art because the body of the claim was also amended to add structural limitations, and the patentee focused on the body to distinguish the prior art) (citing *Symantec Corp. v. Computer Assoc. Int'l*, 522 F.3d 1279, 1288–89 (Fed. Cir. 2008)).

*Second*, the Court's reliance on the specification's repeated use of "computer cluster" to find the preamble limiting is misplaced. The specification—like the claims—uses "computer

2

cluster" as shorthand for a structurally complete invention. The Summary of Invention describes "a computer cluster arrangement" as comprising "a plurality of computation nodes," "at least one booster," and "a resource manager" enabling "dynamic coupling of accelerators to computation nodes at runtime." '156 Patent at 2:33-46. Each of these structural elements also appears in the claim body. Mere repetition of a shorthand term in the specification cannot transform the preamble into a limitation when that term is used simply to describe the very structure the claim body recites. *See Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006) (preamble not limiting where it "merely states the purpose or intended use of the invention"); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1312 (Fed. Cir. 1999) (patent title is "near irrelevancy" in claim construction). Even Microsoft's counsel acknowledged that "the body of the claim certainly describes a computer cluster arrangement." Hr'g Tr, Dkt. 138 at 61:7–8. It was erroneous to conclude that merely repeating a term to describe the invention necessarily transforms that term into a limitation.

## II.     "Assignment metric" ('156 claims 1–2, 13–15; '883 claims 1–2, 13–15)

Plaintiffs respectfully object to the underlined portion of the Court's construction of "assignment metric": "a metric used for the act of assigning <u>that is representative of one of several groups of parameters used as part of rules by which the metric is managed</u>." While the Court correctly held there was no prosecution disclaimer, the Court erred in finding lexicography. Dkt. 188 at 14–16. Lexicography is an "exacting" standard. *GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014). A patentee must "clearly set forth a definition of the disputed term" and "clearly express an intent to define the term." *Id.* That did not occur here.

The Court relies on a single paragraph in the patentee's November 29, 2016 response to a June 2, 2016 final office action. *See* Dkt. 188 at 14. That paragraph is reproduced below:

3

> To this end, Applicant also disagrees with the Final Action's allegation that Applicant's assignment metric is not explicitly defined by Applicant's specification. Final Action, p. 8. Applicant respectfully points out paragraph [0017][1] of Applicant's specification as originally filed, which states the following:
>
>> For accomplishing the assignment between boosters and computation nodes a specific set of rules is required. Therefore, an assignment metric is provided, which serves as a basis for the decision which booster is coupled with which computation node. The assignment metric may be managed by a resource manager. Managing the assignment metric *refers to establishing and updating rules naming at least one booster, which is assigned to at least one further named computation node*.
>>
>> Specification, para. [0017], emphasis added.
>
> In other words, Applicant's specification as originally filed explains that the assignment metric may be managed via a set of rules, and therefore the assignment metric is representative of one of several groups of parameters utilized as part of these rules. Also see, e.g., Applicant's specification at paragraph [0023].

Dkt. 114-5 at 0272–73. The Court relies on the first sentence to conclude that the underlined portion defined assignment metric. *See* Dkt. 188 at 14–15.

Context, however, is critical. Here, the context shows that the patentee was responding to a prior art rejection by amending the claim language, not by acting as a lexicographer. The paragraph the Court cites immediately follows another where the patentee traversed the Krishnamurthy reference by explaining that claim 1 had been amended to "clarif[y] that Applicant's assignment metric is a function of a group of assignment parameters." Dkt. 114-5 at 0272; *see also id.* at 0265 (amended language highlighted). The cited paragraph relates to this point, which is why it begins with "to this end." Further, the examiner had just raised a concern that "an assignment metric" was "not explicitly defined by Applicant's specification." *Id.* at 0229.

In context, then, the patentee was arguing that (1) it had amended claim 1 to require an assignment metric "specified as a function of at least one of a group of assignment parameters," (2) Krishnamurthy does not teach this, and (3) the specification supported the amended language, preempting any argument from the examiner that the specification did not provide support. The patentee, in other words, was highlighting that it had added language to further define the "assignment metric" in the claim and that the amended language was supported by the

4

specification. The patentee was not clearly and intentionally trying to "set forth a definition" of "assignment metric" beyond explaining the language being added. *GE Lighting Sols.*, 750 F.3d at 1309. There was no lexicography.

Two additional points weigh heavily against finding lexicography. First, claim 1 of the '156 patent now confusingly and redundantly reads: "a metric used for the act of assigning that is representative of one of several groups of parameters used as part of rules by which the metric is managed specified as a function of at least one of a group of assignment parameters." The multiple references to "groups of parameters"/"assignment parameters" simply highlights that the alleged lexicographical statement was explaining the specification support for the amended language, not offering an independent definition. Second, albeit relatedly, the Court's construction adds a limitation that already appears elsewhere in the relevant claims, which is improper. *See Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("declin[ing] to read … a limitation into" a term that appeared elsewhere in the claims); *see also* Dkt. 114 at 11–12 & cases cited.

At minimum, if the Court still believes that "the specification defines 'assignment metric,'" Dkt. 188 at 16, the actual definition is much narrower than the Court's construction. The specification explains—in the passage quoted in the relevant prosecution statements—that the assignment metric is a metric that "serves as a basis for the decision which booster is coupled with which computation node." '156 Patent, at 3:47–51. The remainder of the passage explains how the assignment metric is managed and updated, but does not define what the metric is. *Id.* 3:51–67. Thus, at most, the specification defined "assignment metric" as a "metric that serves as the basis for the decision which booster is coupled with which computation node." The Court's construction should either be changed to reflect this, or it should be revised to "a metric used for the act of assigning," which is functionally similar and already present in the Court's construction.

5

Dated: March 3, 2026

Respectfully submitted,

 /s/ *Jacob B. Levin*
Justin A. Nelson – Lead Counsel
Texas State Bar No. 24034766
SUSMAN GODFREY, L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
jnelson@susmangodfrey.com

Matthew R. Berry
Washington State Bar No. 37364
Rachel S. Black
Washington State Bar No. 32204
Alexander W. Aiken
Washington State Bar No. 55988
SUSMAN GODFREY, L.L.P.
401 Union St., Suite 3000
Seattle, Washington 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
mberry@susmangodfrey.com
aaiken@susmangodfrey.com

Jacob B. Levin
New York State Bar No. 6247589
SUSMAN GODFREY L.L.P.
One Manhattan West
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
jlevin@susmangodfrey.com

Claire Abernathy Henry
Texas State Bar No. 24053063
MILLER, FAIR, HENRY PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
Fax: (903) 757-2323
claire@millerfairhenry.com

S. Calvin Capshaw
Texas State Bar No. 03783900

CAPSHAW DERIEUX LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: (903) 845-5770
ccapshaw@capshawlaw.com

*Counsel for Plaintiffs ParTec AG and BF exaQC AG*

7

## CERTIFICATE OF SERVICE

This is to certify that on March 3, 2026, all counsel of record were served a copy of the foregoing via CM/ECF.

                                            */s/ Jacob B. Levin*
                                            Jacob B. Levin